**<u>Exhibit B</u>**

**Latham Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------ x
```
In re:                                          :    Chapter 11
                                                :
FIRST MODE HOLDINGS, INC., *et al.*,[1]         :    Case No. 24-12794 (KBO)
                                                :
  Debtors.                                    :    (Jointly Administered)
                                                :
```
------------------------------------------------------------ x
```

**DECLARATION OF CAROLINE A. RECKLER AND
DISCLOSURE STATEMENT OF LATHAM & WATKINS LLP**

I, Caroline A. Reckler, declare as follows:

1.      I am a partner in the law firm of Latham & Watkins LLP ("**L&W**"), an international law firm with offices across the United States, Europe, and Asia.  I am admitted in, practicing in, and a member in good standing of the state bars of Illinois and New York, and there are no disciplinary proceedings pending against me.  I am over the age of eighteen, am authorized to submit this Declaration, and am competent to testify on the matters contained herein.

2.      I submit this Declaration to provide disclosure in connection with the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Latham & Watkins LLP as Bankruptcy Co-Counsel Effective as of the Petition Date* (the "**Application**"),[2] by which the above-captioned debtors and debtors-in-possession (together, the "**Debtors**") seek authority to employ and retain L&W as bankruptcy co-counsel effective as of the Petition Date.

3.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by other L&W professionals or

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: First Mode Holdings, Inc. (7177), and Synchronous LLC (1829).  The Debtors' mailing address is 3417 1st Ave S, Seattle, WA, 98134.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

paraprofessionals, or learned from my review of relevant documents.    To the extent any information disclosed herein requires amendment or modification as additional information becomes available to L&W, a supplemental declaration will be submitted to this Court reflecting such amended or modified information.

## L&W'S QUALIFICATIONS

4.    The Debtors seek to retain L&W because of L&W's recognized expertise and extensive experience and knowledge practicing before bankruptcy courts in large and complex chapter 11 cases and because of L&W's knowledge of the Debtors' business and financial affairs.

5.    L&W and its partners have represented numerous debtors in their bankruptcy matters, including 2U, Inc., Allen Systems Group, Inc., Alta Mesa Resources, Inc., Audacy, Inc., Barretts Minerals, Inc., Chaparral Energy, Inc., Dayton Superior Corporation, DNIB Unwind, Inc. (f/k/a BIND Therapeutics, Inc.), Emerge Energy Services LP, Enduro Resource Partners LLC, Global Eagle Entertainment Inc., GNC Holdings, Inc., Hexion Holdings LLC, Hi-Crush Inc., Illinois Power Generating Company, Imerys Talc America, Inc., JOANN Inc., Libbey Glass Inc., Lincoln Power, L.L.C., Lonestar Resources US Inc., Lucky Brand Dungarees, LLC, Lumileds Holding B.V., Mallinckrodt plc, MLCJR LLC, Monitronics International, Inc., Nine Point Energy Holdings, Inc., Pacific Drilling S.A., Paddock Enterprises, LLC, Panda Temple Power, LLC, Rentech WP U.S. Inc., Robertshaw US Holding Corp., Sable Permian Resources, LLC, Sienna Biopharmaceuticals, Inc., Starry Group Holdings, Inc., Stone Energy Corporation, Sundance Energy Inc., Superior Energy Services, Inc., Virgin Orbit Holdings, Inc., Vital Pharmaceuticals, Inc., and Weatherford International plc.

6.    I am one of the principal L&W attorneys working on this engagement.    I have extensive experience in corporate restructurings and have represented debtors, asset purchasers,

bank groups, secured lenders, unsecured creditors, and other parties in both in-court and out-of-court restructurings, and in related litigation. Other professionals and paraprofessionals in L&W's insolvency practice and in other practice areas, many of whom also have extensive experience in corporate restructurings generally and debtor representations in chapter 11 cases specifically, will participate in the representation of the Debtors in the Chapter 11 Cases.

7.      Since mid-2024, the Debtors and L&W have worked together closely in an effort to respond to the Debtors' financial circumstances, including by engaging in negotiations with the Debtors' major creditors and potential strategic partners concerning the Debtors' restructuring options and by assisting the Debtors in all aspects of preparing the Chapter 11 Cases. In addition, L&W has advised the Debtors on certain matters since January 2023. As a result, L&W possesses an in-depth knowledge of the Debtors' business affairs and capital structure and has gained insight into many of the legal issues that might arise in the context of the Chapter 11 Cases. Accordingly, the Debtors believe that L&W is both well-qualified and uniquely able to represent them in the Chapter 11 Cases and that such representation is critical to the Debtors' efforts to maximize value for their estates.

8.      Accordingly, I believe that L&W is both well-qualified and uniquely able to represent the Debtors in the Chapter 11 Cases and that such representation will contribute greatly to the efficient administration of the Debtors' estates, thereby minimizing expense to the estates and facilitating the progress of the Chapter 11 Cases.

<u>**SERVICES TO BE PROVIDED**</u>

9.      The Debtors desire to employ L&W because of, among other reasons, the nature of the legal services that will be required in connection with the Chapter 11 Cases. To engage alternative counsel at this stage of the Debtors' cases would be tremendously disruptive and would

derail the possibility of the Debtors' sale and liquidating plan process on the accelerated timeline currently contemplated.

10.     Consistent with the Engagement Letter, a copy of which is attached as <u>Exhibit 1</u> hereto, L&W expects to provide, without limitation, the following legal services:

a.     advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.     advise and consult on the conduct of the Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

c.     advise the Debtors and take all necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors' interests in negotiations concerning litigation in which the Debtors are involved;

d.     analyze proofs of claim filed against the Debtors and object to such claims as necessary;

e.     represent the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

f.     attend meetings and negotiate with representatives of creditors, interest holders, and other parties in interest;

g.     analyze executory contracts and unexpired leases and potential assumptions, assignments, or rejections of such contracts and leases;

h.     prepare pleadings in connection with the Chapter 11 Cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

i.     advise the Debtors in connection with any potential sale of assets;

j.     take necessary action on behalf of the Debtors to obtain approval of a disclosure statement and confirmation of a chapter 11 plan;

k.     appear before this Court or any appellate courts to protect the interests of the Debtors' estates before those courts;

l.     advise on corporate, litigation, environmental, finance, tax, employee benefits, and other legal matters; and

     m.     perform all other necessary legal services for the Debtors in connection with the Chapter 11 Cases.

11.     I understand that, concurrently with the filing of the Application, the Debtors will file an application to retain Young Conaway Stargatt & Taylor, LLP ("**Young Conaway**") as their bankruptcy co-counsel and conflicts counsel.  Because L&W and Young Conaway will have distinct and well-defined roles, each counsel will not duplicate the services the other provides to the Debtors.  L&W will coordinate with Young Conaway and any other counsel the Debtors retain in the Chapter 11 Cases to ensure that the legal services each firm provides to the Debtors are not duplicative.

12.     The Debtors also have filed or intend to file applications to employ (a) M3 Partners, LP, as financial advisor; (b) PJT Partners, LP, as investment banker; and (c) Omni Agent Solutions, Inc., as claims and noticing agent and as administrative advisor in the Chapter 11 Cases. L&W intends to monitor carefully the efforts of all other retained professionals the Debtors retain in the Chapter 11 Cases and to coordinate with such professionals to delineate clearly their respective duties in order to prevent duplication of effort, whenever possible.

## PROFESSIONAL COMPENSATION

13.     L&W intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, the Local Rules, and any procedures and orders of the Court.

14.     L&W operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.  L&W's

current hourly rates, as of January 1, 2025, for matters related to the Chapter 11 Cases range as follows:

| Billing Category | Rates |
|---|---|
| Partners | $1,680 to $2,650 |
| Counsel | $1,595 to $2,070 |
| Associates | $835 to $1,635 |
| Professional Staff | $255 to $980 |
| Paralegals | $355 to $755 |

15.     L&W's hourly rates are designed to compensate L&W fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned and are subject to periodic adjustments to reflect economic and other conditions.[3]  From the Petition Date through December 31, 2024, L&W's hourly rates for matters related to the Chapter 11 Cases ranged as follows:

| Billing Category | Rates |
|---|---|
| Partners | $1,675 to $2,745 |
| Counsel | $1,595 to $2,125 |
| Associates | $905 to $1,755 |
| Professional Staff | $275 to $1,170 |
| Paralegals | $345 to $835 |

16.     Consistent with the Engagement Letter and L&W's policy with respect to its other clients, L&W will continue to charge the Debtors for all services provided and for other charges and disbursements incurred in the rendition of services.  It is L&W's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also L&W's policy to charge its clients only the amount actually incurred by L&W in connection with such items.  These charges and disbursements include (without limitation) costs

---

[3]     L&W billing rates are usually revised annually, on or around the first day of January of each year, as is customary with L&W's policies.  Accordingly, L&W's billing rates changed on January 1, 2025.  L&W will provide notice to the Debtors, the U.S. Trustee, and any official committee before implementing any further periodic increases, and will file any such notice with the Court.

for photocopying, electronic data management services, including scanning and document imaging, travel, travel-related expenses, business meals, computerized research, messengers, couriers, postage, witness fees, and other fees related to trials and hearings. L&W professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices, and L&W will continue to charge for overtime secretarial charges that arise out of business necessity. L&W will charge the Debtors $0.10 per page for standard duplication in accordance with the Local Rules.

17.     No promises have been received by L&W, or any partner, counsel, or associate thereof, as to payment or compensation in connection with the Chapter 11 Cases other than in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Except for sharing arrangements among L&W, its affiliated law practice entities, and their respective members, in accordance with sections 329 and 504 of the Bankruptcy Code and Bankruptcy Rule 2016(b), L&W has not entered into any agreements, express or implied, with any other party in interest, including the Debtors, any creditor, or any attorney for such party in interest in the Chapter 11 Cases for (a) the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) payment of such compensation from the assets of the estates in excess of the compensation allowed by this Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) payment of compensation in connection with the Chapter 11 Cases other than in accordance with the applicable provisions of the Bankruptcy Code.

## U.S. TRUSTEE GUIDELINES

18.     L&W will make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines, both in

32753470.1

7

connection with this Application and with any fee applications filed by L&W in the Chapter 11 Cases.

19.     The following is provided in response to the request for additional information set forth in Paragraph D.1 of the U.S. Trustee Guidelines:

a.     **Question**:  Did L&W agree to any variations from, or alternatives to, L&W's standard billing arrangements for this engagement?

**Answer**:  No.  The rate structure provided by L&W is appropriate and comparable to (a) the rates that L&W charges for non-bankruptcy representations or (b) the rates of other comparably skilled professionals.

b.     **Question**:  Do any of the L&W professionals in this engagement vary their rate based on the geographic location of the Debtors' chapter 11 cases?

**Answer**:  No.

c.     **Question**:   If L&W has represented the Debtors in the 12 months prepetition, disclose L&W's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If L&W's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Answer**:  L&W's current hourly rates for services rendered on behalf of the Debtors are set forth above.   These rates have been used since January 1, 2024.  During the prior calendar year, L&W used the following rates for services rendered on behalf of the Debtors:  $1,565 to $2,565 for partners; $1,500 to $1,985 for counsel; $870 to $1,670 for associates; $220 to $1,320 for professional staff; and $310 to $795 for paralegals.   All material financial terms have remained unchanged since the prepetition period, except for a postpetition 50% discount for non-working travel time.

    d.    **Question**:  Have the Debtors approved L&W's budget and staffing plan and, if so, for what budget period?

        **Answer**:  Yes.  L&W has provided the Restructuring Committee, on behalf of the Debtors, with a prospective budget and staffing plan setting forth the types of timekeepers, numbers thereof, and applicable hourly rates it expects during the Chapter 11 Cases, which have been approved by the Restructuring Committee, on behalf of the Debtors.  The budget and staffing plan cover the period from the Petition Date to March 30, 2025.

