**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST MODE HOLDINGS, INC., *et al.*,[1] | Case No. 24-12794 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 83, 116** |
| | **Obj. Deadline: Feb. 4, 2025 at 11:30 a.m. (ET)[2]**<br>**Hearing Date: Feb. 6, 2025 at 9:30 a.m. (ET)** |

**THE UNITED STATES TRUSTEE'S OBJECTION TO (A) DISCLOSURE STATEMENT
FOR JOINT CHAPTER 11 PLAN OF FIRST MODE HOLDINGS, INC. AND ITS
DEBTOR AFFILIATE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND (B)
MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING THE
DISCLOSURE STATEMENT; (II) ESTABLISHING THE VOTING RECORD DATE,
VOTING DEADLINE, AND OTHER DATES; (III) APPROVING PROCEDURES FOR
SOLICITING, RECEIVING, AND TABULATING VOTES ON THE PLAN AND FOR
FILING OBJECTIONS TO THE PLAN; (IV) APPROVING THE MANNER AND
FORMS OF NOTICE AND OTHER RELATED DOCUMENTS; AND (V) GRANTING
<u>RELATED RELIEF</u>**

Andrew R. Vara, the United States Trustee for Region Three (the "<u>U.S. Trustee</u>"), through

his undersigned counsel, hereby objects (the "<u>Objection</u>") to: (i) approval of the *Disclosure*

*Statement for Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate Under*

*Chapter 11 of the Bankruptcy Code* [D.I. 83] (the "<u>Disclosure Statement</u>"); and (ii) *Motion of*

*Debtors for Entry of an Order (I) Approving the Disclosure Statement; (II) Establishing the Voting*

*Record Date, Voting Deadline, and Other Dates; (II) Approving Procedures for Soliciting,*

*Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan; (IV) Approving*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: First Mode Holdings, Inc. (7177) and Synchronous LLC (1829). The Debtors' mailing address is 3417 1st Ave. S. Seattle, WA, 98134.

[2] The objection deadline was extended by agreement of the parties.

*the Manner and Forms of Notice and Other Related Documents; and (V) Granting Related Relief*

[D.I. 116] (the "<u>Procedures Motion</u>"),[3] and in support of this Objection respectfully states:

## <u>PRELIMINARY STATEMENT</u>

1.    The Court should deny approval of the Disclosure Statement for the following separate and independent reasons:[4]

(a)    The Disclosure Statement fails to provide adequate disclosures regarding the third-party release provisions of the Debtors' proposed plan. Among other things, the Disclosure Statement fails to provide adequate information as to who will be deemed to give third-party releases, who will receive such releases, what claims are being released and the value of such claims.

(b)    The Solicitation Procedures will confuse creditors who want to vote to accept the Plan, because it both provides them an opt in box while also including language that they are forced to release despite the box but only to the fullest extent permitted by applicable law.

(b)    The Debtors' proposed plan is unconfirmable and should not be solicited using procedures that facilitate the plan's defects. The court must deny approval of a disclosure statement if the related proposed plan is not confirmable on its face. Here, the proposed plan is unconfirmable for at least the following reasons:

(i)    the proposed plan imposes non-consensual third-party releases on holders of claims who vote to accept the plan, even if they fail to check the opt-in box on the ballot, but deeming consent based solely on a vote to accept the plan is not consistent with applicable state law;

(ii)    the proposed plan would provide distributions to General Unsecured Creditors only if they agree to release non-debtor third parties; and

(iii)    The proposed plan includes an injunction to enforce the third-party release and exculpation that is not supported by any authority.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement and the Procedures Motion, as applicable.

[4] As of the filing of this Objection, the Debtors have proposed revisions to the Disclosure Statement, Plan and Procedures Order that likely resolve several objections raised herein. In the interest of time and the need to review the proposed revised documents, the U.S. Trustee files this Objection to reserve all rights.

Accordingly, and for the reasons set forth in more detail herein, the U.S. Trustee respectfully requests that the Court enter an order or orders: (a) denying approval of the Disclosure Statement; and (b) denying approval of the Procedures Motion.

## JURISDICTION AND STANDING

2.     This Court has jurisdiction to hear and determine the Procedures Motion, approval of the Disclosure Statement and this Objection pursuant to: (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court of the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2).

