# EXHIBIT B

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| FIRST MODE HOLDINGS, INC., *et al.*,[1] | Case No. 24-12794 (KBO) |
| Debtors. | (Jointly Administered) |
|  | **Ref: Docket Nos. 18 &, 73, 114 & 166** |

**ORDER (I) APPROVING THE SALE OF**
**ASSETS FREE AND CLEAR OF LIENS, CLAIMS,**
**INTERESTS AND ENCUMBRANCES, (II) APPROVING THE**
**ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively,

the "Debtors"), for entry of an order (this "Sale Order"), (a) authorizing the Debtors' sale of

substantially all of their property free and clear of liens, claims, encumbrances, and interests

other than Permitted Liens and Assumed Liabilities on the terms set forth in that certain asset

purchase agreement by and among Cummins Inc. (the "Purchaser") and First Mode Holdings,

Inc., Synchronous LLC (together with First Mode Holdings, Inc., the "Debtor Sellers"), First

Mode IPP Ltd., First Mode Pty Ltd., First Mode SA Pty, and First Mode SA Holdings

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are First Mode Holdings, Inc. (7177), and Synchronous LLC (1829).  The Debtors' mailing address is 3417 1st Ave S, Seattle, WA 98134.

[2]   "Motion" shall mean the *Debtors' Motion for Entry of (I) an Order A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter Into the Stalking Horse APA and Related Bid Protections, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) An Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 18].  Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion or the Stalking Horse APA (as defined below), as applicable.

(collectively, other than the Debtor Sellers, the "Non-Debtor Sellers"), a copy of which is annexed hereto as **Exhibit 1** (the "Stalking Horse APA"); (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases to the Purchaser in connection with the Stalking Horse APA; and (c) granting related relief; and this Court having previously entered the Bid Procedures Order [Docket No. [●]166] (which is incorporated herein by reference), authorizing and approving, among other things, bid procedures for the Purchased Assets; and the auction ~~having taken place on [January 30, 2025]~~ (the "Auction") **having been cancelled**, in accordance with the Bid Procedures Order; and the Purchaser having been chosen as the Successful Bidder for the Purchased Assets; and the Debtors party to the Stalking Horse APA having agreed, among other things, to sell the Purchased Assets to the Purchaser, including the executory contracts and unexpired leases that will be assumed and assigned to the Purchaser (the "Assigned Contracts") on the terms and conditions set forth in the Stalking Horse APA (collectively, the "Transactions," and any ancillary documents executed in connection therewith, the "Transaction Documents"); and the Debtors having filed the ~~[Post-Auction Notice]~~*Notice of Auction Cancellation and Designation of Stalking Horse Bid as the Successful Bid* [Docket No. [●]190] (the "~~Post-Auction~~ Notice") **of Successful Bidder"),** announcing the Purchaser as the highest or otherwise best bidder for the Purchased Assets pursuant to the Stalking Horse APA ~~following the Auction~~; and this Court having conducted a hearing on February 6, 2025 to consider approval of the Transactions (the "Sale Hearing") in accordance with the Bid Procedures Order, at which time all interested parties were offered an opportunity to be heard with respect to the Transaction; and this Court having reviewed and considered (i) the

2

Motion and the exhibits thereto, (ii) the Bid Procedures Order, (iii) the Stalking Horse APA, (iv) the Parr Declaration,[3] (v) the Freed Declaration,[4] (vi) ~~results of the Auction, (vii~~**the Supplemental Parr Declaration,[5] (vii) the Fitzpatrick Declaration,[6] (viii**) the objections and other responses to approval of the Transactions, if any, (~~viii~~**ix**) any other the declaration(s) submitted in support of sale approval, and (~~ix~~**x**) the arguments and representations of counsel made, and the evidence proffered or adduced at the Sale Hearing; and due and proper notice of the Motion and the relief requested therein, including, but not limited to, approval of the Stalking Horse APA and this Sale Order having been provided in accordance with the Bid Procedures Order, the Bankruptcy Rules, and the Local Rules, and no other or further notice being necessary; and all objections, if any, to approval of the Transactions having been withdrawn, resolved (including by separate agreement between the objecting party and the Debtors and/or

---

[3]  "Parr Declaration" shall mean the *Amended Declaration of Matthew Parr in Support of Motion of Debtors for Entry of (I) An Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter Into the Stalking Horse APA, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) An Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. ~~19~~151].

[4]  "Freed Declaration" shall mean the *Declaration of Colin Mark Freed in Support of Chapter 11 Petitions and First Day Pleadings Filed* [Docket No. 15].

[5]  **"Supplemental Parr Declaration" shall mean the *Supplemental Declaration of Matthew Parr in Support of Motion of Debtors for Entry of (I) An Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter Into the Stalking Horse APA, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) An Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 219].**

[6]  **"Fitzpatrick Declaration" shall mean the *Declaration of Kyle Fitzpatrick In Support of an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 214].**

3

the Purchaser, as applicable), or overruled as provided in this Sale Order; and this Court having found and determined that the relief sought at the Sale Hearing, entry of this Sale Order, and approval of the Transactions is in the best interests of the Debtors, their estates and creditors, and all parties in interest in these chapter 11 cases; and upon the record of the Sale Hearing and these chapter 11 cases; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**[47]

A.    **Petition Date**.    On December 15, 2024 (the "Petition Date"), the Debtors commenced these chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to operate and manage their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    **Jurisdiction and Venue**.  This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue over these chapter 11 cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This Court may enter a final order with respect to the Motion, the Transactions, and

---

[47] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  All findings of fact and conclusions of law announced by this Court at the Sale Hearing are hereby incorporated herein to the extent not inconsistent herewith.

all related relief, in each case, consistent with Article III of the United States Constitution.

C. **Statutory Predicates**. The statutory predicates for the relief granted hereunder are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code. Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6003, 6004, 6006, and 9006 and Local Rules 2002-1 and 6004-1. The consummation of the Transactions contemplated by the Motion, the Stalking Horse APA, and this Sale Order, and the assumption of the Assigned Contracts are legal, valid, and properly authorized under the cited provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

D. **Final Order**. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(j) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, expressly directs that this Sale Order be effective immediately upon entry, and waives any stay of execution or implementation of this Sale Order.

E. **Notice**. The Debtors gave due and proper notice of the proposed Transactions, the ~~Auction, and~~ Sale Hearing [Docket No. ~~[ ● ]~~168] (collectively, the "Sale Notice")~~[~~, and the ~~results~~cancellation of the Auction ~~on [ ● ]~~, and the identity of the Successful Bidder on January 28, 2025~~] (~~ in the "Notice of Successful Bidder")~~)~~. The Sale Notice and Notice of Successful Bidder constituted good, sufficient, and appropriate notice of the Transactions under

the particular circumstances and no other or further notice need be given with respect to the proposed Transactions.  As provided by the Sale Notice and Notice of Successful Bidder, a reasonable opportunity to object and/or be heard regarding the requested relief has been afforded to all interested "persons" (as defined in section 101(41) of the Bankruptcy Code) and other "entities" (as defined in section 101(15) of the Bankruptcy Code).  The Debtors published the Publication Notice (as defined in the Motion) in substantially the form attached as **Exhibit D** to the Motion in the *[USA Today]* on [ ● ]*Wall Street Journal* on January 24, 2025 [Docket No. [ ● ]] and the *[Financial Times]* on [ ● ]January 24, 2025 [Docket No. [ ● ]189].  Such publication of the Publication Notice conforms to the requirements of the Bid Procedures Order and Bankruptcy Rules 2002(l) and 9008 and was reasonably calculated to provide notice to any affected party and afford any affected party the opportunity to exercise its rights related to the Motion and the relief granted by this Sale Order.  Service and publication of the Sale Notice and Publication Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Purchased Assets free and clear of liens, claims, encumbrances, and interests other than Permitted Liens and Assumed Liabilities.  Other parties interested in bidding on the Purchased Assets were provided, pursuant to the Bid Procedures Order, sufficient notice and information to make an informed judgment on whether to bid.