<u>**COMPENSATION RECEIVED BY L&W FROM THE DEBTORS**</u>

20.    As of the Petition Date, the Debtors did not owe L&W any amounts for legal services rendered before the Petition Date, and L&W is not a creditor of the Debtors.

21.    As set forth in the chart below, during the 90-day period prior to the Petition Date, L&W received advances in the aggregate amount of $4,752,097.40 for services performed and expenses incurred, and to be performed and incurred, including in preparation for the commencement of the Chapter 11 Cases.  All payments were in the form of retainers for the advance payment of subsequent invoices (the "**<u>Fee Advance</u>**") and are set forth in the chart below. As of the Petition Date, the balance of the Fee Advance was $217,923.32.  L&W intends to apply the Fee Advance to any outstanding amounts relating to the period prior to the Petition Date that were not processed through L&W's system as of the Petition Date and will seek the approval of this Court prior to applying any portion of the remaining Fee Advance to postpetition fees and expenses.

| Transaction | Invoice Date | Payment Date | Amount Invoiced | Date Range of Services | Amount Paid | Fee Advance Balance |
|---|---|---|---|---|---|---|
| Advance Payment | | 9/26/2024 | | | $352,687.40 | $500,000.00 |
| Invoice | 9/30/2024 | | $499,410.00 | Retainer | | $500,000.00 |
| Invoice | 9/30/2024 | 9/30/2024 | $499,410.00 | 7/10/24 - 9/24/24 | $499,410.00 (Fee advance applied) | $590.00 |
| Advance Payment | | 10/10/2024 | | | $499,410.00 | $500,000.00 |
| Invoice | 10/17/2024 | 10/17/2024 | $500,000.00 | 9/2/24 - 10/11/24 | $500,000.00 (Fee advance applied) | $0.00 |
| Invoice | 10/17/2024 | | $500,000.00 | Retainer | | $0.00 |
| Advance Payment | | 10/31/2024 | | | $500,000.00 | $500,000.00 |
| Invoice | 11/13/2024 | | $500,000.00 | Retainer | | $500,000.00 |
| Invoice | 11/16/2024 | 11/16/2024 | $500,000.00 | 10/1/24 - 11/10/24 | $500,000.00 (Fee advance applied) | $0.00 |
| Advance Payment | | 11/18/2024 | | | $500,000.00 | $500,000.00 |
| Invoice | 11/30/2024 | 11/30/2024 | $500,000.00 | 11/10/24 - 11/27/24 | $500,000.00 (Fee advance applied) | $0.00 |
| Invoice | 11/30/2024 | | $500,000.00 | Retainer | | $0.00 |
| Invoice | 12/3/2024 | | $500,000.00 | Retainer | | $0.00 |
| Advance Payment | | 12/6/2024 | | | $500,000.00 | $500,000.00 |
| Invoice | 12/6/2024 | 12/6/2024 | $500,000.00 | 11/10/24 - 12/2/24 | $500,000.00 (Fee advance applied) | $0.00 |
| Invoice | 12/9/2024 | | $1,500,000.00 | Retainer | | $0.00 |
| Advance Payment | | 12/12/2024 | | | $2,000,000.00 | $2,000,000.00 |
| Invoice | 12/12/2024 | | $400,000.00 | Retainer | | $2,000,000.00 |
| Advance Payment | | 12/13/2024 | | | $400,000.00 | $2,400,000.00 |
| Invoice | 12/13/2024 | 12/13/2024 | $784,033.77 | 9/30/24 - 12/12/24 | $784,033.77 (Fee advance applied) | $1,615,966.23 |
| Invoice | 12/13/2024 | 12/13/2024 | $764,564.85 | 12/1/24 - 12/12/24 | $764,564.85 (Fee advance applied) | $851,401.38 |
| Invoice | 12/19/2024 | 12/19/2024 | $150,017.57 | 12/9/24 - 12/15/24 | $150,017.57 (Fee advance applied) | $701,383.81 |
| Invoice | 12/19/2024 | 12/19/2024 | $483,460.49 | 12/9/24 - 12/15/24 | $483,460.49 (Fee advance applied) | $217,923.32 |

[*]   Invoice reflects amounts relating to the period prior to the Petition Date posted as of the date hereof.

22.     L&W requests that the Fee Advance be treated as an evergreen retainer and be held by L&W as security throughout the Chapter 11 Cases until L&W's fees and expenses are awarded and payable to L&W on a final basis.

## DISINTERESTEDNESS

23.     In preparing this Declaration, I used a set of procedures developed by L&W to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules regarding the retention of professionals by a debtor under the Bankruptcy Code (the "**Firm Disclosure Procedures**").  Pursuant to the Firm Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this Declaration and to ascertain L&W's connection to such parties:

a.     The following comprehensive list (the "**Retention Checklist**") of the types of entities that may have contacts with the Debtors was developed through discussions with the L&W attorneys who have provided services to the Debtors and in consultation with the advisors to and senior management of the Debtors:

(i)      Debtors and Non-Debtor Affiliates
(ii)     Debtors Previous Names
(iii)    Debtors' Restructuring Professionals
(iv)     Legal Professionals for Founders, Lenders, Trustees, Agents, and Other Secured Parties
(v)      Ordinary Course Professionals
(vi)     Current and Former Directors, Officers, and Founders
(vii)    Secured Parties
(viii)   Parties to Pending or Threatened Litigation
(ix)     Debtors' Bank Account and Cash Management Institutions
(x)      Known Holders of 5% or More of Outstanding Common Equity Securities of First Mode Holdings, Inc.
(xi)     Landlords
(xii)    Taxing and Governmental Authorities
(xiii)   Insurance Providers
(xiv)    Material Contract Counterparties
(xv)     Top 30 Unsecured Creditors
(xvi)    Utility Providers
(xvii)   District of Delaware Bankruptcy Judges and Key Staff Members
(xviii)  United States Trustee for the District of Delaware and Key Staff Members

(xix)    Other Parties

b.      L&W obtained information responsive to the Retention Checklist through several inquiries of the Debtors' senior management and advisors and review of documents provided by the Debtors to L&W. L&W then used that information, together with other information identified by L&W, to compile a list of the names of entities that may be parties in interest in the Chapter 11 Cases (the "**Potential Parties in Interest**"), as set forth on Appendix 1 hereto.[4] The information listed on Appendix 1 may have changed without my knowledge and may change during the pendency of the Chapter 11 Cases. L&W will update this Declaration, as described below, when L&W becomes aware of new material information.

c.      L&W maintains a master client database as part of its conflict clearance and billing records. The master client database includes the names of the entities for which any attorney time charges have been billed since the database was first created (the "**Client Database**"). The Client Database includes the names of all current and former clients, the names of the parties who are or were related or adverse to such current and former clients, and the names of the L&W personnel who are or were responsible for current or former matters for such clients. L&W policy is that no new matter may be accepted or opened within L&W without completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties, and, in some cases, parties related to the client or to an adverse party. Accordingly, the database is updated for every new matter undertaken by L&W. The accuracy of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

d.      L&W compared the names of each of the Potential Parties in Interest to client matters in the Client Database for which professional time was recorded during the three years prior to the Petition Date and compiled a list of any matches generated by the comparison (the "**Client Match List**"). The Client Match List is set forth on Appendix 2 hereto.[5]

e.      Using information in the Client Database concerning entities on the Client Match List and making general and, if applicable, specific inquiries of L&W

---

[4]    The entities included on the list of Potential Parties in Interest (and the categories contained therein) were provided by the Debtors to L&W for purposes of a conflict check only and should not be relied upon by any party as a list of creditors or for any other purpose.

[5]    As referenced in Appendix 2, the term "**Current Client**" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past 12 months and L&W has at least one open matter. The term "**Former Client**" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years. L&W does not disclose connections if time was recorded more than three years before the Petition Date.

personnel, L&W verified that it does not represent and has not represented any entity on the Client Match List in connection with the Debtors or the Chapter 11 Cases, except as otherwise disclosed in this Declaration.

f.    In addition, a general inquiry was sent by email to all L&W attorneys to determine whether any such individuals or any members of their households (i) own or owned any debt or equity securities of the Debtors; (ii) hold or held any claim against or interest adverse to the Debtors; (iii) represent or represented a client in a matter adverse to the Debtors; (iv) are or were officers, directors, or employees of the Debtors; (v) are related to or have any connections to Bankruptcy Judges in the District of Delaware; or (vi) are related to or have any connections to anyone working in the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**").

24.    L&W compiled responses to the foregoing inquiries for the purpose of preparing this Declaration.  Responses to the inquiry described in subparagraph (f) above indicate that, as of the Petition Date, no L&W attorneys or members of their household: (a) own or owned any debt or equity securities of the Debtors;[6] (b) hold or held any claim against or interest adverse to the Debtors; (c) represent or represented a client in a matter adverse to the Debtors; (d) are or were officers, directors, or employees of the Debtors; (e) are related to or have any connections to Bankruptcy Judges in the District of Delaware; or (f) are related to or have any connections to anyone working in the Office of the U.S. Trustee.

25.    Of the entities listed on Appendix 2,[7] none represented more than 1% of L&W's total client billings for the twelve-month period ending December 31, 2024 (on a consolidated basis).

26.    L&W will not represent the Debtors in an adversary proceeding commenced against any client of L&W unless L&W has an applicable waiver on file or first receives a waiver from such entity allowing L&W to commence such an action.  To the extent that a waiver does not exist

---

[6]    Certain L&W attorneys or members of the households of L&W attorneys may unknowingly hold interests in the Debtors in blind, discretionary accounts, exchange-traded funds, or mutual funds.

[7]    According to L&W's records as of December 30, 2024.

or is not obtained from such entity and it is necessary for the Debtors to commence an adversary proceeding against that entity, the Debtors will employ Young Conaway or retain separate conflicts counsel to represent them in that particular matter. In addition, L&W will not represent any client on any matter adverse to the Debtors or their estates while retained as the Debtors' counsel in the Chapter 11 Cases.

27.      L&W will periodically review its files during the pendency of the Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any relevant facts or relationships are discovered or arise, L&W will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a). In that regard, L&W intends to disclose clients in the capacity that they first appear in a conflicts search. For example, if a client has already been disclosed in this Declaration in one capacity (*e.g.*, a bank), and the client appears in a subsequent conflicts search in a different capacity (*e.g.*, a bondholder), then L&W does not intend to disclose the same client again in supplemental declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

28.      Except as set forth herein, and based upon the information available to me, neither I, nor L&W, nor any partner or associate thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates. Based on the foregoing and to the best of my knowledge, I believe that: (a) L&W is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; and (b) L&W has no connection to the Debtors, their creditors, or their related parties except as may be disclosed in this Declaration (as supplemented from time-to-time). The proposed engagement of L&W is not prohibited by or improper under Bankruptcy Rule 5002(a).

## **SPECIFIC DISCLOSURES**

29.     As specifically set forth below and in <u>Appendix 2</u>, L&W represents or has represented certain of the Debtors' creditors, officers and directors, insurance providers, utility providers or other Potential Parties in Interest in matters unrelated to the Debtors and the Chapter 11 Cases.  None of the representations or relationships described herein are adverse to the interests of the Debtors or their estates.  Moreover, pursuant to section 327(c) of the Bankruptcy Code, L&W is not disqualified from acting as the Debtors' counsel merely because it represents or has represented the Debtors' creditors, equity security holders, professionals, or other Potential Parties in Interest in matters unrelated to the Debtors or the Chapter 11 Cases.  I do not believe that L&W's current and prior representations described herein preclude L&W from being a disinterested party under the Bankruptcy Code.