3.     Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. The duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the Courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4.     The U.S. Trustee has standing to be heard on the Procedures Motion and approval of the Disclosure Statement pursuant to 11 U.S.C. § 307. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

### A.    The Chapter 11 Cases

5.     On December 15, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, (the "Bankruptcy Code," or "Code"), in

the United States Bankruptcy Court for the District of Delaware (this "Court"), thereby commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").

6.     On January 9, 2025, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee").

**B.     The Procedures Motion**

7.     On January 9, 2025, the Debtors filed their Procedures Motion.  In the Procedures Motion, the Debtors request approval of the Disclosure Statement and approval of procedures for the solicitation and tabulation of votes on the Plan.

8.     The Solicitation Procedures generally provide that the Debtors will send holders of claims in Class 4 a ballot that gives the option to "opt in" to the Plan's releases, but also provide that if you vote to accept the Plan, you will be deemed to have granted the releases contained in the Plan whether or not you check the "opt in" box. The Solicitation Procedures further provide that "[i]f you do not grant the Third-Party Releases, or if you vote to reject the Plan and opt-in to the Third-Party Releases by checking the box below, you will be considered a Non-Participating GUC Holder under the Plan and will receive no consideration on account of your General Unsecured Claims."

**Item 3. Optional Release Election.** If you voted to reject the Plan in Item 2 above or did not vote to accept or reject the Plan in Item 2 above, check this box if you elect to grant the release contained in Article IX.C of the Plan. Election to consent to the releases contained in Article IX.C of the Plan is at your option. If you submit your Ballot with this box checked, you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law. If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law whether or not you check this box.

You must grant the Third-Party Releases to be a Participating GUC Holder under the Plan and receive the distribution for Participating GUC Holders contemplated under the Plan. If you do not grant the Third-Party Releases, or if you vote to reject the Plan and opt-in to the Third-Party Releases by checking the box below, you will be considered a Non-Participating GUC Holder under the Plan and will receive no consideration on account of your General Unsecured Claims.

☐    The undersigned elects to grant the releases contained in Article IX.C of the Plan.

Procedures Mot. Ex. 2.

9.      Creditors in classes who are fully impaired or unimpaired will receive a non-voting status form and opt-in form that will contain instructions for obtaining copies of the Plan and Disclosure Statement. *Id.,* Ex. 3.

**C.**    **Specific Provisions of the Debtors' Proposed Plan and Procedures Motion**

10.     On December 22, 2024, the Debtors filed the *Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate Under Chapter 11 of the Bankruptcy Code* (the "Plan"). [D.I. 82]. The Plan includes the following provisions relevant to this Objection.

**Third-Party Release Provisions**

11.     Article IX.C of the Plan provides as follows (the "Third-Party Release[s]"):

*Releases by Holders of Claims and Interests*

As of the Effective Date, except as otherwise provided herein, ***each Releasing Party, their Estates, their assigns and their successors in interest, is deemed to have conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released each Debtor and Released Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties, their Estates, their assigns, and their***

5

***successors in interest ever had, now has, or thereafter can, shall, or may have***, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), ***that the Releasing Parties, their Estates, their assigns, and their successors in interest would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors,*** the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto***, the assertion or enforcement of rights and remedies against the Debtors,*** . . . (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) ***the business or contractual arrangements between any Debtor and any Released Party***, or (5) ***any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing,*** to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Plan, Art. IX.C (emphasis added).

12.     The Procedures Motion provides the following definition for the term "Released Party":[5]

> "**Released Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) with respect to each Entity in clauses (a) through (e), each such Entity's current and former Affiliates; and (g) with respect to each Entity in clause (a) through (f), each such Entity's Related Parties; provided, however, that, notwithstanding the foregoing, any Holder of a Claim or Interest that is not a Releasing Party shall not be a Released Party.

Procedures Motion, Exhibit 2.

13.     The Procedures Motion provides the following definition for the term "Releasing Party":

> "**Releasing Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of

---

[5] Although the Debtors have not yet filed an amended Plan as of the filing of this Objection, the Debtors advised counsel for the U.S. Trustee that the Debtors shifted from an opt-out to an opt-in procedure for the third-party release after filing the Plan.  This opt-in procedure is reflected in the Procedures Motion and the exhibits thereto. Accordingly, this Objection references certain definitions as they appear in the Procedures Motion and exhibits.

doubt, Anglo American Services (UK) Limited)**; (f) all Holders of Claims and Interests who vote to accept the Plan**; (g) all Holders of Claims and Interests who (1) vote to reject the Plan and elect on the ballot cast to opt in to the Third-Party Release; or (2) do not vote to, or are deemed to, accept or reject the Plan and who return an opt-in form pursuant to the procedures set forth in the Disclosure Statement Order; (h) with respect to each Entity in clauses (a) through (g), each such Entity's current and former Affiliates; and (i) with respect to each Entity in clause (a) through (h), each such Entity's Related Parties (solely to the extent such Releasing Party is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law).