F.    The Debtors also gave due and proper notice of the potential assumption and assignment of each executory contract or unexpired lease available to be assumed by the Debtors and assigned to the Purchaser to each non-debtor party under each such executory contract or unexpired lease as reflected on the notice of potential assumption and assignment of the

Assigned Contracts, filed on January 6, 2025 [Docket No. 97] **and the supplemental notice of potential assumption and assignment of Assigned Contracts, filed on February 4, 2025 [Docket No. 238]** (together with any supplemental notices, the "Assumption Notice"). Such notice was good, sufficient, and appropriate under the particular circumstances, and the counterparties to the Assigned Contracts are hereby deemed to consent to the relief granted herein, unless otherwise provided in this Sale Order.

G.    As evidenced by the affidavits of service [Docket Nos. **[●]86, 117, 126, 154, 169, 170, 172, 175, 178, & 179**] previously filed with this Court, and as shall subsequently be filed with this Court to the extent necessary, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Bid Procedures Order, the Auction**, (and cancellation thereof),** the Sale Hearing, the Assumption Procedures, the Cure Amounts, the assumption and assignment of the Assigned Contracts, the Stalking Horse APA, this Sale Order and the Transactions has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9006, 9007, and 9014, and Local Rules 2002-1 and 6004-1. The Debtors have complied with all obligations to provide notice of the Motion, the Bid Procedures Order, the Auction **(and cancellation thereof)**, the Sale Hearing, the Cure Amounts, the Assumption Procedures, the assumption and assignment of the Assigned Contracts, the Stalking Horse APA, this Sale Order, and the Transactions as required by the Bid Procedures Order. The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Bid Procedures Order, the Auction **(and cancellation thereof)**, the Sale Hearing, the Cure Amounts,

the Assumption Procedures, the assumption and assignment of the Assigned Contracts, the Stalking Horse APA, this Sale Order or the Transactions is or shall be required.

H.    A reasonable opportunity to object and/or be heard regarding the relief provided in this Sale Order was afforded to all parties in interest.

I.    **Bid Procedures**.    On [ ● ]**January 17**, 2025, this Court entered the Bid Procedures Order approving, among other things, the Bid Procedures for the sale of the Assets and Assumption Procedures for the related assumption and assignment of any unexpired leases and executory contracts related to any sale [Docket No. [ ● ]**166**].  As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors and the Purchaser have complied in all material respects with the Bid Procedures Order.  The Debtors and their professionals have adequately and appropriately marketed the Purchased Assets in compliance with the Bid Procedures and the Bid Procedures Order, and in accordance with the Debtors' fiduciary duties.  Based upon the record of these proceedings, creditors, other parties in interest, and prospective purchasers were afforded a full, fair and reasonable opportunity to make a higher or otherwise better bid for the Purchased Assets.

J.    The Bid Procedures were substantively and procedurally fair to all parties and all potential bidders, were the result of arm's-length negotiations, and afforded notice and a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Purchased Assets.  The Debtors conducted the sale process without collusion and in accordance with the Bid Procedures.

K.    The Purchaser is the designated Successful Bidder, and the Stalking Horse APA is designated the Successful Bid for the Purchased Assets enumerated therein, in each case, in accordance with the Bid Procedures Order.  The Purchaser and its professionals have complied in all material respects with the Bid Procedures Order, the Bid Procedures, the Assumption Procedures, and all other applicable orders of this Court in negotiating and entering into the Stalking Horse APA, and the Transactions and the Stalking Horse APA likewise comply with the Bid Procedures Order and all other applicable orders of this Court.

L.    **Business Judgment**.  The Stalking Horse APA, including the form and total consideration to be realized by the Debtors under the Stalking Horse APA, (a) constitutes the highest or otherwise best offer received by the Debtors for the Purchased Assets; (b) is fair and reasonable; and (c) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

M.    The Debtors' determination that the consideration provided by the Purchaser under the Stalking Horse APA constitutes the highest or otherwise best offer for the Purchased Assets is reasonable and constitutes a valid and sound exercise of the Debtors' business judgment.

N.    The releases provided under the Stalking Horse APA are fair and reasonable, are in the best interests of the Debtors, their estates, their creditors and all other parties in interest, and are being provided in return for fair consideration.

O.    Consistent with their fiduciary duties, the Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Transactions and the

performance of their obligations under the Stalking Horse APA and the other Transaction Documents, including, but not limited to, the fact that (a) the total cash and non-cash consideration provided by the Purchaser for the Purchased Assets as reflected in the Stalking Horse APA is the highest or otherwise best offer for the Purchased Assets; (b) the consideration provided by the Purchaser under the Stalking Horse APA will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Purchased Assets; (c) there is a substantial risk of depreciation of the value of the Purchased Assets if the Transactions are not consummated promptly; (d) the Transactions contemplated by the Stalking Horse APA present the best opportunity to maximize the value of the Debtors' estates; and (e) unless the Transactions are concluded expeditiously as provided for in the Motion and pursuant to the Stalking Horse APA, creditor recoveries will be diminished.

P.     **Adequate Marketing; Highest or Best Offer**.   As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing, as applicable, and the representations of counsel made on the record at the Sale Hearing, as applicable, (a) the Debtors and their professionals adequately marketed the Purchased Assets and conducted the sale process in compliance with the Bid Procedures Order in good faith and in a fair and open manner; (b) the sale process and the Bid Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any interested party to conduct due diligence and make an offer to purchase the Purchased Assets and submit higher or better offers for the Purchased Assets than the Purchaser's Successful Bid; (c) the consideration provided by the Purchaser in the Stalking Horse APA constitutes the highest or otherwise best offer for the Purchased Assets; (d) the

10

consideration provided by the Purchaser is fair and reasonable consideration for the Purchased Assets and constitutes reasonably equivalent value under the Bankruptcy Code, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, possession, or the District of Columbia or any other applicable law; (e) the Transactions will provide a greater recovery to the Debtors' creditors than would be provided by any other presently available alternative transaction with respect to the Purchased Assets; (f) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Purchased Assets for greater economic value to the Debtors or their estates than the Purchaser; and (g) the Debtors determined that the Stalking Horse APA constitutes the highest or otherwise best offer for the Purchased Assets, maximizes value for the Debtors' estates, and constitutes a valid and sound exercise of the Debtors' business judgment.  There is no legal or equitable reason to delay Closing of the Transactions contemplated by the Stalking Horse APA.

Q.    **Corporate Authority**.  Subject to entry of this Sale Order, the Debtors (a) have full corporate power and authority to execute and deliver the Stalking Horse APA and all other documents contemplated thereby, and the Transactions and the sale of the Purchased Assets have been duly and validly authorized by all necessary corporate action of the Debtors, (b) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Stalking Horse APA, including, without limitation, the Transactions and the assumption and assignment of the Assigned Contracts, (c) have taken all corporate action necessary to authorize and approve the Stalking Horse APA and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, the Transactions and the assumption and

assignment of the Assigned Contracts, and (d) need no consents or approvals, including any consents or approvals from any non-Debtor entities, other than those expressly set forth in the Stalking Horse APA or this Sale Order, to consummate the transactions contemplated thereby, including, without limitation, the Transactions and the assumption and assignment of the Assigned Contracts.