### **Relationship with Known Holders or 5% or More of Outstanding Common Equity Securities of the Debtors and Prior Representations of the Debtors**

30.     Anglo American Technical & Sustainability Limited ("**AATSL**"), which is a subsidiary of Anglo American plc (together with its affiliates and subsidiaries, including AATSL, "**Anglo**"), holds approximately 81% of Debtor First Mode Holdings, Inc.'s outstanding common stock.  L&W currently represents, has represented, and will continue to represent Anglo in various matters unrelated to the Debtors or the Chapter 11 Cases.  L&W has not represented, and will not represent, Anglo or any of its affiliates in connection with the Chapter 11 Cases or any matter adverse to the Debtors.  Anglo has retained Davis Polk & Wardwell LLP ("**Davis Polk**") and Morris, Nichols, Arsht & Tunnell LLP ("**Morris Nichols**") in connection with the Debtors' Chapter 11 Cases.

31.     Based on the foregoing, I do not believe L&W's former or current representations of Anglo precludes L&W from meeting the disinterestedness standard under the Bankruptcy Code.

## Relationships with Secured Parties

32.     L&W currently represents or formerly represented certain of the Debtors'
significant noteholders and/or certain of their affiliates.  Specifically, L&W currently represents
or in the past has represented, Anglo American plc, Anglo American Services (UK) Ltd., Dell
Financial Services LLC, Macquarie Equipment Capital Inc., PNC Bank, N.A., and certain of their
affiliates (collectively, the "**Secured Parties**") in a number of different matters unrelated to the
Debtors and the Chapter 11 Cases.  The Secured Parties comprise one or more of the following:
(a) a prepetition or postpetition lender to the Debtors; (b) an entity with whom the Debtors have a
banking relationship; (c) an agent under the Debtors' prepetition or postpetition credit facilities;
(d) a trustee under the Debtors' prepetition indenture; or (e) holders of notes under the Debtors'
prepetition indenture.  L&W has not represented and will not represent the Secured Parties in
connection with any matter in the Chapter 11 Cases.

33.     I do not believe that L&W's past or current representation of the Secured Parties in
matters unrelated to the Debtors or the Chapter 11 Cases precludes L&W from being a
disinterested party under the Bankruptcy Code.  In the event that the Debtors and any of the
Secured Parties become directly adverse to one another in an adversary proceeding in the
Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

## Other Connections to Potential Parties in Interest

34.     Certain insurance companies pay the legal bills of L&W clients.  Some of these
insurance companies may be involved in the Chapter 11 Cases.  None of these insurance
companies, however, is an L&W client as a result of the fact that it pays legal fees on behalf of a
client of L&W.

35.     Certain of the parties in interest in the Chapter 11 Cases may be, or previously may
have been, members of ad hoc or official creditors' committees represented by L&W in matters

unrelated to the Chapter 11 Cases.  In such instances, L&W represented only the committee or group, and did not represent the creditors in their individual capacities, and no attorney client relationship exists or existed between L&W and such parties in interest unless specifically noted. L&W does not and will not represent any of these parties in connection with the Chapter 11 Cases.

36.     L&W may have represented, and may currently represent, entities that hold or may in the future hold certain of the Debtors' debt in beneficial accounts on behalf of unidentified parties.  Because distressed debt is actively traded in commercial markets, L&W may be unaware of the actual holder of such debt at any given moment.  L&W also represents numerous entities in unrelated matters that may buy and/or sell distressed debt, claims, or equity interests of chapter 11 debtors.  Moreover, from time to time, L&W is engaged by various entities that buy and/or sell distressed debt to analyze the capital structure of a distressed company based on a review of publicly available information.  L&W does not undertake such reviews after it has been engaged to represent any such company, including the Debtors, and does not view any public debt review as an adverse representation to the Debtors.  Similarly, as a large, international firm, L&W may represent creditors and/or investors of or parties interested in investing in one or more parties in interest in these cases.  L&W does not believe these relationships represent interests adverse to the estate.

37.     Certain of the Debtors and their non-debtor affiliates or other entities associated with the Debtors may be creditors of entities that L&W currently represents or has represented in bankruptcy proceedings or post-effective date claims processes.  Similarly, certain parties in interest in the Chapter 11 Cases may be current or former L&W restructuring clients.  L&W will not represent the Debtors, the Debtors' non-debtor affiliates, or other entities associated with the Debtors in any matter related to other L&W clients' bankruptcy proceedings.  Nor will L&W

32753470.1

17

represent any of its other restructuring clients against the Debtors in any of its other clients' restructuring matters.  L&W's other chapter 11 representations are unrelated to the Chapter 11 Cases and the Debtors.  I do not believe these representations preclude L&W from meeting the disinterestedness standard under the Bankruptcy Code.

## Relationships with Other Professionals

38.    From time to time, L&W has referred work to other professionals to be retained in the Chapter 11 Cases, and certain such professionals have referred work to L&W.  Also, as part of its practice, L&W appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of whom now or may in the future represent claimants and other parties in interest in these cases.  L&W has not represented, and will not represent, any such parties in relation to the Debtors or their Chapter 11 Cases.  L&W does not have any relationship with any such attorneys, accountants, financial consultants, or investment bankers that would be adverse to the Debtors or their estates.

39.    L&W currently represents or formerly represented certain of the Debtors' other professionals in a number of different matters unrelated to the Debtors and the Chapter 11 Cases. I do not believe that L&W's past or current representation of these other professionals in matters unrelated to the Debtors or the Chapter 11 Cases precludes L&W from being a disinterested party under the Bankruptcy Code.  In the event that the Debtors and any of the applicable professionals become directly adverse to one another in an adversary proceeding in the Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

## L&W Connections with the District of Delaware Bankruptcy Judges and the Office of the United States Trustee for the District of Delaware (and Key Staff Members)

40.    Certain L&W attorneys and/or personnel (or members of their immediate families): (a) previously worked at other law firms or in government services; (b) have participated and may

participate in legal activities; (c) had and have affiliations through law school, conferences, bar, employment, or other organizations; and/or (d) may have social interactions or friendships, in each case, involving (x) Judges and/or key staff members of the United States Bankruptcy Court for the District of Delaware or (y) attorneys or key staff members of the Office of the United States Trustee for the District of Delaware. As part of its standard hiring practices, from time to time, L&W conducts interviews and may make offers of employment to staff members of the United States Bankruptcy Court for the District of Delaware, including law clerks. I do not believe that the foregoing connections preclude L&W from meeting the disinterestedness standard under the Bankruptcy Code.

### **L&W Attorney Investments**

41.     From time to time, L&W partners, counsel, associates, and employees, or members of the households of the foregoing, personally invest in mutual funds, exchange-traded funds, retirement funds, private equity funds, venture capital funds, hedge funds, fund of funds, and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire an interest in debt or equity securities of many companies, one of which may be one of the Debtors, their creditors, or other parties in interest in the Chapter 11 Cases, often without L&W's knowledge. Each such person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. The Investment Funds are generally operated as a blind pool, meaning that when such persons make an investment in an Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell and have no control over such purchases or sales.

42.     From time to time one or more L&W partners voluntarily choose to form an entity (a "**Passive-Intermediary Entity**") to invest in one or more Investment Funds or, in certain instances, directly in private companies.  Such Passive-Intermediary Entity is comprised only of persons who were L&W partners or retired partners at the time of the Passive-Intermediary Entity's formation (although some may later become former L&W partners), and participation in such a Passive-Intermediary Entity is wholly voluntary and only a portion of L&W's partners choose to participate.  L&W itself does not invest in the Passive-Intermediary Entity.  The Passive-Intermediary Entity generally owns substantially less than one percent of any underlying Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  Each Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment Funds will purchase or sell, and has no control over such purchases or sales.  The Passive-Intermediary Entities commonly receive periodic statements and communications from the underlying Investment Funds.  The L&W partners participating in the Passive Intermediary may or may not know the identity of the Investment Fund's underlying investments or the identity of the securities purchased, sold, or held by the Investment Fund.

43.     Certain of the Passive-Intermediary Entities may make a direct investment into a private company.  It is my understanding that no Passive-Intermediary Entity has made any direct investment into the Debtors or otherwise purchased any debt or equity security of the Debtors.  In addition, as discussed above, the Firm Disclosure Procedures involve sending a general inquiry to all L&W attorneys to determine whether any such individuals or any members of their households own or owned any debt or equity securities of the Debtors or hold or held any claim against or

interest adverse to the Debtors, among other things. Thus far, no response to this general inquiry has disclosed the ownership of any debt or equity securities of the Debtors or the holding of any claim against or interest adverse to the Debtors.

44.      From time to time, L&W partners, counsel, associates, and employees personally directly acquire a debt or equity security of a company, which may be (or become) one of the Debtors, their creditors, or other parties in interest in the Chapter 11 Cases. L&W has a long-standing policy prohibiting attorneys and employees from using material non-public information that may come to their attention in the course of their work, so that all L&W attorneys and employees are barred from trading in securities with respect to which they possess material non-public information.

## OTHER INVESTIGATION AND DISCLOSURE MATTERS

45.      L&W's investigation and research of the Potential Parties in Interest has thus far failed to eliminate the possibility that Potential Parties in Interest other than those listed on Appendix 2 hereto may be current or former clients of L&W because: (a) the names of the Potential Parties in Interest are similar to, but not identical to, current or former L&W clients; or (b) the names of the Potential Parties in Interest are common names that appeared on our conflict search results, but do not appear to be the same individuals or entities that are parties in interest herein.

46.      Although L&W has undertaken, and continues to undertake, extensive efforts to identify connections with the Debtors and other Potential Parties in Interest, it is possible that connections with some Potential Parties in Interest have not yet been identified. Should L&W, through its continuing efforts, learn of any new connections of the nature discussed herein, L&W will so advise the Court in a timely manner as soon as reasonably practicable.

47.    L&W will not, while employed by the Debtors, represent any other entity having an adverse interest to the Debtors with respect to matters upon which the Debtors seek to retain L&W during the pendency of the Chapter 11 Cases.

48.    Insofar as I have been able to ascertain, I know of no conflict of interest that would preclude L&W's representation of the Debtors in the Chapter 11 Cases.

49.    The foregoing constitutes the statement of L&W pursuant to sections 327(a), 329, and 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

[*Signature page follows*]

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 14, 2025
Chicago, Illinois

*/s/ Caroline A. Reckler*
Caroline A. Reckler

## Exhibit 1

**Engagement Letter**

# LATHAM&WATKINS

99 Bishopsgate
London EC2M 3XF
United Kingdom
Tel: +44(0)20.7710.1000  Fax: +44(0)20.7374.4460
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh* |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

30 January 2023

First Mode Holdings, Inc. ("**First Mode**")

542 1st Ave SO, STE 300 Seattle, WA 98104, USA

For attention of: Will Smith

Dear Will,

**Engagement for the provision of legal services**

We are pleased to welcome First Mode as a client of Latham & Watkins (London) LLP. This letter (the "**Engagement Letter**"), along with the attached Terms of Engagement as revised from time to time (the "**Terms**"), confirms our discussions regarding your engagement of our firm to provide certain legal services ("the **Engagement**"). The Engagement Letter and the Terms, together, form the basis on which we agree to act for you. If there is any conflict between the Engagement Letter and the Terms, the Engagement Letter shall prevail.

1.     **LEGAL SERVICES**

You have asked us to advise you in connection with a potential private placement by the Woodside group into First Mode.

We will provide advice on English law and the laws of New York where our New York and Houston office(s) will be involved. We are not experts in and are not qualified to advise on the laws of any jurisdiction other than England and Wales, New York, US Federal law and other laws where our firm's offices shall advise, nor do we purport to be generally familiar with those laws. If our firm's foreign offices advise you, Latham & Watkins (London) LLP retains liability for the legal advice provided.