*Id.* (emphasis added).

14.    The Plan provides the following definition for the term "Related Party":

"**Related Party**" means, with respect to an Entity, such Entity's current and former officers, directors, managers, principals, members, employees, agents (including any disbursing agent), advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, investment bankers, consultants, representatives, other professionals, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, management companies, fund advisors, managers, fiduciaries, trustees, other representatives, and other professionals (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), representatives, advisors, predecessors, successors, and assigns, each solely in their capacities as such, and the respective heirs, executors, estates, servants and nominees of the foregoing, each in their capacity as such.

*Id.* at Art. I.A, Item 111.

15.    The Plan also includes an injunction in support of the Third-Party Release and the Plan Exculpation.  Plan at Art. IX.E

## OBJECTION

## I.    THE DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION REGARDING THE THIRD-PARTY RELEASE PROVISIONS.

16.    The disclosure statement requirement of Bankruptcy Code section 1125 is "crucial to the effective functioning of the federal bankruptcy system" and, consequently, "the importance

of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414, 417-18 (3d Cir. 1988)). "Adequate information" under section 1125 is "determined by the facts and circumstances of each case." *See Oneida*, 848 F.2d at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)). The "adequate information" requirement is designed to help creditors in their negotiations with debtors over the plan. *See Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94, 100 (3d Cir. 1988). Further, section 1129(a)(2) of the Bankruptcy Code conditions confirmation upon compliance with applicable Code provisions. The adequate disclosure requirement of section 1125 is one of those provisions. *See* 11 U.S.C. § 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

17.    The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, *that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan*[.]

*See* 11 U.S.C. § 1125(a)(1) (emphasis added); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

18.    To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors

and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives so that they can intelligently accept or reject the plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

19.    Section 1125 of the Bankruptcy Code is geared towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors. *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (citing *Century Glove*, 860 F.2d at 100).

20.    Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement if the information is accurate, and its inclusion is not misleading. *See id.* The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y.), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999). The disclosure statement must inform the average creditor what it is going to get and when, and what contingencies there are that might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

21.    Applied here, the Disclosure Statement does not provide sufficient disclosures appropriate to the circumstances of these Chapter 11 Cases. In particular, the Debtors fail to disclose that they are giving two sets of releases benefitting the same Released Parties. The Debtors are both a Released Party and a Releasing Party. Therefore, the Plan provides that the Debtors will release the Released Parties pursuant to both Article IX. B (Debtor Releases) and

Article IX.C (Release by the Releasing Parties). The Debtors also fail to explain which of the two releases will control if there is a conflict.

22.     Moreover, the Disclosure Statement does not adequately disclose: (a) why the Debtors will be releasing the Released Parties (whether under the Debtor release or the Third-Party Release); (b) the nature and value of the claims the Debtors are releasing; or (c) what (if anything) the Debtors are receiving as consideration for such releases.

23.     The Disclosure Statement simply repeats the language of the plan provision, which is long, dense, difficult to understand, and does not identify specific claims that will be released. The operative sentence setting forth the scope of the release runs for more than thirty lines and includes numerous defined terms.  Moreover, the Released Parties include unidentified categories of people no creditor will have the information to identify, including Related Parties.

24.     In summary, the Disclosure Statement fails to provide adequate information as to who will be deemed to give third-party releases, who will receive such releases, what claims are being released, the value of such claims, and the consideration the Debtors are receiving in exchange for the releases.  Because the Disclosure Statement fails to provide adequate information as to numerous, significant issues, the Court should not approve the Disclosure Statement as drafted.

## II.     THE COURT MUST DENY APPROVAL OF THE DISCLOSURE STATEMENT BECAUSE THE PLAN IS UNCONFIRMABLE.

25.     If the proposed plan is patently unconfirmable on its face, the bankruptcy court must deny the application to approve the disclosure statement.  *See generally In re Quigley Co.,* 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007) *(citing In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) (collecting cases); *In re 266 Washington Assocs.*, 141 B.R. 275, 288

(Bankr. E.D.N.Y.), *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992); *In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990)).