R.    **Arm's-Length Sale**.    The sale process engaged in by the Debtors and the Purchaser, including, without limitation, the Auction, was conducted in accordance with the Bid Procedures and the Bid Procedures Order.    The Stalking Horse APA was negotiated, proposed, and entered into by the Sellers and the Purchaser in good faith, without collusion of any kind, and from arm's-length bargaining positions, and is substantively and procedurally fair to all parties in interest.    The Debtors and the Purchaser and their respective advisors have complied, in good faith, in all material respects with the Bid Procedures Order and the Bid Procedures.    The Debtors and their management, board of directors, employees, agents, advisors, and representatives, and the Purchaser and its employees, agents, advisors and representatives, actively participated in the bidding process and in the Auction, and each acted in good faith and without collusion or fraud of any kind.    The Purchaser subjected its bid to competitive bidding in accordance with the Bid Procedures and was designated the Successful Bidder for the Purchased Assets in accordance with the Bid Procedures and the Bid Procedures Order.    All payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Transactions have been disclosed.    The form and total consideration to be realized by the Debtors under the Stalking Horse APA constitutes fair value,

fair, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Purchased Assets.  Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the Stalking Horse APA or the Transactions to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtors nor the Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction.

S.    **Good Faith**.  The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the rights, privileges, immunities, and protections afforded thereby, including in the event this Sale Order or any portion thereof is reversed or modified on appeal, and the Purchaser has proceeded in good faith in all respects in connection with the Transactions specifically and these chapter 11 cases generally.  Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code.  The Debtors were free to deal with any other party interested in buying or selling some or all of the Purchased Assets on behalf of the Debtors' estates.  The protections afforded by 363(m) of the Bankruptcy Code are integral to the Transactions and the Purchaser would not consummate the Transactions without such protections.

T.    Neither the Purchaser nor any of its affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of the Debtors, as that term is defined under section 101(31) of the Bankruptcy Code.  No common identity of directors, managers, controlling shareholders, or members exists between the Debtors

13

Case 24-12794-KBO    Doc 241-2    Filed 02/04/25    Page 15 of 53

and the Purchaser.  All payments to be made by the Purchaser and all agreements or arrangements entered into by the Purchaser in connection with the Transactions have been fully disclosed, and the negotiation and execution of the Stalking Horse APA and the other Transaction Documents were at arms' length and in good faith.

U.      **No Fraudulent Transfer**.  The consideration provided by the Purchaser for the Purchased Assets pursuant to the Stalking Horse APA (a) is fair and reasonable, (b) is the highest and best offer for the Purchased Assets, (c) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other available alternative, and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession, and the District of Columbia, or any other applicable law.

V.      The Stalking Horse APA was not entered into, and neither the Sellers nor the Purchaser has entered into the Stalking Horse APA or proposes to consummate the Transactions, for the purpose of (a) escaping liability for any of the Debtors' debts or (b) hindering, delaying or defrauding the Debtors' present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable law substantially similar to the foregoing.

W.      **Free and Clear**.  The Purchaser would not have entered into the Stalking Horse APA and would not consummate the transactions contemplated thereby, including, without limitation, the Transactions and the assumption and assignment of the Assigned Contracts, (a) if

14

US-DOCS\156952981.1156952981

the sale of the Purchased Assets to the Purchaser were not, pursuant to section 363(f) of the Bankruptcy Code and any other applicable Law and except for Permitted Liens and Assumed Liabilities, free and clear of (i) all liens, whether consensual or statutory, replacement liens, adequate protection liens or other liens granted under sections 361, 363, or 364 of the Bankruptcy Code, mortgages, deeds of trust, hypothecations, pledges, security interests, charges, contractual commitments, options and transfer restrictions, including rights of first refusal or first offer, defect or objection liens, easements, encroachments or servitudes, in each case, that constitutes an "interest" for purposes of section 363(f) of the Bankruptcy Code (collectively, the "Liens"), (ii) any and all "claims," as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including (1) any and all claims or causes of action based on or arising under any labor, employment or pension laws, labor or employment agreements, including any employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (A) ERISA (as defined below), (B) the Fair Labor Standards Act, (C) Title VII of the Civil Rights Act of 1964, (D) the Federal Rehabilitation Act of 1973, (E) the National Labor Relations Act, (F) the Age Discrimination and Employment Act of 1967, as amended, (G) the Americans with Disabilities Act of 1990, (H) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law, (I) state anti-discrimination, harassment, or retaliation laws, (J) state unemployment or workers' compensation laws or any other similar state laws, (K) the Family

15

and Medical Leave Act and paid leave laws or other leave of absence laws, (L) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (M) the WARN Act (29 U.S.C. §§ 2101 et seq.), or in each case in (A) through (M) any equivalent applicable laws outside the United States, (2) any rights under any multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA")), pension, health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability, (3) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, (4) any and all claims or causes of action based upon or relating to any bulk sales or similar law, (5) any and all claims or causes of action based upon or relating to any tax statutes or ordinances, including the Internal Revenue Code of 1986, as amended (the "IRC"), and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing, including any ad valorem taxes assessed by any applicable taxing authority, and (6) any other rights or causes of action (whether in law or in equity), warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued or contingent and regardless of whether currently exercisable), whether

16

arising prior to or subsequent to the commencement of the above-captioned case, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Claims"), and (iii) any and all claims, causes of actions, encumbrances, payments, charges, judgments, assessments, losses, monetary damages, penalties, fines, fees, interest obligations, deficiencies, debts, obligations, costs and expenses, judgments, orders and decrees of any court or foreign domestic governmental entity (including foreign, state, and local taxes), and other liabilities (whether absolute, accrued, contingent, fixed or otherwise, or whether known or unknown, or due or to become due or otherwise), including any amounts paid in settlement, interest, court costs, costs of investigators, attorneys' fees, legal or other expenses incurred in connection therewith (collectively, the "Interests"); or (b) if the Purchaser would, or in the future could, be liable for or subject to any such Liens, Claims, or Interests.

X.      A sale of the Purchased Assets other than one free and clear of all Liens, Claims, and Interests (other than Permitted Liens and Assumed Liabilities) would have yielded substantially less value for the Debtors' estates, with less certainty, than the Transactions as contemplated by the Stalking Horse APA.  Therefore, the Transactions contemplated by the Stalking Horse APA free and clear of all Liens, Claims, and Interests (other than Permitted Liens and Assumed Liabilities) is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

Y.      The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

Z.      Not transferring the Purchased Assets free and clear of any and all Liens, Claims, and Interests (other than Permitted Liens and Assumed Liabilities) would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of any and all Liens, Claims, and Interests (other than Permitted Liens and Assumed Liabilities) would be of substantially less benefit to the Debtors' estates.

AA.     Neither the Purchaser nor any of its affiliates are a mere continuation or substantial continuation of the Debtors or their estates, there is no continuity or common identity between the Purchaser, the Debtors, or any of their respective affiliates, and there is no continuity of enterprise between the Purchaser, the Debtors, or any of their respective affiliates. Neither the Purchaser nor any of their affiliates are holding themselves out to the public as a continuation of the Debtors.  Neither the Purchaser nor any of its affiliates are a successor to the Debtors or their estates and none of the transactions contemplated by the Stalking Horse APA, including, without limitation, the Transactions and the assumption and assignment of the Assigned Contracts amounts to a consolidation, merger, or *de facto* merger of the Purchaser or any of its affiliates with or into any Debtor.  Except as otherwise set forth in the Stalking Horse APA, neither the Purchaser nor any of its affiliates are a successor employer as defined in the IRC or by the U.S. National Labor Relations Board or under other applicable law.

BB.     Without limiting the generality of the foregoing, and other than as may be set forth in the Stalking Horse APA, none of the Purchaser, its affiliates, the present or contemplated officers, directors, managers, shareholders, or members of the Purchaser and its affiliates, or the

Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens, Claims, or Interests relating to any U.S. federal, state or local tax liabilities, that the Debtors may incur in connection with consummation of the transactions contemplated by the Stalking Horse APA, including, without limitation, the Transactions and the assumption and assignment of the Assigned Contracts, or that the Debtors have otherwise incurred prior to the consummation of the transactions contemplated by the Stalking Horse APA.