The scope of our work may evolve in accordance with discussions or correspondence with you from time to time. To the extent that additional services are requested by you and agreed to by us, the Engagement Letter and the Terms will apply to such additional services, unless superseded by another written agreement between us. In each case, before we can agree to provide additional services, we may need to perform a conflicts check and confirm our ability to provide these services. Our representation is limited to the specific services that you request us, and that we have agreed, to undertake.

2.     **IDENTITY OF THE CLIENT**

Our sole client in the Engagement shall be First Mode. We do not represent and will not be deemed to have any relationship with any of First Mode's current or future parents, subsidiaries, shareholders, members, partners, employees, directors, venturers or other affiliates or

Latham & Watkins is the business name of Latham & Watkins (London) LLP, a registered limited liability partnership organised under the laws of New York and authorised and regulated by the Solicitors Regulation Authority (SRA No. 203820). A list of the names of the partners of Latham & Watkins (London) LLP is open to inspection at its principal place of business, 99 Bishopsgate, London EC2M 3XF, and such persons are either solicitors, registered foreign lawyers, or managers authorised by the SRA. We are affiliated with the firm Latham & Watkins LLP, a limited liability partnership organised under the laws of Delaware.

*In cooperation with the Law Firm of Salman M. Al-Sudairi LLC

EU-DOCS\42181972

**LATHAM&WATKINS**

constituents solely on account of our representation of First Mode in this matter or any matters we agree in the future to accept. We are distinguishing between the entities and persons who are and are not our clients so that it is clearly understood to whom our various duties are owed. We shall have those duties to our clients as set out herein, but not to other entities or persons even if they are affiliated entities or constituents of First Mode. If we subsequently agree to represent any affiliated entities or constituents of First Mode, we will need to perform a conflicts check and either execute separate engagement letters with them or confirm the details of the representation in writing. If, however, we take on work for such affiliated entities or constituents without such a separate engagement letter or confirmation, the Engagement Letter (including, but not limited to, terms governing conflicts of interest and arbitration of disputes) and the Terms will apply to that representation.

To allow us to conduct a conflicts check, you represent that you have identified to us all persons and entities that are or are expected to become involved in this matter. You also agree to notify us if you become aware of any other persons or entities that are or may become involved in this matter.

You confirm that, as far as is permissible in law and except where otherwise agreed, we shall not be liable to any third party, including other members of your client group or otherwise, which relies on the advice provided under the Engagement. You agree that you will not pass on the advice provided to any third party (other than to affiliated entities or constituents of First Mode in respect of the Engagement) without first obtaining our consent.

Our representation of First Mode in the Engagement shall not restrict us from acting for Anglo American plc and its affiliates on other unrelated matters, so far as relevant solicitor and bar rules permit.

3.    **VERIFICATION OF IDENTITY**

The law requires us to carry out a formal check of the identity of all new clients. We will be in touch separately if we need your assistance in obtaining verification documentation.

Please also note in this regard the section on money laundering and the proceeds of crime in the Terms. If you would like to discuss the implications of this section with us, please let us know.

4.    **OUR FIRM**

Latham & Watkins (London) LLP is a registered limited liability partnership organised under the laws of New York, authorised and regulated by the Solicitors Regulation Authority (SRA No. 203820) and registered with the Law Society of England and Wales as a multinational partnership, with its principal place of business at 99 Bishopsgate, London EC2M 3XF ("**Latham & Watkins (London) LLP**", and where referred to in the Engagement Letter and the Terms together with Latham & Watkins LLP and its other affiliates, "we", "our", "us" or "our firm"). "Latham & Watkins" is the business name of Latham & Watkins (London) LLP.

Latham & Watkins (London) LLP and its affiliates operate in a number of jurisdictions around the world that have different legal and professional requirements relating to the practice of law. At the date of the Engagement Letter, our firm's operations in various jurisdictions are conducted through different affiliates registered in the United States, France, Hong Kong, Japan and Singapore. Work done in Saudi Arabia will be carried out through a cooperating law practice registered locally. These distinctions will not impact on the provision of legal services by our firm, although invoices may be issued to you through an affiliate.

LATHAM&WATKINS

5.   **PERSONS RESPONSIBLE**

I and Ryan Maierson shall be the partners with responsibility for the Engagement.  My direct dial number is +44.20.7710.3048 and my email address is samuel.newhouse@lw.com.  Ryan's direct dial number is +1.713.546.7420 and his email address is ryan.maierson@lw.com.  We shall draw on the specialist skills of other parts of our firm where appropriate.

It will be our responsibility to ensure internal co-ordination and consistency of approach.  As far as possible we shall avoid changes in personnel and we shall let you know, if appropriate, if any significant changes become necessary.

We understand that you are authorised to, and will be primarily responsible for, instructing us on this matter and any new matters.  Unless you inform us of any change, we will assume that this remains the case and that you have authority on behalf of First Mode to incur costs on its behalf.  As an individual matter progresses, we may need to act on instructions from other people from whom we consider it is reasonable to take instructions in order to progress the matter within the timescales set.

6.   **RATES, FEES AND CHARGES**

Our fees are based primarily on the amount of time spent by our lawyers and paralegals on your behalf.  Each lawyer and paralegal assigned to this matter will have an hourly billing rate, and the rate multiplied by the number of hours spent, measured in tenths of an hour, will be the initial basis for determining our fee for each particular matter.

Our lawyers' billing rates applicable to the Engagement currently range from USD 705 per hour to USD 2,565 per hour, depending upon the seniority and expertise of the lawyer involved.  For paralegal, trainee and research support specialist time, our rates will range from USD 275 to USD 1,440 per hour.

In addition to fees, you agree to pay for other charges, as set out in detail in the Terms.  The fees and charges we bill to you are your responsibility whether or not a third party (such as an insurer) has agreed to pay them and whether or not you are entitled to recover any part of them from a third party (such as following success in litigation).

It is important that you understand our charges.  We will act reasonably and prudently in incurring them.

Our billing rates and charges are usually revised annually, but we reserve the right to revise them at other times during the course of our representation.  Following any such revision, our new rates and charges will be applied to and shown on your account, and the Engagement Letter constitutes written notice to you of our right to make such revisions.

We intend to provide you with a weekly fee update and invoices to you on a monthly basis.  Our invoices represent fees for the work we have done, together with other charges incurred, during the period covered by the invoice.  They will show our time logged in tenth-of-an-hour increments and will clearly set out and separate fees from our other charges.  Invoices and VAT invoices will be addressed to the corporate vehicle to which we have provided legal services and may be payable by such corporate vehicle, any of its affiliated entities or other constituents of its corporate group.  Payment of our invoices is due promptly upon receipt.  Our rates are based on our receiving payment within 30 days of the invoice date.

Where we act in a co-ordinating role on a particular matter, we will, if you so request, take your instructions on the legal aspects of the matters in all the relevant jurisdictions and, if applicable, will pass those instructions to the other relevant foreign law firms.  We will be responsible for

LATHAM&WATKINS

updating you as to progress in each jurisdiction. We will have in place procedures with the other legal advisers to ensure that this can be done efficiently. Of course you may rather choose, if you prefer, to contact any of your legal advisers directly as to issues arising in that jurisdiction. Any such foreign law firms shall be engaged directly by you and shall be responsible to you for their own advice. The other law firms will bill you directly. You will be responsible for the fees of all lawyers instructed.

Where we are reasonably able to do so, we shall advise you of our fee estimate for each particular matter under the Engagement. For this Engagement, we have provided you with a separate fee estimate and cap.

We reserve the right to charge you for the time and expense involved in responding to any data subject access request, under the General Data Protection Regulation or any national legislation including the Data Protection Act 2018 (as amended or replaced from time to time) or any regulations made under it, received by us from a third party in connection with any matter on which we are or were acting for you. This obligation will survive the termination of this agreement and our relationship with you.

Where fees are incurred in a foreign currency we will use a spot rate to convert and itemize the fees on our invoice in the invoice currency. We will bear the risk of any change in the exchange rate, between the point of time when the invoice is raised and when the payment becomes due. This means that if the change in rate results in a loss, we will cover this and you will not be required to make any further payments in respect of our invoice. If the change in rate results in a gain, we will retain this. You confirm your consent to this arrangement and to us bearing the risk of any loss or gain. Please contact us if you would like to discuss this further, receive details of the amount in question, or, alternatively, bear the risk of any loss or gain yourself. We reserve the right to pay to you or seek reimbursement of any net gain or loss in excess of £100 in respect of any invoiced amount to which a spot rate was applied.

Notwithstanding any estimate given to you, the final bill will be a product of the amount of time our fee-earners spend on the transaction and our relevant benchmark fee rates, or will be calculated in accordance with the Solicitors Act and/or the Solicitors' (Non-Contentious Business) Remuneration Order 2009 or the provisions of Part 44 of the Civil Procedure Rules. In that respect, note that our estimates are neither intended to be a cap nor a target billing figure. Therefore, if significant further work is required in addition to that currently envisaged or if the timetable is extended significantly, our fees will be greater than the indicative estimate. Should it become apparent at any time that significant further work will be required, we shall of course let you know.

Estimates are given in good faith, but are non-binding and provide an indication only of the costs that might be incurred in relation to this particular matter. Any steps referred to in any estimate given are the minimum required and we reserve the right to amend or update any estimate given as necessary going forward. Note that legal work, by its very nature, is difficult to predict and is never risk-free and any estimate given should thus be read with that in mind. Any estimate given is based on the information available and supplied to us at the present point in time.

7.    STANDARD OF CARE

In carrying out our work we will owe First Mode the normal duties owed by a solicitor to his client, including a duty of care and a duty of confidentiality. A duty of care is owed to First Mode and not to anyone else.

It is my responsibility to ensure that we work for you as efficiently and as cost effectively as possible. In order to fulfil our task, it will be necessary to obtain a significant amount of

Page 6

LATHAM&WATKINS

information from you and your other professional advisers. To enable the work to be carried out as efficiently as possible, you should ensure that all information provided is to the best of your knowledge complete, accurate and up to date, and is supplied as quickly as possible. We shall in any event have to rely on the completeness and accuracy of the information you give us. You should notify us as soon as possible of any changes or variations to that information which may arise after the date it is passed to us, as well as of any new circumstances which might be relevant to the work we are undertaking. You permit the transfer of information relating to you between the offices of our firm.

We shall do our best to ensure that the matters under the Engagement progress successfully. If you have any questions about what we are doing on a particular matter, please speak to me at any time. We are committed to high quality advice and client care. If you are in any way dissatisfied with our services, or about your bill, or have any suggestions as to how our service to you could be improved, please contact me in the first instance. If you have any further concerns then please see the complaints section in the Terms for further contact details and guidance about how to make a complaint.

Please also be aware that our firm has internal ethics and professional responsibility counsel, who advise our firm's lawyers in relation to their ethical, professional and legal duties. From time to time, the lawyers working on your matter may consult these counsel. You acknowledge any such consultation is protected by our firm's own solicitor-client privilege, and is not subject to discovery. You also agree that such communications are the property of our firm.

8.    **CONFLICTS OF INTEREST AND CONFIDENTIAL INFORMATION**

While we are representing you in this matter, we will have no other role in this matter for another party without your consent or save as set out elsewhere in the Engagement Letter. As with any other client and any other matter, you will have our complete loyalty with respect to this matter. Our representation will be in accordance with the Solicitors Regulation Authority Code of Conduct for Firms 2019 (the "SRA Code") and any other applicable rules or laws.