26.     Moreover, the Court should not approve solicitation procedures that facilitate the Plan's defects, and it would be a waste of estate resources for the Debtors to solicit votes on a Plan that is patently unconfirmable.

27.     Here, the Court must deny approval of the Disclosure Statement because the Plan is patently unconfirmable on two separate and independent bases. *First*, the Plan is unconfirmable because it would impose non-consensual Third-Party Releases on all holders of claims who vote in favor of the Plan, regardless whether they check the "opt in" box on the ballot or any other action they take beyond that vote. *Second,* the Plan includes an injunction against released claims that is not authorized under the Bankruptcy Code nor supported by the traditional factors parties must meet to receive an injunction.

A.     **The Plan is Not Confirmable Because Merely Voting for a Plan Does Not Provide the Required Affirmative Consent to a Third-Party Release**

28.     The Supreme Court has definitively held that non-consensual third-party releases are not authorized under the Bankruptcy Code. *Harrington v. Purdue Pharma L.P.,* 603 U.S. __, 144 S. Ct. 2071, 2082-88 (2024).   ]The Supreme Court in *Purdue* did not address whether consensual non-debtor releases can be included in a chapter 11 plan and confirmation order.

29.     The foundation of a consensual release is an agreement between the parties. Whether non-debtor parties have reached an agreement—including an agreement to release one's claims against another (*i.e.*, not to sue)—is governed by state law.  The only exception is if there is federal law that preempts applicable state contract law in some specific context.  *See, e.g., Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (plurality) ("For where neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal

court to supply one, 'state law must govern because there can be no other law.'") (quoting *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965)).

30.    No such exception applies here.    The Bankruptcy Code does not define a "consensual release." It contains no provision that addresses how to determine whether one non-debtor has agreed to extinguish its direct claims against another non-debtor.    And no Code provision authorizes courts, as part of an order confirming a chapter 11 plan or otherwise, to "deem" a non-debtor to have consented to an agreement to release claims against other non-debtors where such consent would not otherwise be found to exist as a matter of state law.    Nor does 11 U.S.C. § 105(a) itself confer any power to override state law.    Rather, section 105(a) "serves only to carry out authorities expressly conferred elsewhere in the code." *Purdue*, 144 S. Ct. at 2082 n.2 (quotation marks omitted).    Bankruptcy courts cannot "create substantive rights that are otherwise unavailable under applicable law," nor do they possess a "roving commission to do equity." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (quotation omitted). Accordingly, any authority to include third-party releases in a plan must derive from some other source of law.    Thus, the Bankruptcy Code does not change the state-law definition of consent as applicable to claims among non-debtor parties.[6]

---

[6] Indeed, even as to a debtor, it is well settled that whether parties have entered a valid settlement agreement is governed by state law. *See Houston v. Holder (In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995) ("Federal bankruptcy law fails to address the validity of settlements and this gap should be filled by state law."); *De La Fuente v. Wells Fargo Bank, N.A. (In re De La Fuente)*, 409 B.R. 842, 845 (Bankr. S.D. Tex. 2009) ("Where the United States is not a party, it is well established that settlement agreements in pending bankruptcy cases are considered contract matters governed by state law."). That is because "the basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450-451 (2007) (quotation marks omitted); *Butner v. United States*, 440 U.S. 48 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

31.    As courts have recognized, because the Bankruptcy Code does not govern relationships between claim holders and non-debtor third-parties, state-law contract principles serve as controlling authority when considering whether a release is consensual.  *See, e.g.*, *Patterson v. Mahwah Bergen Retail Grp., Inc.,* 636 B.R. 641, 684-85 (E.D. Va. 2022) (describing bankruptcy courts in the District of New Jersey as "look[ing] to the principles of contract law rather than the bankruptcy court's confirmation authority to conclude that the validity of the releases requires affirmative consent"); *Smallhold, Inc.*, No. 14-10267, 2024 WL 4296938, at *11 (Bankr. D. Del. Sept. 25, 2024) (recognizing that "some sort of affirmative expression of consent that would be sufficient as a matter of contract law" is required); *In re SunEdison, Inc.,* 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally apply contract principles in deciding whether a creditor consents to a third-party release."); *In re Arrowmill Dev. Corp*., 211 B.R. 497, 506, 507 (Bankr. D.N.J. 1997) (explaining that a third-party release "is no different from any other settlement or contract" and thus "the validity of the release . . . hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order") (internal quotation marks omitted) (alterations in original).  As one court recently held, because "nothing in the bankruptcy code contemplates (much less authorizes it)' … any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent."  *In re Tonawanda Coke Corp.*, 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024) (quoting *Purdue Pharma L.P.*, 144 S. Ct. at 2086). Accordingly, "any such consensual agreement would be governed by state law." *Id*.