CC.    **Validity of Transfer**.  The consummation of the transactions contemplated by the Stalking Horse APA, including, without limitation, the Transactions and the assumption and assignment of the Assigned Contracts, is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) thereof, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Stalking Horse APA. ~~Upon~~**The Debtors have demonstrated that upon** entry of this Sale Order, subject to the terms of the Stalking Horse APA, **it is appropriate that** the applicable Debtors ~~are~~**be** authorized to transfer all of their right, title, and interest in and to the Purchased Assets that do not constitute Non-Debtor Assets free and clear of, and neither the Purchaser nor any of the Purchaser's affiliates (including any subsidiary of the Purchaser, any person or entity that could be treated as a single employer with the Purchaser pursuant to Section 4001(b) of ERISA or Section 414(b), (c), (m) or (o) of the IRC, and any of their respective managed funds or accounts, any of their respective lenders or investors, and, in each case of the foregoing, each of their respective

19

former, current, or future, shareholders, equity holders, owners, members, managers, employees, representatives, officers, limited or general partners, directors, agents, professionals, successors, affiliates, or permitted assignees, (collectively with the Purchaser, the "Purchaser Group")) shall be responsible for, any Liens, Claims, or Interests (other than Permitted Liens and Assumed Liabilities), with such Liens, Claims, or Interests attaching solely to the proceeds of the sale of the Purchased Assets that do not constitute Non-Debtor Assets with the same nature, validity, priority, extent, perfection, and force and effect, and in the same order of priority, that such Liens, Claims, or Interests encumbered such Purchased Assets immediately prior to the Closing.

DD.    The Purchased Assets constitute, in part, property of the applicable Debtors' estates and good title to the Purchased Assets is vested in the applicable Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The applicable Debtors, together with their non-Debtor affiliates party to the Stalking Horse APA, are the sole and lawful owners of the Purchased Assets.

EE.    The Stalking Horse APA has been duly and validly executed and delivered by the Debtors and, subject to the terms of the Stalking Horse APA, shall constitute valid and binding obligations of the Debtors and the Purchaser, enforceable against the Debtors and the Purchaser in accordance with its terms.  The Stalking Horse APA, the Transactions, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 11 trustee appointed in these chapter 11 cases or any chapter 7 trustee appointed upon conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code and shall not be subject to rejection or avoidance by the foregoing parties or any other

person.

FF.    **Assigned Contracts**.  The assumption and assignment of the Assigned Contracts pursuant to the Assumption Notice, the terms of this Sale Order, and the Stalking Horse APA is integral to the transactions contemplated by the Stalking Horse APA.  Such assumption and assignment is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

GG.    Pursuant to section 365 of the Bankruptcy Code, the Debtors ~~are authorized to assume~~**have demonstrated that assuming** all Assigned Contracts and ~~assign~~**assigning** such Assigned Contracts to the Purchaser **is appropriate**.  To the extent a Cure Amount is owed to the counterparty of any Assigned Contract, the applicable Cure Amount will be paid on or before Closing of the Transactions approved pursuant to this Sale Order in accordance with the Stalking Horse APA, or as otherwise expressly agreed to between the Debtors (with the consent of the DIP Lender) and the Purchaser, as applicable, and such counterparty.  The Purchaser has, in accordance with the Assumption Procedures, provided adequate assurance of future performance to any non-Debtor contract counterparty to the extent required by section 365 of the Bankruptcy Code.  The Cure Amounts set forth on Exhibit 2 attached hereto (or any supplemental notice served in accordance with the Assumption Procedures or an order of this Court) are the sole amounts necessary to cure any and all defaults under the applicable Assigned Contracts under sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code and, upon payment of the Cure Amounts, the Debtors shall have no further liability under the Assigned Contracts whatsoever.

HH.    **Transfer of Assigned Contracts**.  The Assigned Contracts being assigned to the Purchaser are an integral part of the Transactions and, accordingly, their assumption and assignment is reasonable and an enhancement to the value of the Debtors' estates.  To the extent any Assigned Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it ~~shall~~*is appropriate that such Assigned Contract* be transferred to the Purchaser in accordance with the terms of the Stalking Horse APA and, other than with respect to Permitted Liens and Assumed Liabilities, the Purchaser shall have no liability or obligation for any (a) defaults or breaches under such contract that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the Closing Date; and (b) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, to the extent permitted by applicable law, any right of recoupment) with respect to such Assigned Contract, that relate to any acts or omissions that arose or occurred prior to the Closing Date~~.~~***, provided that, the Purchaser shall be liable for payment of the Cure Amounts with respect to any Assigned Contract to the extent such Assigned Contract is determined to not be an executory contract within the meaning of section 365 of the Bankruptcy Code.***

II.    **Binding and Valid Transfer**.  The transfer of the Purchased Assets to the Purchaser will be a legal, valid, effective, and enforceable sale and transfer of the Purchased Assets and will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Liens, Claims, and Interests, other than the Permitted Liens and Assumed Liabilities, to the extent expressly set forth in the Stalking Horse APA and in this Sale Order.

JJ.    **Satisfaction of Standards of Section 363(f) of the Bankruptcy Code**.  ~~The~~**It is necessary and appropriate that the** applicable Debtors ~~are~~**be** authorized to sell the Purchased Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever, other than the Permitted Liens and Assumed Liabilities, because, with respect to each creditor or other person or entity asserting a Lien, Claim, or Interest, **the Debtors have demonstrated that** one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code have been satisfied.  Each holder of a Lien, Claim, or Interest (a) has, subject to the terms and conditions of this Sale Order, consented to the Transactions or is deemed to have consented to the Transactions pursuant to section 363(f)(2) of the Bankruptcy Code, (b) is adequately protected by having its Lien, Claim, or Interest attach solely to the proceeds of the Transactions attributable to the Purchased Assets against or in which the holder of a Lien, Claim, or Interest held a Lien, Claim, or Interest, with the same validity, force, and effect, and in the same order of priority, that such Liens, Claims, and Interests had against such Purchased Assets or their proceeds, if any, immediately prior to the Closing, (c) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, or Interest, or (d) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  In all cases, **it is necessary that** each such person with Liens, Claims, or Interests in the Purchased Assets (other than Permitted Liens and Assumed Liabilities) ~~is~~**be** enjoined from taking any action against the Purchaser, the Purchaser's affiliates, or any agent of the foregoing to recover any such Lien, Claim, or Interest.

KK.    **No *Sub Rosa* Plan**.  The sale, Transactions, the Stalking Horse APA, and the other transactions contemplated thereby do not constitute a *sub rosa* chapter 11 plan.  The

23

Transactions neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate a liquidating chapter 11 plan for the Debtors as they do not and do not propose to: (i) impair or restructure any existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent any party's voting rights with respect to any current or future chapter 11 plan proposed by the Debtors; (iii) circumvent any chapter 11 plan process safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.

LL.    **Purchased Assets Assignable**.  To the maximum extent possible under the Bankruptcy Code, each and every provision of the documents governing the Purchased Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Purchased Assets, if any, has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.

MM.    **Compelling Circumstances for an Immediate Sale**.  To maximize the value of the Purchased Assets, it is essential that the transactions contemplated by the Stalking Horse APA occur within the time constraints set forth therein.  Time is of the essence in consummating the transactions contemplated by the Stalking Horse APA, including, without limitation, the Transactions and the assumption and assignment of the Assigned Contracts.  Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

MM.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of

24

the transactions contemplated by the Stalking Horse APA, including, without limitation, the Transactions and the assumption and assignment of the Assigned Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtors' estates will suffer irreparable harm if the relief provided herein is not granted on an expedited basis.