We note that our firm is an international law firm with numerous lawyers and offices in many countries and that we practice in many diverse areas of law. It is possible that during the time we are representing you, some of our current or future clients may ask us to represent them in matters in which you are involved as another party. Furthermore, some of our clients may now or in the future operate in the same lines of business as you do. Both our own prudent business conduct, and the interests of our other clients, call for us to seek to retain the ability to accept matters for all of our clients. While we recognise the business relationship issues that are generally involved with litigation against clients, we ask for advance conflicts waivers covering litigation as an important part of our intake process. We thus ask you in connection with the Engagement to consent in advance to our acceptance of matters (including litigation matters) adverse to First Mode (whether such matters are currently pending or arise in the future), provided the matters are not substantially related to any matters we are handling or have handled for you. By entering into this agreement, you consent in advance to such adverse representations. Thus, for example, you agree that we would be able to take on a new lawsuit or transactional matter adverse to First Mode for a current or future client at the same time that we are representing First Mode, provided the adverse matter is not substantially related to any matters we are handling or have handled for you. This consent also includes being adverse to you in any bankruptcy, regulatory, administrative, legislative or rulemaking proceeding.

In addition, by entering into this agreement you agree that if we represent you in a matter adverse to another person or entity, we may represent such other person or entity on matters not substantially related to our work for you.

LATHAM&WATKINS

We note that, under the SRA Code, in certain circumstances we are able to carry out parallel mandates for one or more clients for a same or related matter, sometimes referred to as "running trees". By signing the Engagement Letter you agree to the use of such parallel mandates provided we use separate teams and put in place appropriate ethics walls that meet the confidentiality requirements set out in the SRA Code.

We agree to keep confidential all the information that we receive in respect of the Engagement. We will not disclose that information to any other person unless you have consented for us to do so, if the information is already in the public domain or we are required to do so by applicable laws or regulations or any court or administrative order or, subject to appropriate terms regarding confidentiality, to service providers providing administrative and similar support services to our firm in the ordinary course of our firm's business. You agree that we may disclose such information to our professional advisers and insurers where they require such information in order to reasonably provide their services to us.

Whilst we owe a duty to disclose any relevant information to you in accordance with our professional obligations, in the ordinary course of business we will owe a duty of confidentiality to other clients. You agree that if we hold confidential information relating to another client that may be relevant to you, we will uphold the duty of confidentiality to that other client in respect of that information, and we will not be able to disclose it to you or use that information for your benefit. However, we will provide the same standard in relation to your information. Therefore, if in acting for you, we receive confidential information that is, or becomes, relevant to a matter on which we are asked to advise another client, we will continue to maintain its confidentiality in accordance with the paragraph above and we will not use it for the other client's benefit. You do, however, agree by entering into this agreement that in these circumstances we can act and continue to act for that other client without obtaining consent from you, except where we are not permitted to do so under any applicable laws or regulations. In these circumstances we will set up an ethics wall, and you agree that we are able to do so without your consent provided we meet the strict confidentiality obligations required of our firm.

You should feel completely free to take separate legal advice concerning these matters and we encourage you to do so. By signing the Engagement Letter, you acknowledge that you have had an opportunity to consult with other counsel.

9.      **PROFESSIONAL CONDUCT**

The London office of Latham & Watkins (London) LLP is primarily staffed by English qualified lawyers, dual qualified lawyers and other lawyers who are qualified only in other jurisdictions (primarily the United States). You agree that as this instruction will primarily be run from our London office, we shall conduct the matter in accordance with the rules, principles and guidelines of the Law Society of England and Wales and the Solicitors Regulation Authority irrespective of the jurisdiction of qualification of our lawyers engaged in this assignment. In particular, we shall apply the SRA Code for the purposes of determining conflicts of interest.

10.     **LIMITATION OF LIABILITY**

Latham & Watkins (London) LLP is a registered limited liability partnership organised under the laws of the State of New York. Similar to other corporate forms of limited liability business organisation, the limited liability partnership form generally limits the liability of Latham & Watkins (London) LLP to the capital invested in, and assets of Latham & Watkins (London) LLP against claims arising from services performed by Latham & Watkins (London) LLP.

LATHAM&WATKINS

Please refer to the section in the Terms headed "Liability of Latham & Watkins (London) LLP" for further information as to the limitations on our liability in respect of the Engagement. Please specifically note that Latham & Watkins (London) LLP is liable for legal services provided by its partners, consultants and employees and that no individual has or will have any personal responsibility to you for the legal services provided under the Engagement.

If Latham & Watkins (London) LLP is jointly liable with another person, our liability shall be reduced to the extent of any contribution which we would otherwise have been entitled to recover from any other adviser but which we are unable to recover as a result of you having agreed a limitation of liability with that other adviser. Nothing in the Engagement Letter or the Terms is intended to, or shall be interpreted as, limiting our liability in any jurisdiction which prohibits such a restriction or limitation of liability.

11.    **GOVERNING LAW AND ARBITRATION**

The Engagement Letter and the Terms, and any non-contractual obligations arising out of or related or connected to the Engagement, are governed by and are to be interpreted in accordance with English law.

Subject to your right to have recourse to the Legal Ombudsman and/or to apply to court under Part III of the Solicitors Act 1974, any dispute, claim, difference or controversy arising out of, relating to or having any connection with the Engagement Letter and the Terms, including any dispute as to their existence, validity, interpretation, performance, breach or termination or the consequences of their nullity and any dispute relating to any non-contractual obligations arising out of or in connection with them, shall be referred to and finally resolved by arbitration under the LCIA Arbitration Rules (the "**Rules**"). The Rules are incorporated by reference into the Engagement Letter. The number of arbitrators shall be three. Two of the arbitrators shall be nominated by the respective parties and the third, who shall be the presiding arbitrator, shall be nominated by the two party nominated arbitrators within 30 days of the last of their nominations. If there is more than one claimant party and/or more than one respondent party, then the claimant parties together and the respondent parties together shall each nominate one arbitrator. In the event that the multiple claimants, the multiple respondents or the party-nominated arbitrators fail to nominate an arbitrator, the relevant arbitrator(s) shall instead be selected and appointed by the LCIA Court who shall designate one of them as the presiding arbitrator. The seat (legal place) of arbitration shall be London, England. The language to be used in the arbitral proceedings shall be English.

The parties and the arbitral tribunal shall keep confidential the existence and substance of any dispute and the arbitration, the materials used and created for the arbitration, and the awards and decisions of the arbitral tribunal, unless that information is already in the public domain (otherwise than through a breach of this paragraph or any other confidentiality obligation between you and us) or if that information is required to be disclosed: (a) by applicable laws or regulations; (b) by any of the parties to their professional advisers or insurers where they require that information to provide their services to them; or (c) to protect or pursue a legal right or to enforce or challenge an award in legal proceedings.

12.    **ENTIRE AGREEMENT AND CONCLUSION**

You and we understand that the Engagement Letter together with the Terms constitutes the entire agreement pertaining to your engagement of Latham & Watkins (London) LLP, and that it shall not be modified by any policies, procedures, guidelines or correspondence from you or your representative unless agreed to in writing by Latham & Watkins (London) LLP.

**LATHAM&WATKINS**

All parties signing the Engagement Letter represent and warrant that they are fully authorised to enter into this agreement, and in the case of signatories agreeing on behalf of organisations, to bind the organisation or organisations to the terms in the Engagement Letter and the Terms.

I look forward to working with you. If the points set out above and those in the Terms are satisfactory for you, please sign the enclosed copy of the Engagement Letter, where indicated, and return it to me.

Yours faithfully

For and on behalf of
Latham & Watkins (London) LLP

**Encs:   Terms of Engagement**

Page 10

# LATHAM&WATKINS

### Approval of Engagement Letter

First Mode agrees to the terms set out in the Engagement Letter (together with the Terms of Engagement), effective as of the date on which Latham & Watkins (London) LLP first provided services to First Mode.



Date:  30/01/2023

Signed for and on behalf of

First Mode Holdings, Inc.

Name:  Julian Soles
Title:   CEO & President

# LATHAM&WATKINS

**TERMS OF ENGAGEMENT**

These Terms of Engagement (the "**Terms**") will be revised from time to time. In those circumstances, a replacement copy will be sent to you, and the revised Terms will apply with effect from 4 weeks from the date you receive them (except to the extent otherwise agreed in writing). You are free to terminate the Engagement between us if you do not accept the revised Terms. Capitalised words in the Terms shall have the same meaning as in the Engagement Letter unless otherwise defined.

### 1. Instructions

Notwithstanding that a limited number of persons may be named in the Engagement Letter, we will assume, unless you instruct us to the contrary, that any of your directors or employees who gives us instructions is authorised to do so and that we may act on instructions given orally. Where appropriate we may be required to verify the identity of such persons in accordance with our professional obligations under prevailing client identification procedures.

### 2. Our responsibilities and liabilities

Our responsibility in relation to the Engagement is only to the particular client who gives us instructions. Our firm shall not be under any duty to, nor have any responsibility towards, any other person in connection with any matter (unless that person is also a client of our firm in relation to such matter), even if the objective of the client's instructions is to confer a benefit upon such a person.

You agree that you will inform us if you agree, or are asked to agree, to limit the liability of another of your advisers in connection with any matter in respect of which we are also instructed.

### 3. Financial Services and Markets Act 2000

We are not authorised under the Financial Services and Markets Act 2000 ("FSMA") by the Financial Conduct Authority. We are regulated by the Solicitors Regulation Authority, including in relation to our carrying on of any "exempt regulated activities" under the FSMA. We are permitted to carry on a limited range of activities relating to investments where an exemption under the FSMA applies, including regulated activities which may reasonably be regarded as a necessary part of our legal services.

Our primary role is as legal adviser and it is not part of our function to give advice on the commercial merits of entering into investment transactions or exercising investment rights, or to act as a broker or arranger of transactions; the remit of our services is limited to advice on legal issues. When providing our services, we will assume that your decision to consider, discuss or negotiate a proposed investment transaction, and any decision actually to enter into an investment transaction, is made by you solely on the basis of your own assessment of the transaction, and any advice which you may receive from a person authorised under the FSMA.

Nothing we write or say should be construed as an invitation or inducement to engage in investment activity nor will we communicate any such invitation or inducement on your behalf.

### 4. Insurance Distribution Activity

We are not authorised by the Financial Conduct Authority. However, Latham & Watkins (London) LLP is included on the Register provided by the Financial Conduct Authority so that it can carry on insurance distribution activity, which is broadly the advising on, selling and administration of insurance contracts. This part of our business, including arrangements for complaints or redress if something goes wrong, is regulated by Solicitors Regulation Authority. The register can be accessed via the Financial Conduct Authority website at www.fca.org.uk/register.

If we provide a service which includes the carrying on of an insurance distribution activity, we will do so as an ancillary insurance intermediary. However, where we do carry on insurance distribution activities, ordinarily these are limited to arranging contracts of insurance.

We do not and cannot manufacture insurance products. We do not provide a personal recommendation in respect of an insurance product. When engaging in insurance distribution, we typically act only on behalf of our client, and not the insurer. Neither we nor any insurance company has any voting rights or capital interest in the other. Our complaints procedure is on our website and set out in these terms. We do not accept any fee or commission from any third party for our work relating to insurance distribution.

### 5. Fees

Fee rates will be reviewed at least annually. Fees estimates or quotations are exclusive of VAT, similar taxes and other charges. Any estimates are given in good faith, but unless otherwise agreed, fees may be higher or lower than estimates given.

Unless otherwise agreed, the fees for our work will be calculated as provided for in the Solicitors Act 1974 and/or the Solicitors' (Non-Contentious Business) Remuneration Order 2009 in relation to non-contentious business, and Part 44 of the Civil Procedure Rules in relation to contentious business, as appropriate, and taking into account our standard hourly rates for partners and staff, which are based on their level of qualification. Unless otherwise agreed, fees for the work of other entities within our firm will be calculated by reference to the time spent.