32.    Here, the Debtors do not meet the state-law burden of establishing that all categories of the Releasing Parties will affirmatively agree to release their property rights in a

manner sufficient to demonstrate consent under state law, specifically as to those parties who are deemed to consent to the release by virtue of their vote to accept the Plan.

33.     The "general rule of contracts is that silence cannot manifest consent." *Patterson*, 636 B.R. at 686; *see also, e.g.*, *McGurn v. Bell Microproducts, Inc.*, 284 F.3d 86, 90 (1st Cir. 2002) (recognizing "general rule" that "silence in response to an offer . . . does not constitute acceptance of the offer").  Moreover, "[o]rdinarily[,] an offeror does not have power to cause the silence of the offeree to operate as acceptance." RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981); *accord* 1 Corbin on Contracts § 3.19 (2018); 4 Williston on Contracts § 6:67 (4th ed.); *Reichert v. Rapid Investments, Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) ("[T]he offeror cannot prescribe conditions so as to turn silence into acceptance.").  Instead, under state law, an agreement to release claims—like any other contract—generally requires a manifestation of assent to that agreement. *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 17(1) ("[T]he formation of a contract requires a bargain in which there is manifestation of mutual assent to the exchange and a consideration.").  Consent cannot be imputed or "deemed" based on a party's failure to object—rather, consent must be affirmatively shown to exist.  *See, e.g.*, *id*.; RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a.

34.     There are only very limited exceptions to that principle.  "[T]he exceptional cases where silence is acceptance fall into two main classes: those where the offeree silently takes offered benefits, and those where one party relies on the other party's manifestation of intention that silence may operate as acceptance.  Even in those cases the contract may be unenforceable under the Statute of Frauds." RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981).

35.     But absent such extraordinary circumstances, "[t]he mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to

speak." *Id.* And "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting." *Id.* § 69, cmt. c; *see also Patterson*, 636 B.R. at 686 (explaining how contract law does not support deeming consent based upon a failure to opt out).

36.    Delaware's common law, as a point of reference, is in accord.[7] *See, e.g.*, *Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.*, 768 A.2d 983, 991 (Del. Super. Ct. 2000) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 69 (1981)). Absent limited exceptions not triggered here, silence and inaction are not assent to an offer. *See Urban Green Techs., LLC v. Sustainable Strategies 2050 LLC*, No. N13C-12-115, 2017 WL 527565, at *3 (Del. Super. Ct. Feb. 8, 2017); *see also Patterson*, 636 B.R. at 686 (contract law does not support consent by failure to opt out).

37. The Debtors propose that the Third-Party Releases in the Plan, which benefit numerous non-debtors that are Released Parties, bind: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) all Holders of Claims and Interests who vote to accept the Plan; (g) all Holders of Claims and Interests who (1) vote to reject the Plan or do not vote to accept or reject the Plan and elect on the ballot cast to opt in to the Third-Party Release; or (2) vote to reject the Plan, do not vote to accept or reject the Plan, or are deemed to accept or reject the Plan and who return an opt-in form pursuant to the procedures set forth in the Disclosure Statement Order; (h) with respect to each Entity in clauses (a) through (g), each such Entity's

---

[7] While the Plan provides that its construction and enforcement is governed by the laws of the State of Delaware, debtors cannot choose the law to apply to contracts between non-debtors. Rather, ordinary choice of law principles govern which state's law applies to contracts between non-debtors, although a choice of law analysis may not be necessary absent any assertion that there is a difference in potentially applicable state laws governing what constitutes consent. *See Smallhold*, 2024 WL 4296938, at *13 n.57.

current and former Affiliates; and (i) with respect to each Entity in clause (a) through (h), each

such Entity's Related Parties (solely to the extent such Releasing Party is legally entitled to bind

such Related Party to the releases contained in the Plan under applicable non-bankruptcy law).

Plan, Art. I.A. Item 104.

38.     The Plan thus would extract non-consensual third-party releases from holders of

claims who vote to accept the Plan even if they fail to check the opt-in box on the Class 4 ballot.

Because the Plan would impose non-debtor releases on these parties without their affirmative

consent as to those releases, the releases are not consensual under state law and thus cannot be

approved under *Purdue*.