NN.    The legal and factual bases set forth in the Motion, the Parr Declaration, and the Freed Declaration, and any additional declarations filed in support thereof and presented at the Sale Hearing establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and all other parties in interest.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.    **Transactions ~~Is~~Are Approved**.  The Motion is GRANTED and the Transactions are APPROVED, as set forth herein and on the record at the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order.  For the avoidance of doubt, this Sale Order does not apply to, or approve, the sale, assignment, transfer, purchase, or assumption of any Non-Debtor Assets (as defined below).

2.    **Objections Overruled**.  Except as otherwise provided herein, all objections to, or reservation of rights regarding, or other responses to the Motion or the relief requested therein, including, without limitation, the Stalking Horse APA, the Transaction Documents, the Transactions, the entry of this Sale Order or the relief granted herein, any objections to Cure Amounts or relating to the cure of any defaults under any of the Assigned Contracts or to the assumption and assignment of any of the Assigned Contracts to the Purchaser by the Debtors,

that have not been withdrawn, waived, settled, or that have not otherwise been resolved pursuant to the terms hereof, are hereby denied and overruled on the merits with prejudice.  All persons and entities that failed to timely object, or withdrew their objections, to the Motion or the entry of this Sale Order are deemed to consent to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.  No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bid Procedures Order, and the Bid Procedures Order is a final order of this Court, has not been vacated, withdrawn, rescinded, or amended and remains in full force and effect.

3.    **Notice**.  Notice of the Motion, the hearing on the Bid Procedures, the Bid Procedures, the Assumption Procedures, the Auction **(and the cancellation thereof)**, the Transactions, and the Sale Hearing, all deadlines related thereto, and the relief granted in this Sale Order, was fair, sufficient, proper, adequate, appropriate, and equitable under the circumstances and complied in all respects with sections 102(1), 363, and 365 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Bid Procedures Order, the Bid Procedures, the Assumption Procedures, and the procedural due process rules of the United States Constitution, and as such no order or further notice is or shall be required.

4.    **Approval and Authorization**.  The sale of the Purchased Assets to the Purchaser on the terms and conditions contained in the Stalking Horse APA and the Transaction Documents, including, without limitation, the Closing of the Transactions as required by the Stalking Horse APA, is hereby approved in all respects pursuant to sections 105, 363, and 365 of the Bankruptcy Code.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the

Debtors are authorized to perform all obligations under, comply with the terms of, and make all payments required by the Stalking Horse APA and the Transaction Documents and consummate the Transactions and the related transactions pursuant to, and in accordance with, the terms and conditions of the Stalking Horse APA and this Sale Order without further order of this Court. The Debtors, the Purchaser, and each of their respective officers, employees, and agents are hereby authorized to (i) execute the Stalking Horse APA and the Transaction Documents, and any prior execution of such agreements, documents, and instruments, including the Transaction Documents, is hereby ratified, (ii) perform all obligations under the Stalking Horse APA and the Transaction Documents, to consummate each of the foregoing, including, without limitation, deeds, assignments, and other instruments of transfer, and to consummate the Transactions, and any prior performance of such obligations or any prior consummation of such Transactions is hereby ratified, (iii) assume and assign the Assigned Contracts to the Purchaser, and (iv) take all other and further actions as may be reasonably necessary or appropriate to consummate and implement the Transactions and to perform all obligations under the Stalking Horse APA and the Transaction Documents and the consummation thereof, without any further corporate action or order of this Court. The Purchaser shall not be obligated to proceed with the Closing under the Stalking Horse APA unless and until all conditions precedent to its obligation to do so thereunder have been satisfied or waived in accordance with the Stalking Horse APA.

5. **No *Sub Rosa* Plan**. The sale of the Purchased Assets, including, without limitation, the assignment of the Assigned Contracts, pursuant to the Stalking Horse APA outside a chapter 11 plan, neither impermissibly restructures the rights of the Debtors' creditors

nor impermissibly dictates the terms of the Debtors' subsequent chapter 11 plan. Neither the Stalking Horse APA nor the Transactions constitutes a *sub rosa* chapter 11 plan as they do not and do not propose to: (i) impair or restructure any existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent any party's voting rights with respect to any current or future chapter 11 plan proposed by the Debtors; (iii) circumvent any chapter 11 plan process safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.

6.    **Valid Transfer**. Effective upon the Closing, the transfer of the Purchased Assets to the Purchaser pursuant to the Stalking Horse APA constitutes a legal, valid, effective, and enforceable sale and transfer of the Purchased Assets to the Purchaser and shall vest the Purchaser with all legal, equitable, and beneficial right, title, and interest in and to the Purchased Assets, free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (other than Permitted Liens and Assumed Liabilities) (with such Liens, Claims, and Interests attaching solely to the proceeds of the sale of the Purchased Assets with the same nature, validity, priority, extent, perfection, and force and effect, and in the same order of priority, that such Liens, Claims, or Interests encumbered the Purchased Assets immediately prior to the Closing). The Stalking Horse APA and the Transaction Documents are valid and binding contracts between the Sellers and the Purchaser and shall be enforceable pursuant to their terms. The Stalking Horse APA, the Transaction Documents, the Transactions itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, the Debtors' estates, their creditors, all counterparties to the Assigned Contracts, all parties in

interest, any chapter 11 trustee appointed in these chapter 11 cases or any chapter 7 trustee appointed upon a conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, and shall not be subject to rejection or avoidance by the foregoing parties or any other person or entity.

7.    **Authorization to Assign**.    Notwithstanding any provision of any contract governing the Purchased Assets, including any Assigned Contract to be assumed and assigned to the Purchaser as of the Closing pursuant to section 365(f) of the Bankruptcy Code, or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Purchased Assets, including any Assigned Contract, the Debtors are hereby authorized and directed to (i) assign the applicable Purchased Assets to the Purchaser and (ii) assume and assign the Assigned Contracts to the Purchaser as of the Closing, in each case, which assignments shall take place on and be effective as of the Closing or such other date after the Closing Date, in each case, as provided in the Stalking Horse APA or as otherwise provided by a separate order of this Court.[8]

> a.    There shall be no accelerations, assignment fees, increases, or any other fees charged to the Purchaser or the Debtors as a result of the assignment of the Purchased Assets or the assumption and assignment of the Assigned Contracts **except to the extent such amounts are owed as set forth on Exhibit 2 attached hereto (or any supplemental notice served in accordance with the Assumption Procedures or an order of this Court)**.

---

[8]    **For the avoidance of doubt, the Debtors shall not be authorized to assume and assign any Assigned Contracts set forth on the *Supplemental Notice to Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases Regarding Cure Amounts and Possible Assignment to the Stalking Horse Bidder* [Docket No. 238] (the "Supplemental Cure Notice") or any further supplemental cure notice filed in the Chapter 11 Cases until (i) expiration of the Supplemental Assumed Contract Objection Deadline (as defined in the Supplemental Cure Notice) or the objection deadline set forth in any other supplemental cure notice (if any) and (ii) resolution of any timely-filed objection to the proposed assumption and assignment or purported Cure Amount.**

29

b.  The Debtors have met all of the requirements of section 365(b) of the Bankruptcy Code for each of the Assigned Contracts that are to be assumed and assigned to the Purchaser as of Closing.

c.  The Debtors' assumption and assignment of the Assigned Contracts is subject to the consummation of the Transactions with the Purchaser.  Any objection of any counterparty to the assumption and assignment of any Assigned Contracts, any Cure Amount, or seeking further adequate assurance of future performance than that provided in the Stalking Horse APA, to the extent not otherwise resolved by agreement or by separate order of this Court, is hereby overruled.  Upon payment of the Cure Amount by the Purchaser, the Debtors shall be released by the Purchaser and the applicable counterparty from any and all claims and causes of action of any nature whatsoever based on, arising from or relating to, such Assigned Contracts.

d.  Unless a counterparty to any Assigned Contract filed a timely Cure Objection, the Cure Amounts set forth on the Assumption Notice shall constitute findings of this Court and shall be final and binding on the counterparties to the Assigned Contracts and their successors and designees upon the Closing and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assignment, irrespective of the terms and conditions of such Assigned Contracts.  Each counterparty to a Assigned Contract (other than a counterparty who filed a timely Cure Objection) shall be forever barred, estopped, and permanently enjoined from asserting against the Purchaser or its property (including, without limitation, the Purchased Assets), any default arising prior to or existing as of the Closing, or any counterclaim, defense, recoupment, setoff, or any other interest asserted or assertable against the Debtors (except as otherwise provided herein).  To the extent a counterparty to any of the Assigned Contracts received notice of the Debtors' proposed Cure Amount and fails to file a Cure Objection by the applicable deadline, such party shall be deemed to have (A) consented to the assumption and assignment of the applicable Assigned Contract and the payment of the Cure Amount provided in the Assumption Notice, and (B) waived any right to assert or collect any other cure amount or enforce any default that may arise or have arisen prior to or as of the Closing.