Should a matter not be carried through to completion then a charge will be made in respect of the work that has already been completed. VAT or similar taxes would be payable on that amount and you would also be billed for other charges incurred.

Where additional staff are required to join the team working for you, they will be charged at equivalent rates to those agreed in respect of relevant individuals of similar experience already working for you, or at the standard rates for those individuals, as appropriate.

In certain circumstances, there may be an expectation that a third party will pay your costs. In the event that such third party does not pay the amount due, you will be required to pay the outstanding costs. If in the course of acting for you or following termination of a retainer, a third party seeks access to documents held by our firm, or seeks to interview any individual in connection with any work done for you, we or they may be required as a matter of law to deal with their request. In such circumstances, we will notify you and seek your instructions if possible, but if it is not practicable to do so, we will proceed on the basis that you are not prepared to waive confidentiality or privilege and that we or they should comply with the request only to the extent we or they are required to do so. You will be responsible for any charges in dealing with any such request.

### 6. Invoice payment terms

Our invoices are due for payment promptly on receipt. If possible please make payment by way of bank transfer. Bank details appear on our invoices.

Invoices should be paid in the currency in which they are denominated, save with our prior agreement. If bills are not settled in that currency, we reserve the right to ask you to account for any shortfall caused by converting the payment into that currency. If an invoice remains unpaid for more than 30 days, or if you fail within 30 days to meet a request for payment on account of costs and/or charges, we reserve the right to decline to act any further. In such a case, the full amount of work done up to that date will be charged to you.

We reserve the right to charge interest on amounts which are overdue for more than 30 days. Interest will be calculated at an annual rate equivalent to the rate for the time being applied to judgment debts.

### 7. Value Added Tax (or equivalent taxes)

All rates of charge, quotations or estimates which we give you exclude Value Added Tax (or equivalent taxes), which will be added to our other charges where applicable. Where other charges are incurred in offices outside the UK, any applicable local sales or similar tax will also be added. In considering whether VAT (or equivalent taxes) is applicable, we will need to rely on information provided by you. If, as a result, invoices omit VAT (or equivalent taxes) which is later found to be applicable, you agree to pay the amount of such taxes, including any penalties or interest arising from the initial failure to pay such taxes.

### 8. Other charges

Our charges will include such items as photocopying and scanning documents (USD 0.10 per page); at-cost expense for large-volume print jobs over 100 pages when formatted in Word or Adobe applications; long-distance and roaming mobile phone charges; use of fee-based research databases (90% of the third party vendor rate or 1.25 times our volume discounted cost depending on the vendor); couriers and air freight charges (1.10 times our volume-discounted cost);

messengers (at third-party vendor rate), travel expenses (business class, unless agreed otherwise, plus reasonable meal and lodging charges); word processing charges; postage, at cost; supply costs (for large volume only); and other reasonable costs and expenses. Our charges will not include meal and transportation costs unless otherwise agreed. For larger charges, we may ask that invoices be sent directly to you or that advances be provided.

### 9. Copyright

We will retain copyright and knowhow in all documents we draft, but we grant you a royalty free licence to use the documents for your purposes. We accept no liability whatsoever in the event such use does not relate to the Engagement.

### 10. Counsel and other professionals and agents

If it is agreed that we should instruct outside professionals such as counsel (barristers), foreign lawyers, accountants or other experts or agents on your behalf, you will be responsible for payment of their fees. Counsel's fees will be included in our invoices to you. In the case of other professionals or agents it is likely to be preferable for the contract with them to be entered into directly by you, although we would normally make the necessary arrangements and deal with the professional or agent on your behalf. If, however, you prefer us to enter into any necessary contracts with professionals or agents we shall include their fees in our invoices. Where substantial fees are involved we may ask for a payment on account to be made.

### 11. Payments on account

Money held on account of costs will be held in our client account separately from our funds. This amount may be offset against interim or final invoices. The amount offset will be shown on the face of the invoice. In accordance with Solicitors' Accounts Rules, we are obliged to transfer funds held in our client account on account of costs to our office account within 14 days of raising our invoice and, unless we hear from you to the contrary, we will make such a transfer. We may ask you to make further payments on account of costs from time to time as our work proceeds or once this amount has been extinguished. Monies held on client account will be credited with interest in accordance with our interest policy. A copy of our interest policy is available on request.

We expect you to bear all costs of transmitting payments on account to us. Payments should therefore be made gross of all bank or agent's charges.

### 12. Protection of client money

We draw to your attention that should any of your money be placed into our Latham & Watkins (London) LLP client account, for example through payment required in relation to a matter or due to a payment on account structure, if the bank fails then Latham & Watkins (London) LLP will not be liable to repay your money if it is not covered by the Government's Financial Services Compensation Scheme ("**FSCS**") provided we have taken reasonable steps to follow all advice from the FSCS, the Law Society and

the Solicitors Regulation Authority as to how to protect client money in client accounts.

### 13. Confidentiality and disclosure to third party authorities

We shall keep your affairs and the information you give us strictly confidential. Likewise, we will not disclose the confidences of any other client to you, even where that information might have some bearing on your interests, and you agree that we are under no obligation to do so.

However, certain laws (for example, those relating to money laundering and tax fraud) give power to authorities such as the police or tax authorities to inspect client information and take copies of documents. In addition, in specific circumstances, these laws compel us to report information to the authorities even in the absence of a request. It is possible that, at any time, we may be requested by these authorities to provide them with access to documents held by our firm, or to attend interviews with them in connection with the work we have done for you. In the unlikely event that such a situation arises, we shall comply with the request only to the extent that we believe we are bound by law to do so and, insofar as it is practicable, shall notify you of the request or the sharing of information. As part of our service to you, we will do our best to protect your interests in those circumstances.

For the purposes of marketing or publicising or selling our services we will not disclose that we have advised you unless you have consented for us to do so, in which event we may identify you by your name and indicate the general nature of such advice and any details which have properly entered the public domain. You agree that we may disclose such information on our website in respect of our attorney biographies and lists of credentials.

We reserve the right to disclose any information to our professional indemnity insurers, advisers or bankers in connection with the operation of our client account.

### 14. Data protection

Details of the way in which our firm may use personal information about you and other individuals at your organisation are set out in our Client and Third Party Privacy Notice which can be found on our website at www.lw.com/privacy. We have made a commitment through our Binding Corporate Rules to apply a consistent standard across the firm when collecting, using and managing personal information. If you have any questions about how we use your personal information or wish to exercise your rights, please contact the Global Data Protection Officer at DataPrivacy@lw.com. In the event that the Services we provide require you to transfer personal data from a location in the European Economic Area to Latham & Watkins London, Latham & Watkins London will, at your request, enter into the standard contractual clauses for controller to controller transfers as approved by the European Commission from time to time.

### 15. Commercial communications by email

We constantly attempt to improve our service, and monitor developments in the law and practice. Periodically we may send information about this, including brochures

and press releases and invitations to seminars or talks, if we believe that they may be of interest to you. You agree that we may send information of this kind by email to you and others at your organisation with whom we have contact. You can opt out at any time.

### 16. Takeovers

If our services in respect of a matter under the Engagement relate to a transaction within the scope of the English City Code on Takeovers and Mergers, we reserve the right to withdraw, on reasonable notice, from acting for you on that matter if you, or any of your agents or other advisers, fail to comply with the Takeover Code.

### 17. Money laundering and proceeds of crime

Since the beginning of 2002, there have been extensive laws designed to prevent money laundering and/or terrorist financing. Under these laws we have a duty to report transactions which we regard as suspicious. It is important that you are aware of this.

At the outset of receiving instructions it may be necessary for us to ask you a series of questions regarding your identity. Where beneficial ownership is involved, we will need to identify the individual who beneficially owns or controls the client on whose behalf the transaction is being conducted. Even if you are an existing client and we have already established your identity and address, we may need to update our records by requiring further evidence. We are obliged by law to undertake this level of enquiry and follow certain procedures, and we hope you will understand this.

If the matter on which you are instructing us involves the movement of money or other property through the firm, either directly or through another party, we have to be satisfied that the relevant transaction is legitimate. Consequently we may need to ask you additional questions, including questions as to the source of relevant funds.

Furthermore, the Proceeds of Crime Act 2002 (the "**Act**") creates a number of offences relating to the proceeds of crime of which you should be aware when you instruct us. Criminal property is widely defined in the Act, and constitutes monies/property/assets which have accumulated as a result of any crime. These include, for example, monies (however low in value) saved as a result of dishonest tax evasion.

If we become aware or suspect the existence of the proceeds of crime in the course of acting for you (whether from you or from any other person), we may have to report the irregularity to the National Crime Agency ("**NCA**"). In those circumstances, the NCA may withhold permission for us to continue with the transaction for a period of time. You should also know that the NCA can pass the information received to any relevant body such as the HM Revenue & Customs ("**HMRC**") and an HMRC investigation and/or criminal proceedings may take place at any time in the future.

It follows from the above that if you have any concerns about irregularities in your financial position you may wish to seek specialist accountancy advice to correct those irregularities. We strongly recommend that you do this before proceeding further. Please

note that accountants and banks are also required to comply with the provisions of the Act.

In particular, it is important that you are aware that we may have a legal duty under the Act to report known or suspicious circumstances without telling you. The obligations which we have under the Act can, in certain limited circumstances, override the duty of solicitor/client confidentiality.

Circumstances may also arise where we approach you in order to seek your permission to report certain matters to the NCA. For instance we may take the view that by proceeding further with your transaction without the requisite permission from the NCA, we may be assisting in the commission of a money laundering offence. In the event that you refuse such permission, we reserve the right to terminate the retainer, and if we do so in these circumstances, you will remain liable for all our fees and expenses incurred up to the date of such termination.

We regret that the law does not allow us to restrict these obligations in any manner.

### 18. Criminal Finances Act 2017 (CFA)

With effect from 30 September 2017, the CFA 2017 creates corporate offences of failure to prevent the facilitation of foreign and UK tax evasion. We have a zero-tolerance approach to tax evasion and the facilitation of tax evasion by anyone who performs services on our behalf and has procedures to prevent such conduct.

You confirm that you will not request or require us to take any action which could constitute facilitation of tax evasion for the purposes of the CFA 2017 and will provide to us any information which we may reasonably request in order to satisfy ourselves of this.

Should we reasonably consider that you are, or that a person associated with us is, seeking to evade tax or facilitate the evasion of tax in connection with the Engagement, then we may terminate the Engagement and/or the relationship with the associated person. You will remain liable for all our fees and expenses incurred up to the date of such termination.

### 19. Risk Matters

We are subject to a number of legal, regulatory and professional obligations in relation to anti-bribery, corruption, money laundering and sanctions in a number of jurisdictions and our client and matter intake policies require that we satisfy ourselves, in each case of our ability to comply with these obligations during the course of each engagement on which we are retained.

In addition, if we are of the opinion that the Engagement puts us at risk of legal liability, alleged breach of the rules of any professional body to which any of our lawyers is subject or exposes us to reputational risk in any jurisdiction, then we may consult with you in good faith with a view to modifying the Engagement so as to mitigate or eliminate the relevant risk.

If following such consultation or attempts by us to consult we consider in good faith that the relevant risk is material and has not been satisfactorily mitigated, then we may terminate the Engagement or any matter under

the Engagement (without prejudice to any liability accrued).

### 20. Our papers

Documents that are: (a) prepared for our benefit or protection; (b) prepared as the means by which we discharge our services; (c) drafts and working papers; (d) internal emails and correspondence; (e) emails and correspondence written by you to us; (f) accounting records, including vouchers and instructions; and/or (g) copies of any such documents, remain our firm's property. We will, of course, at your written request (and subject always to our compliance with any applicable laws to the contrary), provide to you the documents we hold that belong to you, provided that all bills on the relevant matter have been paid and that, if the copying or printing is extensive, you pay the cost (including both professional time and document production charges).