39.     The Debtors conflate a vote for the Plan, which is governed by the Bankruptcy

Code's provisions for adjusting relations between a debtor and its creditors, with acceptance of

proposed third-party releases, which are contracts governed by state law dealing with relations

between non-debtor parties.  Those are distinct legal constructs involving distinct parties:  the Plan

disposes of a creditor's claims against the Debtor, while a third-party release disposes of its claims

against non-debtors.  "[A] creditor should not expect that those rights [against non-debtors] are

even subject to being given away through the debtor's bankruptcy."  *Smallhold, Inc.*, 2024 WL

4296938, at *12There is nothing in the Code that authorizes treating a vote to accept a chapter 11

plan as consent to a third-party release.  Rather, for a creditor to be deemed to have affirmatively

consented to the third-party releases, each creditor must have indicated express consent to be

bound by a contract with the non-debtor beneficiaries of these releases.  A vote to accept the Plan

cannot demonstrate consent to such a contract with a non-debtor.

40.     The Debtors' conflation of voting for the Plan with acceptance of the third-party

release violates black letter contract law.  Voting for a plan disposing of claims against the debtor

and its bankruptcy estate does not reflect the unambiguous assent necessary to find consent to a release of claims against other parties. *See, e.g., In re Congoleum Corp.*, 362 B.R. 167, 194 (Bankr. D.N.J. 2007) ("[A] consensual release cannot be based solely on a vote in favor of a plan."); *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 507 (Bankr. D.N.J. 1997) (concluding that, because consensual releases are premised on the party's agreement to the release, "it is not enough for a creditor to abstain from voting for a plan, or even to simply vote 'yes' as to a plan").

41.     The mere act of voting on the chapter 11 plan does not "manifest[] [an] intention that silence may operate as acceptance" of a proposal that the creditor release claims against non-debtors.  RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a.  Because impaired creditors have a federal right under the Bankruptcy Code to vote on a chapter 11 plan, 11 U.S.C. § 1126(a), merely exercising that right does not manifest consent to release claims against non-debtors.   Rather, voting on a chapter 11 plan is governed by the Bankruptcy Code, and a favorable vote reflects only approval of the plan's treatment of the voters' claims *against the debtor*.  *See Arrowmill*, 211 B.R. at 507; *Congoleum Corp.*, 362 B.R. at 194; *In re Digital Impact, Inc.*, 223 B.R. 1, 14 (Bankr. N.D. Okla. 1998).  Further, creditors have no state law duty to respond to an offer to release non-debtors such that their silence can be understood as consent, nor have they necessarily had any prior course of dealing with the released non-debtors that could conceivably impose such a duty.  *See, e.g., Norcia*, 845 F.3d at 1285-86.  Indeed, creditors do not have any affirmative obligation to act on a plan at all.  *See, e.g.*, 11 U.S.C. § 1126(a) (providing that creditors "may" vote on a plan); *SunEdison, Inc.*, 576 B.R. at 460–61 (explaining that creditors have no duty to speak regarding a plan such as could allow a court to infer consent to third-party releases from silence).  A claimant's vote in favor of a plan while remaining silent regarding a non-debtor release thus does not fit within the exception to the general state-law rule that consent cannot be inferred from silence.

42.     As explained in *Arrowmill*, a voluntary release arises only "because the *creditor agrees*" to it.  211 B.R. at 507 (emphasis in original).  Because "a creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings," "it is not enough for a creditor . . . to simply vote 'yes' as to a plan." *Id.* (quotation marks omitted); *accord Congoleum Corp.*, 362 B.R. at 194; *Digital Impact, Inc.*, 223 B.R. at 14.  Rather, a creditor must "unambiguously manifest[] assent to the release of the nondebtor from liability on its debt." *Arrowmill*, 211 B.R. at 507.

43.     Further, a plan is a package deal—a person votes yes or no on the entire plan, not particular aspects of it—and a person cannot be compelled to accept a non-debtor release as a condition of receiving the benefits of a plan.  That is not consent under governing state law.  For those who believe the plan is the best way to maximize the return of their money from the debtor, requiring them to vote "no" on the Plan solely because of an objectionable non-debtor release— thus raising the possibility that the Plan may not be able to be confirmed and they thus cannot receive the economic benefit under the Plan—would be penalizing them for exercising their right to vote in favor of the Plan.  If an offeree is penalized unless an "offer" is accepted, that circumstance "preclud[es] an inference of assent." *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1230-31 (9th Cir. 2022).  And as the *Smallhold* court recognized, if voting to accept a plan means a non-debtor release is imposed on the voter, that will discourage creditors from voting and may distort the voting process, which is intended to provide a valuable signal about the extent of creditor support, within each voting class, for the plan's treatment of creditors' allowed claims against the debtor. *In re Smallhold, Inc.,* 2024 WL 4296938, at *7.