8.  **Assigned Contracts**.  As of the Closing, subject to the provisions of this Sale Order and in accordance with the Stalking Horse APA, the Purchaser shall succeed to the entirety of the ~~appliable~~**applicable** Debtors' rights and obligations in the Assigned Contracts to

30

be assumed and assigned to the Purchaser, and shall have all rights thereunder subject to the terms of the Stalking Horse APA.

a.  Upon Closing, (i) all defaults (monetary and non-monetary) under the Assigned Contracts shall be deemed cured and satisfied in full through the payment of the Cure Amounts, (ii) no other amounts will be owed by the Debtors, their estates, or the Purchaser with respect to the Assigned Contracts, and (iii) any and all persons or entities shall be forever barred and estopped from asserting a Claim against the Debtors, their estates, the Purchaser, or the Purchased Assets that any additional amounts are due or defaults exist under the Assigned Contracts.  The Purchaser's promise pursuant to the terms of the Stalking Horse APA to pay the Cure Amounts and the Purchaser's promise to perform the Debtors' obligations under the Assigned Contracts for the period on or after the Closing Date shall constitute adequate assurance of the Purchaser's future performance under the Assigned Contracts being assigned to it as of the Closing within the meaning of sections 365(b)(l)(C) and (f)(2)(A)-(B) of the Bankruptcy Code.

b.  Upon assumption of the Assigned Contracts to be assumed by the applicable Debtors and assigned to the Purchaser as of the Closing, such Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order, and shall be assigned and transferred to the Purchaser, notwithstanding any provision in such Assigned Contract or other restrictions prohibiting assignment or transfer.  To the extent any Assigned Contract is assumed and assigned to the Purchaser under this Sale Order, such assumption and assignment will not take effect until the Closing.  Furthermore, other than the Assigned Contracts, no other contract shall be deemed assumed by the Debtors and assigned to the Purchaser pursuant to section 365 of the Bankruptcy Code.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of such Assigned Contract.

Notwithstanding the foregoing, the Debtors may, at the Purchaser's direction, amend the list of Assigned Contracts to add or remove any Assigned Contract to or from such list prior to Closing of the Transactions in accordance with the terms of the Stalking Horse APA and the Assumption Procedures.

9.    **Exculpation**.  Neither the Purchaser nor any of its affiliates, successors, and assigns, nor any of their professionals, shall have, or incur any liability to, or be subject to any action by, the Debtors or any of their predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the Stalking Horse APA and the entry into and consummation of the Transactions, except as expressly provided in the Stalking Horse APA and this Sale Order.  Neither the Debtors nor any of their affiliates, successors, and assigns, nor any of their professionals, shall have, or incur any liability to, or be subject to any action by, the Purchaser or any of its predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the Stalking Horse APA and the entry into and consummation of the Transactions, except as expressly provided in the Stalking Horse APA and this Sale Order.

10.    **Free and Clear**.  Upon the Closing, pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Purchased Assets, including the Assigned Contracts, shall be transferred to the Purchaser in accordance with the Stalking Horse APA, and such transfer shall be free and clear of all Liens, Claims, and Interests (other than Permitted Liens and Assumed Liabilities), in each case, to the maximum extent permitted by section 363(f) of the Bankruptcy Code and any other applicable law, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law,

equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing.  Any and all such Liens, Claims, and Interests (other than Permitted Liens and Assumed Liabilities) shall attach solely to the proceeds of the Transactions attributable to the Purchased Assets or their proceeds against or in which the holder of a Lien, Claim, or Interest held a Lien, Claim, or Interest, with the same validity, force, and effect, and in the same order of priority, that such Liens, Claims, and Interests had against such Purchased Assets immediately prior to the Closing.  Upon consummation of the Transactions, subject to Section 11.16 of the Stalking Horse APA, the Debtors and their estates are deemed to forever release and discharge the Purchaser Group from any and all Claims and Interests of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, relating to the sale of the Purchased Assets or assignments of the Assigned Contracts.  Except as expressly provided for in the Stalking Horse APA or this Sale Order, all holders of Liens, Claims, or Interests fall within one or more of the subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, Claims, or Interests attach solely to the proceeds of the Transactions attributable to the Purchased Assets or their proceeds against or in which the holder of a Lien, Claim, or Interest held a Lien, Claim, or Interest, with the same validity, force, and effect, and in the same order of priority that such Liens, Claims, or Interests had against the Purchased Assets immediately prior to the Closing, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto; *provided*, *however*, that setoff rights will be extinguished to the extent there is no longer mutuality of the parties after consummation of the Transactions.

US-DOCS\156952981.1156952981

11.     Those holders of Liens, Claims, or Interests who did not object (or who ultimately withdrew their objections, if any) to the Transactions are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Liens, Claims, or Interests who did object that have an interest in the Purchased Assets fall within one or more of sections 363(f)(1), 363(f)(3), 363(f)(4), or 363(f)(5) of the Bankruptcy Code and are therefore adequately protected by having their Liens, Claims, or Interests in the Purchased Assets, if any, attach solely to the proceeds of the Transactions attributable to the Purchased Assets against or in which the holder of a Lien, Claim, or Interest held a Lien, Claim, or Interest, with the same validity, force, and effect, and in the same order of priority, that such Liens, Claims, or Interests had immediately prior to the Closing, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

12.     **Release of Interests**.  Effective upon the Closing, this Sale Order (i) is and shall be effective as a determination that all Liens, Claims, and Interests of any kind or nature whatsoever (other than Permitted Liens and Assumed Liabilities) existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged, and terminated (with such Liens, Claims, and Interests attaching solely to the proceeds of the Transactions with the same nature, validity, priority, extent, perfection, and force and effect that such Liens, Claims, and Interests encumbered the Purchased Assets immediately prior to the Closing) and that the conveyances described herein have been effectuated, (ii) is and shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

34

administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to the Purchaser, and (iii) is and shall be effective as a determination that all recorded Liens, Claims, and Interests (other than Permitted Liens and Assumed Liabilities) against the Purchased Assets shall be deemed stricken from such entities' records, official and otherwise.

13.     **Direction to Release Interests**.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing a Lien, Claim, or Interest in all or any portion of the Purchased Assets being sold pursuant to the Transactions and the Stalking Horse APA shall not have delivered to the Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims, and/or Interests (other than Permitted Liens and Assumed Liabilities), which such person or entity has with respect to all or any portion of the Purchased Assets being sold pursuant to the Transactions and the Stalking Horse APA, then (i) the Debtors and/or the Purchaser are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such person or entity with respect to all or any portion of the Purchased Assets being sold pursuant to the Transactions and the Stalking Horse APA, and (ii) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which shall

35

constitute conclusive evidence of the release of all Liens, Claims, and Interests (other than Permitted Liens and Assumed Liabilities) of any kind or nature whatsoever in the Purchased Assets being sold pursuant to the Transactions and the Stalking Horse APA. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse APA, including, without limitation, recordation of this Sale Order.