### 21. Retention of papers

At the conclusion of a matter, you agree to take possession of all original contracts, share certificates, title deeds, wills and other such important documents and we shall have no further responsibility with regard to such documents. It is impossible for us to store indefinitely all of the papers generated on all of the matters with which we deal, and so we shall have the right to destroy the files and papers relating to this matter at any time after seven years from the date of the conclusion of our representation. In addition, in the event we are holding files of yours for a matter other than one in which we have represented or are representing you, you agree that we may dispose of such files seven years after we receive them, if you have not claimed them from us prior to that.

### 22. Complaints

Latham & Watkins (London) LLP is committed to high quality advice and client care. If you are in any way dissatisfied with our services, or about your bill, or have any suggestions as to how our service to you could be improved, please contact in the first instance the partner with whom you normally deal. If he or she cannot resolve the matter to your satisfaction please then refer it to the Office Managing Partner (Stephen Kensell) or our Deputy Office Managing Partner (Andrea Monks). Their contact details are available from www.lw.com. We have a procedure in place which details how we handle complaints which is available on request. In addition, if for any reason we are unable to resolve any problem between us, you may be entitled to ask the Legal Ombudsman to consider the complaint. The Legal Ombudsman's contact details are available through their website at http://www.legalombudsman.org.uk/. For ease of reference their email address is enquiries@legalombudsman.org.uk and their phone number is 0300 555 0333. Normally, you will need to bring a complaint to the Legal Ombudsman within six months of receiving a written response from us about your complaint. If your complaint is in relation to our bill then there may also be a right to object to the bill by applying to the court for an assessment of the bill under Part III of the Solicitors Act 1974. You are also able to complain to the Solicitors Regulation Authority if you have concerns about the

conduct of any employees or partners. You can raise your concerns here: https://www.sra.org.uk/consumers/problems/report-solicitor.page

### 23. Enforcement

Each and every individual partner, employee or consultant (past or present) and affiliate of our firm may directly enforce the provisions of the Terms relating to them including under the Contracts (Rights of Third Parties) Act 1999.

These Terms, other than the paragraphs in respect of Liability of Latham & Watkins (London) LLP below, may be varied by us without the consent of the third parties referred to in this paragraph.

In the event that any parts of the Terms are held to be invalid, the remainder of the terms and conditions set out herein will remain in full force and effect.

The receipt by you of advice from Latham & Watkins (London) LLP will be deemed to be on the Terms.

### 24. Liability of Latham & Watkins (London) LLP

In respect of the Engagement, Latham & Watkins (London) LLP assumes liability for and is fully responsible for the legal services provided by other entities of our firm and by any individual member, partner, consultant or employee of any such other on their behalf as if such services had been performed and advice given by Latham & Watkins (London) LLP, its members, partners, consultants or employees.

Latham & Watkins (London) LLP assumes liability for and is fully and exclusively responsible for the legal services provided by its individual members, partners, consultants and employees on its behalf and no individual accepts any personal obligations towards you or any other client in respect of such services.

It is a fundamental provision of the Terms that you agree that no individual or affiliate of our firm has or will have any personal responsibility to you for the legal services provided by them on behalf of Latham & Watkins (London) LLP or other affiliates of our firm, and you agree not to bring a claim against such individuals in respect of those services.

Latham & Watkins (London) LLP accepts liability for the legal services provided by such individuals on its behalf or on behalf of other entities of our firm as if the Terms did not exclude or limit any personal responsibility that they might otherwise have towards you in respect of such services. We refer to the Enforcement section directly above which entitles individuals and affiliates of our firm to enforce these rights under the Contracts (Rights of Third Parties) Act 1999.

Nothing in the Terms is intended to exclude or limit any liability to the extent that Latham & Watkins (London) LLP, other entities of our firm, or, as the case may be, any affiliates of our firm or individual is precluded or restricted from excluding or limiting such liability under any legal requirements (such as applicable laws precluding or restricting exclusions or limitations - whether generally or for specific matters such as death, personal injury and fraud) or any rules of professional conduct (such as applicable rules precluding or

restricting exclusions or limitations for wilful disregard of professional conduct rules; or precluding or restricting any limitation or exclusion of liability) applicable to it, him or her in the jurisdiction in which it, or he or she, practises as a lawyer.

If notwithstanding the above any individual incurs any personal liability to you in connection with services provided to you, you agree that the liability of each such individual shall be limited to the fullest extent permitted by any legal requirements or any rules of professional conduct applicable to him or her in the jurisdiction in which he or she practises as a lawyer.

## 25. Third party rights

The Engagement Letter and the Terms are not intended to and do not confer any right on a third party under the Contracts (Rights of Third Parties) Act 1999, except as may be otherwise specifically provided.

## 26. Governing law

The Engagement Letter and the Terms, and any non-contractual obligations arising out of or related or connected to the Engagement, are governed by and are to be interpreted in accordance with English law.

# LATHAM & WATKINS

99 Bishopsgate
London EC2M 3XF
United Kingdom
Tel: +44(0)20.7710.1000  Fax: +44(0)20.7374.4460
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

August 23, 2024

First Mode Holdings, Inc.
10 Bloomsbury Way
London WC1A 2SL, UK
Attn: Will Smith

Dear Will,

**Engagement Letter dated January 30, 2024 regarding the provision of legal services**

We refer to the Engagement Letter described above by and between First Mode Holdings, Inc. ("**First Mode**") and Latham & Watkins (London) LLP ("**Latham**"). Unless otherwise set out below, the terms of the Engagement Letter (including the Terms of Engagement enclosed therewith) apply to the new matter on which you have instructed Latham & Watkins (London) LLP (the "**Engagement**"). If there is any conflict between the Engagement Letter (together with the Terms of Engagement) and this letter, this letter shall prevail in relation to the Engagement.

1.      **Scope of Work**

You have asked us to represent you in connection with general transactional, finance, and potential restructuring matters. The scope of our work may evolve in accordance with discussions or correspondence with you from time to time. If additional services are requested by you and agreed to by us, this letter and the Engagement Letter will apply to such services, unless superseded by another written agreement. In each case, before we can agree to provide additional services, we will need to perform a conflicts check and otherwise confirm our ability to provide these services. Our representation is limited to the specific services that you request and that we have agreed to undertake.

2.      **Persons Responsible**

Brad Faris, Noah Weiss and I shall be the partners with primary responsibility for the Engagement. My direct dial number is +1.312.876.7663 and my email address is caroline.reckler@lw.com. We shall draw on the specialist skills of other parts of our firm where appropriate.

It will be our responsibility to ensure internal co-ordination and consistency of approach. As far as possible, we shall avoid changes in personnel and we shall let you know, if appropriate, if any significant changes become necessary.

We understand that you are authorised to, and will be primarily responsible for, instructing us on this matter and any new matters. Unless you inform us of any change, we will assume that this remains the case and that you have authority on behalf of First Mode to incur costs on its behalf. As an individual matter progresses, we may need to act on instructions from other

Latham & Watkins is the business name of Latham & Watkins (London) LLP, a registered limited liability partnership organised under the laws of New York and authorised and regulated by the Solicitors Regulation Authority (SRA No. 203820). A list of the names of the partners of Latham & Watkins (London) LLP is open to inspection at its principal place of business, 99 Bishopsgate, London EC2M 3XF, and such persons are either solicitors, registered foreign lawyers, or managers authorised by the SRA. We are affiliated with the firm Latham & Watkins LLP, a limited liability partnership organised under the laws of Delaware.

**LATHAM&WATKINS**

people from whom we consider it is reasonable to take instructions in order to progress the matter within the timescales set.

3.      **Fees, Rates and Charges**

In connection with the services to be provided by Latham to First Mode pursuant to this letter and the Engagement Letter, First Mode shall promptly deliver or wire to Latham an evergreen advance payment retainer in the sum of $500,000. This evergreen advance payment retainer, and all replenishments thereof, will be held by Latham as an advance toward our fees and charges in connection with this letter and the Engagement Letter, but will not be put into a trust, escrow or segregated account. To the extent that the amount of any of Latham's invoice statements is less than the agreed upon evergreen advance payment retainer, First Mode will pay Latham, promptly upon its receipt of Latham's invoice statement, a further payment to bring the evergreen advance payment retainer to the agreed upon amount (i.e., $500,000). To the extent that the amount of Latham's invoice statement is more than the agreed upon evergreen advance payment retainer, First Mode will pay to Latham, promptly upon its receipt of Latham's invoice statement, the excess amount plus an evergreen advance payment retainer of $500,000. Any funds that you may deposit with us as an advance towards our fees and charges will be treated as property of the firm. Any unused portion of such advance after our services are concluded will be returned to you. Should this matter involve an immediate or expected bankruptcy filing, however, we may require an increase in the amounts described above.

Our fees are based primarily on the amount of time spent by our lawyers, paralegals and other professionals on your behalf. Each lawyer, paralegal and other professional assigned to this matter will have individual hourly billing rates, and the applicable rate multiplied by the number of hours spent, measured in tenths of an hour, will be the initial basis for determining our fee.

In general, our attorneys' billing rates will range from $760 per hour to $2,745 per hour, depending upon the seniority and expertise of the attorney involved. For paralegal and other professional time, our rates will range from $280 to $1,440 per hour.

In the event we are compelled to testify or respond to a subpoena or other legal process in relation to a matter we have handled for you, you agree that we are entitled to be reimbursed for our time in doing so at our then-current rate, and for our expenses reasonably incurred, even if our attorney-client relationship with you is terminated at that time.

We intend to provide statements to you on a monthly basis. They will show our time logged in tenth-of-an-hour increments and will separate fees from disbursements and other charges. Payment of our statements is due promptly upon receipt. Our rates are based on our receiving payment within thirty (30) days.

We may choose to terminate our relationship with you, subject to any applicable ethics rules, in the event that our fees are not paid in accordance with the terms of this engagement letter or other agreement.

Our billing rates and charges are usually revised annually, but we reserve the right to revise them at other times. Following any such revision, our new rates and charges will be applied to your account, and this letter constitutes written notice to you of our right to make such revisions.

Docusign Envelope ID: B7CE5F30-2BFD-4D55-9688-BDB458EC656B

**23 August 2024**
**Page 3**

## LATHAM & WATKINS

I look forward to working with you.  If this letter is satisfactory to you, please sign and return the enclosed copy, together with the retainer described in Section 3, above.

Sincerely,

Caroline A. Reckler
of LATHAM & WATKINS LLP

23 August 2024
Page 4

# LATHAM&WATKINS

### Approval of Engagement

First Mode agrees to the terms of the enclosed letter, effective as of the date on which Latham first provided services to First Mode.

By signing this letter, First Mode acknowledges that it has been afforded the full opportunity to review it and to seek the advice of independent counsel, and either has in fact consulted with such independent counsel or has chosen not to do so.

Date: August ___, 2024
    August 28, 2024

Signed for and on behalf of
First Mode Holdings, Inc.

DocuSigned by:

715A866FACCD45E...

Name:    Julian Soles
Title:
    CEO

**Appendix 1**

**Master List of Potential Parties in Interest[1]**

---

[1]    This list (and the categories contained herein) are for purposes of a conflicts check only and should not be relied upon by any party as a list of creditors or for any other purpose.  As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible.  Accordingly, a party that otherwise would fall under multiple categories is likely to be listed under only one category.

32753470.1

1. **Debtors and Non-Debtor Affiliates**

FIRST MODE CHILE SPA
FIRST MODE HOLDINGS, INC.
FIRST MODE IPP LTD.
FIRST MODE PTY LTD.