44.     In addition, the Bankruptcy Code guarantees that a creditor may not be required to accept in a chapter 11 plan less than it would receive in a chapter 7 liquidation.  11 U.S.C.

§ 1129(a)(7)(A).  But a chapter 7 liquidation could not require a release of non-debtors as a condition of receiving a distribution (because it does not involve a plan).  Requiring a creditor to accept a non-debtor release as a condition of receiving a distribution under a chapter 11 plan, absent the individual creditor's consent, is thus inconsistent with Bankruptcy Code section 1129(a)(7)(A).

45.    Further, imputing state-law consent to a non-debtor release from a vote in favor of a plan assumes that the creditor understands that an affirmative vote will have this dramatic impact, which would require both that the creditor sees that the ballot includes a non-debtor release, and that the creditor understands its terms.  But that assumption has no evidentiary support.  Here, the release opt in language is buried on the eighth page of a thirteen-page ballot.   Procedures Mot., Ex. 2.  The language of the ballot stating the consequences of voting in favor of the plan -- namely, that a creditor voting to accept the Plan will also be deemed to opt in to the releases whether or not it checks the opt in box -- is not found until page 8 of the ballot.  Moreover, the ballot is confusing—it provides the option to opt in but then explains that for voting creditors, they will be deemed to consent, but only to the fullest extent permitted by applicable law.  For this reason, too, creditors may vote on the Plan without fully understanding the consequences of a vote to accept.  "[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious."  *Norcia,* 845 F.3d at 1285 (quotation marks omitted*); Noble v. Samsung Elec. Am., Inc.,* 682 F. App'x 113, 117-118 (3d Cir. 2017) (reaffirming that a person cannot be presumed to have agreed to contractual provisions unless "there is a reasonable basis to conclude that consumers will have understood the document contained a bilateral agreement").  Hence, voting for a plan does not reflect actual and knowing consent, particularly in the context of "an

immensely complicated plan" where "it would be difficult for any layperson to comprehend all of

its details." *In re Congoleum Corp.*, 362 B.R. at 194.

**B.     Consent for a Release Given Under Economic Duress is not Free and Mutual Consent Required for Contract Formation**

46.     The Plan would withhold any payment to all General Unsecured Claimants unless

they execute a release in favor of a non-debtor.  "A consent is not a voluntary one if it is the product

of duress or coercion, actual or implicit." *United States v. Como*, 340 F.2d 891, 893 (2nd Cir. 1965);

*see also Matter of Com'r of Soc. Servs.*, Suffolk Cnty, 141 A.D. 2d 821, 822, 529 N.Y.S. 2d 883,

884 (1988) (finding that evidence of any fraud, duress or coercion would vitiate consent). If an

offeree is penalized unless an "offer" is accepted, that "preclude[es] an inference of assent."

*Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1230-31 (9th Cir. 2022).

47.     "Under Delaware law, contract formation requires mutual assent, meaning a

complete meeting of the minds of the parties." *Skinner v. Peninsula Healthcare Servs., LLC*, 2021

WL 778324, at *3 (Del. Super. Mar. 1, 2021).  However, duress, including business or economic

duress, is a basis for rescinding a party's consent to a contract.  *Hanna Systems, Inc. v. Capano*

*Group LP*, 1985 WL 21128 at *3 (Del. Ch. Nov. 29, 1985) ("This principle is available both as a

defense in an action at law and as a basis for securing rescissory relief in equity.")  Economic

duress, also referred to as "business compulsion," arises "where one is deprived of the free exercise

of his will through wrongful threats or acts directed against a person's business interests". . . and

"is compelled to choose between regrettable alternatives."  *Id*.  Consent under duress is not consent

and therefore, inclusion of such a term would violate the Supreme Court's ruling in *Harrington v.*

*Purdue Pharma, L.P.,* 603 U.S. __, 144 S. Ct. 2071 (2024).