14.     **Surrender of Purchased Assets**. All persons or entities that are currently, or as of the Closing may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of such Purchased Assets to the Purchaser at the Closing.

15.     **No Interference**. Following the Closing, no holder of any Lien, Claim or Interest in the Purchased Assets shall and are hereby forever prohibited and barred from taking any action that would interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets being sold pursuant to the Transactions and the Stalking Horse APA based on, or related to, any such Lien, Claim, or Interest, or based on any actions the Debtors may take in these chapter 11 cases.

16.     **Post-Closing Actions and Transactions**. The Debtors and the Purchaser, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the applicable Debtors or the Purchaser deem necessary or appropriate to implement and effectuate

the terms of the Stalking Horse APA, the Transaction Documents, the Transactions contemplated therein, and this Sale Order.

17.     Subject to and in accordance with the [*Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Facility Lender, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*] [Docket No. [●]148] (the "Final DIP Order"), the Debtors are authorized to use proceeds of the Transactions to make any prepayments required under the DIP Documents (as defined in the Final DIP Order).  The Debtors shall transfer, or cause to be transferred Net Cash Proceeds (as defined in, and subject to the terms of, the DIP Credit Agreement (as defined in the Final DIP Order)) to the DIP Lender, which shall be applied for permanent application against the DIP Obligations (as defined in the Final DIP Order) in accordance with the terms and conditions of the DIP Documents (as defined in the Final DIP Order).

18.     **Sale is Self-Executing**.  The Transactions and the provisions of this Sale Order authorizing and approving the transfer of the Purchased Assets free and clear of all Liens, Claims, and Interests (except as otherwise set forth in the Stalking Horse APA) are self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

37

19.    **Governmental Authorization to Effectuate Sale**.  Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby directed and authorized to accept any and all documents and instruments in connection with or necessary and appropriate to consummate the Transactions contemplated under the Stalking Horse APA.  Except as otherwise provided in this Sale Order, to the greatest extent permitted under applicable law upon the Closing, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Purchaser as of the Closing.  All existing licenses or permits applicable to the business shall remain active, in place, and, as applicable, shall be renewed for the Purchaser's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.  To the maximum extent permitted by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the Stalking Horse APA.

20.    **Injunction**.  Except as expressly permitted by the Stalking Horse APA or this Sale Order, all persons (including, but not limited to, the Debtors, creditors, all holders of Claims, Liens, or Interests, lenders, debt security holders, investors, current and former

employees and shareholders, parties to executory contracts and unexpired leases, contract counterparties, customers, landlords, licensors, litigation claimants, pension plans, labor unions, administrative agencies, governmental units (including tax and regulatory authorities), secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and any other persons holding interests of any kind or nature whatsoever against or in the Debtors or the Purchased Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the Debtors' chapter 11 cases, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the operation of the Debtors' businesses prior to the Closing, the Purchased Assets, or the transfer of the Purchased Assets to the Purchaser (including, without limitation, any rights or claims based on any successor, transferee, derivative, or vicarious liabilities) and the successors and assigns of each of the foregoing) shall be, and hereby are, forever barred, estopped, and permanently enjoined from (i) taking any action that would adversely affect or interfere with, or that would be inconsistent with, the ability of the Debtors to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Stalking Horse APA, the Transaction Documents, or this Sale Order; and (ii) asserting, prosecuting, or otherwise pursuing any Liens, Claims, or Interests (other than Permitted Liens and Assumed Liabilities) of any kind or nature whatsoever against the Purchaser, or any of its affiliates, officers, directors, members, partners, principals, or shareholders, any of their respective representatives,

successors, designees, or assigns, or any of their respective property, successors and assigns, or the Purchased Assets, on any other grounds.  Following the Closing, no holder of any Liens, Claims, or Interests shall interfere with the Purchaser's title to or use and enjoyment of the Debtors' former interests in the Purchased Assets, including, without limitation, taking any of the following actions with respect to or based on any interest relating to the Purchased Assets or the transfer of the Purchased Assets to the Purchaser (other than Permitted Liens and Assumed Liabilities): (a) commencing or continuing in any manner any action or other proceeding against the Purchaser or its successors or assigns, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser or its successor, or assigns, assets, or properties; (c) creating, perfecting, or enforcing any interest against the Purchaser, its successors or assigns, assets (including the Purchased Assets), or properties; (d) asserting any Lien, Claim, or Interest as a setoff, right of subrogation, or recoupment of any kind against any obligation due to the Purchaser or its successors or assigns: (e) commencing or continuing any action in any manner or place that does not comply or is inconsistent with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof; (f) interfering with, preventing, restricting, prohibiting, or otherwise enjoining the consummation of the Transactions; or (g) enforcing any provision of any Assigned Contract that prohibits, restricts or conditions, or which purports to terminate or modify, or permits a party other than the Debtors to terminate or modify, any such Assigned Contract, or any right or obligation under such Assigned Contract, because of (i) the assumption and assignment of such Assigned Contract by the Debtors to the Purchaser or (ii) the commencement

40

of these chapter 11 cases or the insolvency or financial condition of the Debtors.  For the avoidance of doubt, and without limiting the generality of the foregoing or the operability of any other relief obtained pursuant to this Sale Order, any provision in a Assigned Contract (including, without limitation, any "change of control" provision), any other document, or any applicable law that prohibits, restricts, or otherwise impairs assignment of the Assigned Contracts or the Purchaser's ability to operate any business with respect to the Purchased Assets, including, without limitation, based on the commencement of these chapter 11 cases or the insolvency or financial condition of the Debtors, is hereby void and of no force and effect with respect to the Transactions, including, without limitation, any provision that (I) terminates, modifies, or constitutes a breach of any right or obligation of the Purchaser under such Assigned Contract; (II) cross-defaults to or from any other lease or executory contract that is not a Assigned Contract; (III) contains operating covenants or "go-dark" provisions that would purport to terminate or modify any Assigned Contract before assumption and assignment to the Purchaser; or (IV) requires a third party's consent prior to assignment of the Assigned Contract to the Purchaser.  No person shall assert, and the Purchaser and the Purchased Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, to the extent permitted by applicable law, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Purchaser under, or with respect to, any Purchased Assets, with respect to any act or omission that occurred prior to the Closing or with respect to any other

41

agreement or any obligation of the Debtors that is not expressly an Assumed Liability under the Stalking Horse APA.

21.    **General Assignment**.  Upon the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets and/or a bill of sale or assignment transferring good and marketable and indefeasible title and interest in the Purchased Assets, including the Assigned Contracts, to the Purchaser at Closing, pursuant to the terms of the Stalking Horse APA, free and clear of all Liens, Claims, and Interests (other than Permitted Liens and Assumed Liabilities). Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions and to reflect the effectiveness of the Transactions.

22.    **No Successor Liability**.  Except as otherwise set forth in the Stalking Horse APA, none of the Purchaser, any of its affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, agents, predecessors, successors, or assigns shall have any liability for any Lien, Claim, or Interest that arose or occurred prior to the Closing, or otherwise may be asserted against the Debtors or is related to the Purchased Assets prior to the Closing.  None of the Purchaser, any of its affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, attorneys, advisors, agents, predecessors, successors, or assigns are or shall be deemed, as a result of the

42

consummation of the Transactions, to (i) be legal successors to the Debtors or their estates by reason of any theory of law or equity, (ii) have, *de facto* or otherwise, merged with or into the Debtors, (iii) be a successor employer as defined in the IRC or by the U.S. National Labor Relations Board or under applicable law, or (iv) be an alter ego or a mere continuation or substantial continuation or successor of the Debtors in any respect.  Neither the Purchaser nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors or their estates, other than the Permitted Liens and Assumed Liabilities, to the extent provided in the Stalking Horse APA.