FIRST MODE SA HOLDINGS
FIRST MODE SA PTY
SYNCHRONOUS LLC

2. **Debtors' Previous Names (including previous DBA and Trade Names)**

FIRST MODE

SYNCHRONOUS

3. **Debtors' Restructuring Professionals**

LATHAM & WATKINS LLP
M3 ADVISORY PARTNERS, LP
OMNI AGENT SOLUTIONS, INC.

PJT PARTNERS, INC.
YOUNG CONAWAY STARGATT &
TAYLOR, LLP

4. **Legal Professionals for Founders, Lenders, Trustees, Agents, and Other Secured Parties**

BALLARD SPAHR LLP
DAVIS POLK & WARDWELL LLP
LANE POWELL PC

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

5. **Ordinary Course Professionals**

COOLEY LLP
ERNST & YOUNG US LLP

FOX ROTHSCHILD LLP
LITTLER MENDELSON

6. **Current and Former Directors, Officers, and Founders**

BRIAN GEDDES
CAROL FLATON
CECILIA FERREIRA
CHRIS FRASER
CHRIS VOORHEES
COLIN BATESON
CRAIG FISH
JAMES PERCY HUGHES
JILL FRIZZLEY
JOE FOLK
JOSHUA SWEERE
JOSHUA WEISS
JULIAN SOLES
KRUNAL DESAI

LARISSA KUNZ
MARGARET (MAGGIE) SCHOLTZ
MARK FREED
MATT DALEY
MATTHEW BLIESKE
MORNIE ROBERTSON
NEAL GOLDMAN
PETER ILLSLEY
RHAE ADAMS
RILEY CHAPIN
SIOBHAN AVENELL
SPENCER ANUNSEN
WILL SMITH

7. **Secured Parties**

ANGLO AMERICAN HOLDINGS LIMITED
ANGLO AMERICAN INTERNATIONAL
HOLDINGS LIMITED
ANGLO AMERICAN PLC
ANGLO AMERICAN SERVICES (UK) LTD

DELL FINANCIAL SERVICES L.L.C.
MACQUARIE EQUIPMENT CAPITAL INC.
PNC BANK, NATIONAL ASSOCIATION
STAR CAPITAL GROUP, L.P.

8. **Parties to Pending or Threatened Litigation**

AUGUST A. ADAMS[1]

NICOLA KARP

9. **Debtors' Bank Account and Cash Management Institutions**

WELLS FARGO BANK N.A.

10. **Known Holders of 5% or More of Outstanding Common Equity Securities of First Mode Holdings, Inc.**

ANGLO AMERICAN TECHNICAL & SUSTAINABILITY LIMITED

11. **Landlords**

PROLOGIS TARGETED U.S. LOGISTICS
FUND, LP
REEDO LP
TERRENO OCCIDENTAL, LLC
TRANSALTA CENTRALIA MINING,
LLC

12. **Taxing and Governmental Authorities**

ALLIANCE FOR PIONEER SQUARE
ARIZONA DEPARTMENT OF
ECONOMIC SECURITY
ARIZONA DEPARTMENT OF REVENUE
CALIFORNIA DEPARTMENT OF TAX
AND FEE ADMINISTRATION
ACCOUNT INFORMATION GROUP
CALIFORNIA FRANCHISE TAX BOARD
CITY OF SEATTLE
CITY OF SEATTLE OFFICE OF CITY
FINANCE LICENSE AND TAX
ADMINISTRATION

ILLINOIS DEPARTMENT OF
EMPLOYMENT SECURITY
ILLINOIS DEPARTMENT OF REVENUE
INTERNAL REVENUE SERVICE
KING COUNTY ASSESSOR
LEWIS COUNTY TREASURER'S
OFFICE
MASSACHUSETTS DEPARTMENT OF
REVENUE
MICHIGAN DEPARTMENT OF
TREASURY

---

[1] This class action involves over 150 plaintiffs, August A. Adams is the lead plaintiff in the case.

MINNESOTA DEPARTMENT OF JOBS AND TRAINING
MINNESOTA DEPARTMENT OF REVENUE
OREGON DEPARTMENT OF REVENUE
STATE OF CALIFORNIA EMPLOYMENT DEVELOPMENT DEPARTMENT

TEXAS WORKFORCE COMMISSION
THE DELAWARE DEPARTMENT OF STATE
WASHINGTON DEPARTMENT OF REVENUE
WASHINGTON EMPLOYMENT SECURITY DEPARTMENT

### 13. **Insurance Providers**

ACE AMERICAN INSURANCE COMPANY
ALLIANZ UNDERWRITERS INSURANCE COMPANY
ARCH SPECIALTY INSURANCE COMPANY
ARGONAUT INSURANCE COMPANY
ASCOT SPECIALTY INSURANCE COMPANY
AXIS INSURANCE COMPANY
CONVEX INSURANCE UK LIMITED
GREAT AMERICAN INSURANCE COMPANY

GREAT AMERICAN RISK SOLUTIONS SURPLUS LINES INSURANCE COMPANY
HARTFORD INSURANCE COMPANY OF THE SOUTHEAST
LEXINGTON SPECIALTY INSURANCE AGENCY, INC.
LLOYD'S AMERICA, INC.
RLI INSURANCE COMPANY
STARR INDEMNITY & LIABILITY COMPANY
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
UPLAND SPECIALTY INSURANCE COMPANY

### 14. **Material Contract Counterparties**

ABB INC.
BALLARD POWER SYSTEMS INC.
BRIGHTLOOP CONVERTERS
CHART INC.
CRYOQUIP, LLC
CRYOSTAR USA LLC
CRYOWORKS, INC.

GREEN IS
HYDAC PTY LTD
MILES AND SONS INC.
NORTHWEST TECHNOLOGIES, INC.
NYOBOLT LIMITED
PNC BANK NATIONAL ASSOCIATION
WESSINGTON CRYOGENICS LIMITED

### 15. **Top 30 Unsecured Creditors (Excluding Creditors Appearing in Other Categories of this List)**

ABW TECHNOLOGIES, INC.
AFFILIATED ENGINEERS, INC.
AIR RADIATORS
ARMANINO LLP
BRANDSAFWAY SERVICES, LLC
CRYOWORKS, INC.

DSV AIR & SEA, INC
FLOQAST, INC.
FORTRA, LLC
GREENE IS
KNORR-BREMSE AUSTRALIA PTY LTD

LAZ PARKING NORTHWEST, LLC
LINKEDIN CORPORATION
MERCER (US) INC.
MIRO
NEW EAGLE, LLC
NORTHWEST TECHNOLOGIES, INC.
PERFORMANCE MECHANICAL GROUP

PRIME ELECTRIC INC.
ROCKWELL AUTOMATION, INC.
SMARTSHEET INC.
THE FINANCIAL TIMES LIMITED
WHITE RIVER FABRICATION, LLC
WORKDAY, INC.

### 16.  **Utility Providers**

KING COUNTY
LUMEN (CENTURYLINK)
PUGET SOUND ENERGY

SEATTLE CITY LIGHT
WASTE MANAGEMENT
ZAYO GROUP HOLDINGS, LLC

### 17.  **District of Delaware Bankruptcy Judges and Key Staff Members**

AL LUGANO
AMANDA HRYCAK
CACIA BATTS
CATHERINE FARRELL
CHIEF JUDGE LAURIE SELBER
SILVERSTEIN
CLAIRE BRADY
DANIELLE GADSON
DEMITRA YEAGER
JILL WALKER
JOAN RANIERI
JUDGE ASHELY M. CHAN
JUDGE BRENDAN L. SHANNON
JUDGE CRAIG T. GOLDBLATT
JUDGE J. KATE STICKLES

JUDGE JOHN T. DORSEY
JUDGE KAREN B. OWENS
JUDGE MARY F. WALRATH
JUDGE THOMAS M. HORAN
LAURA HANEY
LAURIE CAPP
LORA JOHNSON
MARQUIETTA LOPEZ
NICKITA BARKSDALE
NIKKI WASHINGTON
PAULA SUBDA
RACHEL BELLO
ROBERT CAVELLO
UNA O'BOYLE

### 18.  **United States Trustee for the District of Delaware and Key Staff Members**

ANDREW R. VARA
BENJAMIN HACKMAN
CHRISTINE GREEN
DIANE GIORDANO
DIANNE P. DUGAN
DION WYNN
EDITH A. SERRANO
ELIZABETH THOMAS
FANG BU
HANNAH M. MCCOLLUM

HAWA KONDE
HOLLY DICE
JAMES R. O'MALLEY
JANE LEAMY
JOANNE E. CLAUSEN
JONATHAN LIPSHIE
JONATHAN NYAKU
JOSEPH CUDIA
JOSEPH J. MCMAHON
LARUEN ATTIX

32753470.1

LINDA CASEY
LINDA RICHENDERFER
MALCOLM M. BATES
MICHAEL GIRELLO
NYANQUOI JONES

RICHARD SCHEPACARTER
ROSA SIERRA-FOX
SHAKIMA L. DORTCH
TIMOTHY J. FOX, JR.

### 19.  <u>Other Parties</u>

CUMMINS, INC.
DAVIS WRIGHT TREMAINE LLP
SIDLEY AUSTIN LLP
ALLY BANK
BARNES & THORNBURG LLP

PROLOGIS TARGETED U.S. LOGISTICS
FUND, L.P.
TERRENO OCCIDENTAL LLC
TRANSALTA CENTRALIA MINING LLC
PRIME ELECTRIC LLC.
MCDERMOTT WILL & EMERY LLP

**<u>Appendix 2</u>**

**Client Match List**

32753470.1

### Client Match List

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| FIRST MODE IPP LTD | Debtor and Non-Debtor Affiliates | Former Client |
| M3 ADVISORY PARTNERS, LP | Debtor's Restructuring Professionals | Current Client |
| PJT PARTNERS, INC. | Debtor's Restructuring Professionals | Current Client |
| ERNST & YOUNG US LLP | Ordinary Course Professionals | Current Client |
| ANGLO AMERICAN PLC | Secured Parties | Current Client |
| ANGLO AMERICAN SERVICES (UK) LTD | Secured Parties | Current Client |
| DELL FINANCIAL SERVICES L.L.C. | Secured Parties | Former Client |
| MACQUARIE EQUIPMENT CAPITAL INC. | Secured Parties | Current Client |
| PNC BANK, NATIONAL ASSOCIATION | Secured Parties | Current Client |
| ALLIANZ UNDERWRITERS INSURANCE COMPANY | Insurance Providers | Current Client. Former Client. |
| ASCOT SPECIALTY INSURANCE COMPANY | Insurance Providers | Current Client |
| HARTFORD INSURANCE COMPANY OF THE SOUTHEAST | Insurance Providers | Former Client |
| STARR INDEMNITY & LIABILITY COMPANY | Insurance Providers | Former Client |
| ABB INC. | Material Contract Counterparties | Former Client |
| PNC BANK NATIONAL ASSOCIATION | Material Contract Counterparties | Current Client. Former Client. |

---

[1]    The term **"Current Client"** refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past 12 months and L&W has at least one open matter.  The term **"Former Client"** refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years. L&W does not disclose connections if time was recorded more than three years before the Petition Date.

32753470.1

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| LINKEDIN CORPORATION | Top 20 Unsecured Creditors (Excluding Creditors Appearing in Other Categories of this List) | Current Client |
| CONVERGINT TECHNOLOGIES, LLC | Utility Providers | Current Client |
| KING COUNTY | Utility Providers | Former Client |
| LUMEN (CENTURYLINK) | Utility Providers | Current Client. Former Client. |
| PUGET SOUND ENERGY | Utility Providers | Former Client |
| ZAYO GROUP HOLDINGS, LLC | Utility Providers | Current Client |