48.     The proposed procedure may also violate sections 1123(a)(4) and 1129(a)(4).

Section 1123(a)(4) provides that a plan shall "provide the same treatment for each claim or interest

of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment . . . ." Section 1123(a)(4) implements a fundamental bankruptcy policy of equality of distribution to similarly situated creditors. *Begier v. IRS*, 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property"). But under the Plan, a General Unsecured Creditor who does not agree to release a non-debtor would not receive the same distribution as would a General Unsecured Creditor who does agree to the release. This proposed treatment violates Section 1123(a)(4) and cannot be approved. Similarly, Section 1129(a)(4) requires that any payment made by a plan proponent be subject to court approval and be reasonable. The Plan's coercive release procedure is not reasonable under *Purdue*.

C.   **The Plan Cannot Be Confirmed Because There Is No Authority for the Injunction Against Bringing Claims Against Non-Debtors**

49.   This Court also may not approve the injunction enforcing the Third-Party Release because *Purdue* stands for the proposition that non-consensual third-party releases and injunctions are generally not permitted by the Bankruptcy Code. *See Purdue Pharma L.P.*, 144 S. Ct. at 2088. As the *Purdue* court noted, the Bankruptcy Code allows courts to issue an injunction in support of a non-consensual, third-party release in exactly one context: asbestos-related bankruptcies, and these cases are not asbestos-related. *See id.* at 2085 (citing 11 U.S.C. § 524(e)).

50.   Even if releases between non-debtors are consensual, there is no Code provision that authorizes chapter 11 plans or confirmation orders to include injunctions to enforce them. Further, such an injunction is not warranted by the traditional factors that support injunctive relief. Parties seeking an injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy

21

in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Purdue Pharma*, 144 S. Ct. at 2085 (noting that an injunction is an "extraordinary remedy"); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'") (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)); *Fechter v. HMW Indus., Inc.*, 879 F.2d 1111, 1119 (3d Cir. 1989) ("We have long followed the principle that equitable remedies are available once legal remedies are found to be inadequate.") (citing *Weinberger*).

51.     The Debtors have made no attempt to show that any of these factors are met.  Nor could they. If the release is truly consensual, there is no threatened litigation and no need for an injunction to prevent irreparable harm to either the estates or the released parties. A consensual release may serve as an affirmative defense in any ensuing, post-effective date litigation between the third party releasees and releasors, but there is no reason for this Court to be involved with the post-effective date enforcement of those releases. Moreover, this injunction essentially precludes any party deemed to consent to this release from raising any issue with respect to the effectiveness or enforceability of the release (such as mistake or lack of capacity) under applicable non-bankruptcy law.

52.     Similarly, there is no statutory authority in the Bankruptcy Code that justifies an injunction to enforce an exculpation, and the Debtors have shown no need for an injunction to prevent "irreparable harm" to either the estates or the released parties.

**III.    <u>Miscellaneous Objections to the Proposed Solicitation Procedures</u>**

53.    The U.S. Trustee has raised the following issues with the Debtors concerning the proposed Solicitation Procedures:[8]

- The Proposed Form of Disclosure Statement Order should provide that no creditor may change or withdraw their vote on the plan without Court approval.  See Fed. R. Bankr. P. 3018(a).

- The chart of relevant dates from paragraph 15 of the Motion should be added to the Order for ease of reference.  Certain deadlines should be added to this chart, such as a deadline to file the Plan voting report, a deadline to file the proposed form of confirmation order, and a deadline to object to claims for voting purposes, so that parties have sufficient time to file Rule 3018 motions.

<u>RESERVATION OF RIGHTS</u>

54.    The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this Objection and reservation of rights, assert any objection, file any appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

---

[8] The Debtors have proposed revisions to the Procedures Order that address these issues.

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court enter an order or orders: (i) denying approval of the Disclosure Statement; (ii) denying the Procedures Motion; and (iii) granting such other and further relief as the Court deems just and equitable.

Dated: February 4, 2025

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

By:  */s/ Jane M. Leamy*
  Jane M. Leamy (DE Bar No. 4113)
  United States Department of Justice
  Office of the United States Trustee
  J. Caleb Boggs Federal Building
  844 N. King Street, Room 2207, Lockbox 35
  Wilmington, DE 19801
  Tel: (302) 573-6491
  Email: Jane.M.Leamy@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Jane M. Leamy, hereby certify that on February 4, 2025, a copy of this Objection was caused to be served *via* electronic service on the parties registered with the Court's CM/ECF system with courtesy copies sent via email to other parties in interest.


Dated: February 4, 2025                    */s/ Jane M. Leamy*
                                           Jane M. Leamy