23.    **Limitations on Liability**.    Without limiting the foregoing, and except as otherwise set forth in the Stalking Horse APA, the Purchaser and its affiliates shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character, including under any theory of successor or transferee liability, *de facto* merger or continuity, tort, product liability, environmental, warranty, tax, antitrust, labor law, employment, ERISA, or other law, rule, or regulation, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or any obligations of the Debtors.

24.    **Fair Consideration**.    The consideration provided by the Purchaser for the Purchased Assets under the Stalking Horse APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, possession, or the District

of Columbia, or any other applicable law. The Transactions may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law. The Stalking Horse APA was not entered into, and the Transactions are not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Sellers nor the Purchaser have entered into the Stalking Horse APA, any Transaction Document, or any agreement contemplated thereby or are consummating the Transactions with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities. No other person or entity or group of persons or entities has offered to purchase the Purchased Assets for an amount that would provide greater value to the Debtors and their estates than the value provided by the Purchaser. This Court's approval of the Motion and the Stalking Horse APA are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

25. **<u>Good Faith of the Purchaser</u>**. The transactions contemplated by the Stalking Horse APA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the transactions shall not affect the validity of the Transactions, including, without limitation, the assumption and assignment by the Debtors of any Assigned Contract, unless the authorization and/or the Transactions contemplated by the Stalking Horse APA are stayed. The Purchaser is a good faith purchaser of the Purchased Assets within the meaning of section 363(m) of the Bankruptcy Code

and, as such, is entitled to all of the rights, privileges, immunities, and protections afforded by section 363(m) of the Bankruptcy Code.  Additionally, as a good faith buyer of the Purchased Assets, the Purchaser has not entered into any agreement with any other potential bidders and has not colluded with any potential or actual bidders, and the Transactions may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

26.    **No Avoidance of Stalking Horse APA**.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Stalking Horse APA to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.  Accordingly, the Stalking Horse APA and the Transactions shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Stalking Horse APA or the Transactions.

27.    ***Ipso Facto* Clauses Ineffective**.  Upon the Debtors' assumption and assignment of the Assigned Contracts to the Purchaser pursuant to this Sale Order and the payment of the Cure Amounts in accordance with this Sale Order and the Stalking Horse APA, no default shall exist under any Assigned Contract and no counterparty to any such Assigned Contract shall be permitted to declare or enforce a default by the Debtors or the Purchaser thereunder or otherwise take action against the Purchaser as a result of any Debtor's financial condition, change in control, bankruptcy, or failure to perform any of its obligations under the applicable Assigned Contract.  For the avoidance of doubt, and without limiting the generality of the foregoing or the operability of any other relief obtained pursuant to this Sale Order, any provision in a Assigned Contract that prohibits or conditions, whether directly or indirectly, the assignment of such

45

Assigned Contract (including, without limitation, the granting of an Interest therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment shall be deemed an unenforceable anti-assignment provision that is void and of no force and effect with respect to the Transactions as approved by this Sale Order.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions or of the Debtors' or the Purchaser's right, as applicable, to enforce every term and condition of such Assigned Contract.

28.    **Binding Effect**.  This Sale Order, the Stalking Horse APA, the Transaction Documents, and the Bid Procedures Order shall be binding in all respects upon (i) all known and unknown creditors of, and holders of equity security interest in, the Debtors, including any holders of Liens, Claims, or Interests and non-Debtor parties to the Assigned Contracts; (ii) the Purchaser, and all successors and assigns of the Purchaser; (iii) the Debtors, their respective affiliates and subsidiaries, and their estates (and such parties' respective successors and assigns); (iv) the Purchased Assets; (v) the Official Committee of Unsecured Creditors and any statutory committee (if any) appointed in these chapter 11 cases; (vi) any trustee(s) appointed in the Debtors' chapter 11 cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code; and (vii) all successors and assigns of each of the foregoing.  The Stalking Horse APA, this Sale Order, and the Sellers' obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in these bankruptcy cases, without the prior written consent of the Purchaser.

46

29.    **No Material Modifications**.  The Stalking Horse APA and the Transaction Documents may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, in a writing signed by such parties, without further order of this Court.

30.    **Subsequent Orders and Plan Provisions**.    Nothing contained in any chapter 11 plan confirmed in the Debtors' chapter 11 cases or any subsequent order of this Court, including, without limitation, any order confirming any such chapter 11 plan, any order authorizing the sale of assets of the Debtors pursuant to any section of the Bankruptcy Code, and any order approving wind-down or dismissal of any Debtor's chapter 11 case or any subsequent chapter 7 case shall change, supersede, abrogate, nullify, restrict, or conflict with the provisions of the Stalking Horse APA, the Transaction Documents, or this Sale Order, or in any way prevent or interfere with the consummation or performance of the Transactions.

31.    **Failure to Specify Provisions**.  The failure to specifically include any particular provision of the Stalking Horse APA or the Transaction Documents relating to the Transactions in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Stalking Horse APA, the Transaction Documents, and all other documents related to the Transactions be authorized and approved in their entirety pursuant to this Sale Order.

32.    **Automatic Stay**.  The Purchaser shall not be required to seek or obtain relief from the stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Stalking Horse APA or related documents.  The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified to the extent necessary to implement the provisions of this

Sale Order, and this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

33.    **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the applicable Debtors and the Purchaser are authorized to close the Transactions immediately upon entry of this Sale Order.  Time is of the essence in closing the Transactions referenced herein, and the applicable Debtors and the Purchaser intend to close the Transactions as soon as practicable.  This Sale Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Sale Order.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

34.    **Provisions Nonseverable and Mutually Dependent**.  The provisions of this Sale Order are non-severable and mutually dependent.

35.    **Retention of Jurisdiction**.  This Court retains exclusive jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, on and after Closing of the Transactions, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the Bid Procedures Order, the Stalking Horse APA, and the Transaction Documents, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to the Purchaser; (ii) resolve any disputes arising under or related to this Sale Order and the Stalking Horse APA; (iii) protect the

Purchaser, any of the Purchaser's affiliates, or any agent of the foregoing, against any Liens, Claims, or Interests against the Debtors or the Purchased Assets of any kind or nature whatsoever; and (iv) enter any order under sections 363 and 365 of the Bankruptcy Code.  In the event this Court abstains from exercising or declines to exercise jurisdiction with respect to any matter referenced in this paragraph or is without jurisdiction, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

36.     **Non-Debtor Assets**.    The Stalking Horse APA also provides for the sale, assignment, transfer, purchase, or assumption of certain assets and liabilities of the Non-Debtor Sellers (collectively, the "Non-Debtor Assets").  For the avoidance of doubt, this Sale Order does not apply to the sale, assignment, transfer, purchase, or assumption of such Non-Debtor Assets.

37.     **No Bulk Law Application**.  No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Transactions, the Stalking Horse APA, the Motion, and this Sale Order.

38.     **Inconsistencies**.  To the extent this Sale Order is inconsistent with any prior filing with respect to the Motion in these chapter 11 cases, the terms of this Sale Order shall govern and any prior filings shall be deemed amended or otherwise modified to the extent required to permit consummation of the Transactions.  To the extent there is any inconsistency between the terms of this Sale Order and the terms of the Stalking Horse APA (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern. Notwithstanding the foregoing, nothing in this Sale Order shall modify or waive any Closing

conditions or termination rights in the Stalking Horse APA, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

39.    **Headings**.  Headings utilized in this Sale Order are for convenience of reference only and do not constitute a part of this Sale Order for any other purpose.

40.    **Time Periods**.  All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

50

**Exhibit 1**

**Stalking Horse APA**

**Exhibit 2**

**Assigned Contracts and Cure ~~Costs~~Amounts[1]**

---

[1]    For the avoidance of doubt, the list of Assigned Contracts include executory contracts and leases to which the Debtors are a party.

2

US-DOCS\~~156952981.1~~156952981