# Exhibit A

**Further Revised Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | x | |
| In re: | : | Chapter 11 |
| | : | |
| FIRST MODE HOLDINGS, INC., *et al.*,[1] | : | Case No. 24-12794 (KBO) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| ------------------------------------------------------- | x | **Re: D.I. 116** |

### ORDER (I) APPROVING THE
### DISCLOSURE STATEMENT; (II) ESTABLISHING THE
### VOTING RECORD DATE, VOTING DEADLINE, AND OTHER DATES;
### (III) APPROVING PROCEDURES FOR SOLICITING, RECEIVING, AND
### TABULATING VOTES ON THE PLAN AND FOR FILING OBJECTIONS
### TO THE PLAN; (IV) APPROVING THE MANNER AND FORMS OF NOTICE
### AND OTHER RELATED DOCUMENTS; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors pursuant to sections 105, 363, 1125, and 1126 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, and 3020, and Local Rule 3017-1 for entry of an order (i) approving the Disclosure Statement; (ii) establishing the Voting Record Date, Voting Deadline, Confirmation Objection Deadline, and other dates; (iii) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; (iv) approving the manner and forms of notice and other related documents in connection with confirmation of the Plan; and (v) granting related relief; and this Court having reviewed the Motion and the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: First Mode Holdings, Inc. (7177), and Synchronous LLC (1829). The Debtors' address is 3417 1st Ave S, Seattle, WA 98134.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or the Disclosure Statement, as applicable.

pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and this Court having determined that there is good and sufficient cause for the relief granted in this Order, it is hereby

**FOUND AND DETERMINED THAT:**

A.  The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

B.  The notices attached to this Order (collectively, the "**Notices**") contain sufficient information and are appropriate under the circumstances.

C.  The Opt-In Release Form and the Supplemental Opt-In Release Form are appropriate under the circumstances and satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules.

D.  The form of the ballot attached to this Order (the "**Ballot**") (i) is sufficiently consistent with Official Form No. 314, (ii) adequately addresses the particular needs of these Chapter 11 Cases, and (iii) is appropriate for the Class of Claims entitled to vote to accept or reject the Plan.

E.  The time period set forth below during which the Debtors may solicit votes on the Plan is a reasonable period of time for creditors to make an informed decision as to whether to accept or reject the Plan.

F.  The procedures set forth below for the solicitation and tabulation of votes to accept or reject the Plan provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

US-DOCS\157279870

G.      All objections, responses, statements, and comments, if any, in opposition to the Disclosure Statement, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Disclosure Statement Hearing, shall be, and hereby are, overruled in their entirety for the reasons stated on the record and, notwithstanding the foregoing, no objection shall be considered an objection to confirmation of the Plan unless such objection is interposed in accordance with the procedures for objecting to confirmation of the Plan set forth herein.

H.      The notice and objection procedures provided in connection with the Disclosure Statement Hearing were reasonable and appropriate under the circumstances, and the Disclosure Statement Notice provided adequate notice of the Disclosure Statement Objection Deadline and the Disclosure Statement Hearing as required by Bankruptcy Rule 3017.

I.      The procedures set forth below regarding the Confirmation Hearing Notice and the contents of the Solicitation Package comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties.

J.      The following dates and deadlines, as incorporated in this Order, are reasonable and appropriate:

| Event | Date/Deadline | Description |
|---|---|---|
| Voting Record Date | February 5, 2025 | Date for determining which Holders of Claims in the Voting Class are entitled to vote to accept or reject the Plan |
| Disclosure Statement Hearing | February 6, 2025, at 9:30 A.M. (Prevailing Eastern Time) | Hearing to consider approval of the Disclosure Statement |
| Rule 3018(a) Objection Deadline | February 7, 2025, at 4:00 P.M. (Prevailing Eastern Time) | Deadline for filing objections to Claims for purposes of voting on the Plan |
| Solicitation Package Mailing Date | February 10, 2025 (or as soon as practicable thereafter) | Date by which Debtors will commence service of the Solicitation Packages (as defined below) |

US-DOCS\157279870

| Event | Date/Deadline | Description |
|---|---|---|
| Rule 3018(a) Motion Deadline | February 21, 2025, at 4:00 P.M. (Prevailing Eastern Time) | Deadline for the filing motions pursuant to Bankruptcy Rule 3018(a) |
| Deadline to Publish Notice of Confirmation Hearing | Within five (5) business days after entry of the Disclosure Statement Order (or as soon as practicable thereafter) | Date by which the Debtors will publish the Publication Notice (as defined below) |
| Plan Supplement Filing Date | March 5, 2025 | Date by which the Debtors will file the Plan Supplement |
| Objection Deadline for Confirmation Hearing | March 14, 2025, at 4:00 P.M. (Prevailing Eastern Time) | Deadline for filing objections to the confirmation of the Plan |
| Voting Deadline | March 14, 2025, at 4:00 P.M. (Prevailing Eastern Time) | Deadline to submit Ballots voting to accept or reject the Plan |
| Confirmation Reply Deadline | March 21, 2025, at 4:00 P.M. (Prevailing Eastern Time) | Deadline by which replies to any Confirmation objections must be filed |
| Voting Report Filing Date | March 21, 2025, at 4:00 P.M. (Prevailing Eastern Time) | Date by which the Debtors will file the Voting Report |
| Confirmation Order Filing Date | March 21, 2025, at 4:00 P.M. (Prevailing Eastern Time) | Date by which the Debtors will file the proposed Confirmation Order |
| Confirmation Hearing | March 26, 2025, at 9:30 A.M. (Prevailing Eastern Time) | Hearing to consider confirmation of the Plan |

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT**:

1.       The Motion is GRANTED, as set forth herein.

**I.    Approval of the Disclosure Statement**

2.       Pursuant to Bankruptcy Rule 3017(b), the Disclosure Statement [Docket No. 234] is approved as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code, and the Debtors are authorized to distribute the Disclosure Statement and Solicitation Package in order to solicit votes on, and pursue confirmation of, the Plan.

3.       The Disclosure Statement Notice attached hereto as Exhibit 1 is approved pursuant to Bankruptcy Rules 2002 and 3017.

US-DOCS\157279870

## II.    Confirmation Hearing and Objections

4.    Pursuant to Bankruptcy Rule 3020(b)(2), 9006(c) and Local Rule 9006-1(e), the Confirmation Hearing shall be set for March 26, 2025 at 9:30 A.M. prevailing Eastern Time; *provided*, *however*, that the Confirmation Hearing may be continued from time to time by this Court or the Debtors without further notice to creditors or other parties in interest, other than an announcement at or before the Confirmation Hearing or any adjourned Confirmation Hearing or the filing of a notice or a hearing agenda providing for the adjournment on the docket of these Chapter 11 Cases.

5.    Pursuant to Bankruptcy Rule 3020(b)(1), the Confirmation Objection Deadline for filing and serving objections to confirmation of the Plan shall be March 14, 2025 at 4:00 P.M. (prevailing Eastern time), which deadline may be extended by the Debtors.

6.    Any Confirmation Objections shall (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) set forth the name of the objector and the nature and amount of any Claim or Interest asserted by the objector against or in the Debtors, (iv) state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection, and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so as to be **actually received** by each of the following parties (the "**Notice Parties**") on or before the Confirmation Objection Deadline:

    i.    The Debtors: 3417 1st Ave S, Seattle, WA 98134, Attn: Will Smith (email: will.smith@firstmode.com);

    ii.    Counsel to the Debtors: (a) Latham & Watkins LLP (x) 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Caroline Reckler, Esq. (email: caroline.reckler@lw.com); (y) 1271 Avenue of the Americas, New York, NY 10020, Attn: Annemarie V. Reilly, Esq. and Brian S. Rosen, Esq. (emails: annemarie.reilly@lw.com, and brian.rosen@lw.com); and (z) 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071, Attn: Jeffrey T. Mispagel, Esq. (email: jeffrey.mispagel@lw.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street,

Wilmington, DE 19801, Attn: Michael R. Nestor, Esq., Kara Hammond Coyle, Esq., and Joseph M. Mulvihill, Esq. (emails: Mnestor@ycst.com, KCoyle@ycst.com, and JMulvihill@ycst.com);

iii.    The U.S. Trustee: 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Jane Leamy (email: Jane.M.Leamy@usdoj.gov);

iv.    Counsel for the DIP Lender, the Prepetition Facility Lender, and the Consenting Parent: (a) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017, Attn: Darren S. Klein, Esq. and Aryeh Ethan Falk, Esq. (darren.klein@davispolk.com and aryeh.falk@davispolk.com) and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N Market St # 1600, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq. (rdehney@morrisnichols.com); and

v.    Counsel to the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "**Committee**"), McDermott Will & Emery LLP, (a) One Vanderbilt Avenue, New York, NY 10017, Attn: Darren Azman, Esq. and Kristin Going, Esq. (emails: dazman@mwe.com and kgoing@mwe.com) and (z) 1000 N. West Street, Suite 1400, Wilmington, DE 19801, Attn: David R. Hurst, Esq. and Andrew Mark, Esq. (emails: dhurst@mwe.com and amark@mwe.com).

7.    The deadline for the Debtors and any other party supporting the Plan to file any pleading in support of, or in response to any objection to, confirmation of the Plan is March 21, 2025 at 4:00 P.M. (prevailing Eastern Time), five (5) days before the commencement of the Confirmation Hearing.

## III.    Establishment of Voting Record Date and Disallowance of Votes of Holders of Disputed Claims

8.    Pursuant to Bankruptcy Rule 3017(d), February 5, 2025, shall be the record date (the "**Voting Record Date**") with respect to all Claims. The Debtors shall use the Voting Record Date for determining which Entities are entitled to, as applicable, receive Solicitation Packages, vote to accept or reject the Plan, and receive notice of the Confirmation Hearing. For the avoidance of doubt, Holders of Claims in the Voting Class filed after the Voting Record Date but on or before the General Bar Date, to which no objections are interposed, shall be entitled to vote and will receive Solicitation Packages as soon as practicable after the General Bar Date.

US-DOCS\157279870

9.      Holders of Claims that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their claim, unless such claim is temporarily allowed by this Court for voting purposes pursuant to Bankruptcy Rule 3018(a).

## IV.    Approval of Solicitation Procedures

### A.      <u>Duties of Notice and Claims Agent</u>

10.     The Notice and Claims Agent shall assist the Debtors in, among other things, (i) mailing Confirmation Hearing Notices and Notices of Non-Voting Status to Holders of Claims and Interests in Non-Voting Classes and other non-voting parties entitled to notice; (ii) mailing the Contract/Lease Notices to counterparties to the Debtors' Executory Contracts and Unexpired Leases; (iii) mailing Solicitation Packages to Holders of Claims in the Voting Class; (iv) soliciting votes on the Plan; (v) receiving, tabulating, and reporting on Ballots cast for or against the Plan by Holders of Claims against the Debtors; (vi) in the case of Ballots from any member of the Voting Class containing any apparent error, mistake, omission, or which otherwise appear to contain a material defect, using reasonable efforts to contact such member of the Voting Class to inform them of such error; (vii) mailing the Supplemental Opt-In Release Forms (x) to any member of the Voting Class that did not cast a Ballot for or against the Plan or cast a Ballot for the Plan but did not opt-in to the Third Party Releases contained in the Plan by checking the appropriate box on the Ballot or (y) as otherwise requested by the Debtors or other parties; (viii) responding to inquiries from creditors and stakeholders relating to the Plan, the Disclosure Statement, the Ballots, the Opt-In Release Form, the Supplemental Opt-In Release Form, and matters related thereto, including, without limitation, the procedures and requirements for voting to accept or reject the Plan and objecting to the Plan; (ix) using reasonable efforts to correct any error in mailing addresses with respect to any member of the Voting Class for whom (a) materials are returned marked as "undeliverable as addressed," "moved – left no forwarding address," "forwarding order expired," or any similar reason, (b) materials otherwise come back as undeliverable (including via

email), or (c) it is otherwise communicated to the Notice and Claims Agent that such materials did not reach the intended recipient; (x) as soon as reasonably practicable, informing counsel to the Committee of any member of the Voting Class for whom (a) materials are returned marked as "undeliverable as addressed," "moved – left no forwarding address," "forwarding order expired," or any similar reason, (b) materials otherwise come back as undeliverable (including via email), or (c) it is otherwise communicated to the Notice and Claims Agent that such materials did not reach the intended recipient; and (xi) if necessary, contacting creditors regarding the Plan and their Ballots.

11.     The Notice and Claims Agent is also authorized to accept Ballots via electronic online transmission solely through a customized online balloting portal on the Debtors' case website.  The Notice and Claims Agent will not count or consider for any purpose in determining whether the Plan has been accepted or rejected any Ballot transmitted by telecopy, facsimile, e-mail, or other electronic means not using the Notice and Claims Agent's online balloting portal, provided that the Notice and Claims Agent shall use reasonable efforts to attempt to notify, as soon as reasonably practicable, any members of the Voting Class submitting an electronic Ballot improperly of the steps necessary to properly submit such Ballot.  The encrypted ballot data and audit trail created by electronic submission through the Notice and Claims Agent's online balloting portal shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

B.     **Notices and Ballots**

12.     The Notices and Ballot to be used in connection with the solicitation of votes on, and confirmation of, the Plan (as applicable) are hereby approved in full; *provided*, *however*, that the outside of the envelope containing such Notices and Ballot shall include cautionary language alerting the recipient that prompt action is required in order to receive a distribution in accordance with the terms of Plan; *provided further*, *however*, that the Notice and Claims Agent shall

prepopulate the claim amount and Debtor in Item 1 of the Ballots before they are sent to members of the Voting Class.

13.     The Notices attached to this Order are hereby approved in full.

14.     The Opt-In Release Form and the Supplemental Opt-In Release Form are hereby approved in full.

15.     The Debtors shall cause Solicitation Packages and Ballots to be transmitted to all Holders of Claims in Class 4.

16.     Classes 1 and 2 are Unimpaired and, thus, the Holders of such Unimpaired Claims are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, and the Debtors are not required to solicit their vote with respect to such Unimpaired Claims.  Class 3 is Unimpaired and the Debtors are not required to solicit their vote so long as the Restructuring Support Agreement remains in full force and effect and is not terminated.  If the Restructuring Support Agreement is terminated, Class 3 shall be Impaired and the Debtors are required to solicit their vote.

17.     Class 7 is Impaired and will receive no recovery under the Plan, and the Holders of such Interests are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and the Debtors are not required to solicit their vote with respect to such Interests.

18.     Classes 5 and 6 (and, together with Classes 1, 2, 3, and 7, the "**Non-Voting Classes**") are either Unimpaired or Impaired, and the Holders of such Claims or Interests are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code or conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and the Debtors are not required to solicit their votes with respect to such Claims or Interests.

19.     The Debtors shall not be obligated to deliver Solicitation Packages or Ballots to Holders of Claims and Interests in the Non-Voting Classes.  Rather, in lieu thereof and in

US-DOCS\157279870

accordance with Bankruptcy Rule 3017(d), the Debtors shall mail to the Holders of Claims and Interests in the Non-Voting Classes, Holders of unclassified Claims, and Holders of Claims that are subject to a pending objection by the Debtors, a notice, substantially in the form of <u>Exhibit 3</u> attached hereto (the "**Notice of Non-Voting Status**"), *provided*, that Holders of Claims and Interests in the Non-Voting Classes that are conclusively deemed to accept or reject the Plan shall receive the Opt-In Release Form, which shall be attached as <u>Exhibit A</u> thereto.

20.    The Debtors shall not be required to deliver Ballots or Solicitation Packages to counterparties to the Debtors' Executory Contracts and Unexpired Leases who do not have scheduled Claims and have not filed Proofs of Claim.  Rather, in lieu thereof and in accordance with Bankruptcy Rule 3017(d), the Debtors shall mail to such counterparties to the Debtors' Executory Contracts and Unexpired Leases a notice, substantially in the form of <u>Exhibit 4</u> attached hereto (the "**Contract/Lease Notice**"); *provided* that any contract counterparty that receives a Solicitation Package will not receive a Contract/Lease Notice.  The Debtors shall provide Ballots and Solicitation Packages, or if the Voting Deadline has passed, the Supplemental Opt-In Form, to all counterparties to the Debtors' Executory Contracts and Unexpired Leases whose contracts have been rejected.

21.    A copy of the Confirmation Hearing Notice shall be distributed, together with the Notice of Non-Voting Status, to Holders, as of the Voting Record Date, of General Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are unclassified Claims under the Plan.

**C.    <u>Content and General Transmittal of Solicitation Packages; Notice of Confirmation Hearing</u>**

22.    The Debtors are authorized to transmit, or cause to be transmitted, on or before February 10, 2025 (or as soon as reasonably practicable thereafter) (the "**Solicitation Mailing Date**"), by United States mail, first-class postage prepaid, personal service, or overnight delivery,

a solicitation package (the "**Solicitation Package**") containing a printed version, or for all parties other than those in the Voting Class, other electronic means (such as a flash drive), of the following:

      i.       the Confirmation Hearing Notice, substantially in the form attached hereto as <u>Exhibit 5</u>;

      ii.      the Disclosure Statement;

      iii.     the Plan (which may be furnished as <u>Exhibit A</u> to the Disclosure Statement);

      iv.     this Disclosure Statement Order (without exhibits attached);

      v.      a cover letter from the Debtors explaining the solicitation process and urging Holders of Claims in the Voting Class to vote to accept the Plan;

      vi.     to the extent applicable, a Ballot, appropriate for the specific holder, in substantially the form attached to this Order (as may be modified for particular classes and with instructions attached thereto); and

      vii.    in the Debtors' reasonable discretion, the letter from the Committee advising holders of Claims in the Voting Class of the Committee's position with respect to the Plan (the "**Committee Letter**").

23.     To avoid duplication and reduce expenses, the Debtors shall make every reasonable effort to ensure that any holder of a Claim who has filed duplicative Claims (whether against the same or multiple Debtors) that are classified under the Plan in the same Class will receive no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class.

24.     Any timely received Ballot that contains sufficient information to permit the identification of the claimant and is cast as an acceptance or rejection of the Plan shall be counted and shall be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan. The foregoing general procedures shall be subject to the following exceptions:

      i.       if a Claim is deemed Allowed in accordance with the Plan, such Claim is Allowed for voting purposes in the deemed Allowed amount set forth in the Plan;

ii.    if a Claim for which a Proof of Claim has been timely filed is identified as contingent or unliquidated, and is not subject to a pending objection, by the Debtors, then such Claim is temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00;

iii.    if a Proof of Claim is filed as partially liquidated and partially unliquidated, then such Claim will be allowed for voting purposes only, and not for purposes of allowance or distribution, in the liquidated amount;

iv.    if a Claim has been estimated or otherwise allowed for voting purposes by order of this Court, such Claim is temporarily allowed in the amount so estimated or allowed by this Court for voting purposes only, and not for purposes of allowance or distribution;

v.    if a Claim is not listed on the Debtors' schedules, or is scheduled at zero, in an unknown amount, or as unliquidated, contingent, or disputed, and a Proof of Claim was not (a) timely filed by the deadline for filing Proofs of Claim, or (b) deemed timely filed by an order of this Court prior to the Voting Deadline, such Claim is disallowed for voting purposes and for purposes of allowance and distribution pursuant to Bankruptcy Rule 3003(c); provided, however, that a Claim listed in the schedules as contingent, unliquidated, or disputed for which the bar date has not yet passed, including the Governmental Bar Date, shall vote in the amount of $1.00;

vi.    if an objection to a Claim or any portion thereof has been filed prior to the Voting Deadline, then such Claim is temporarily disallowed for voting purposes only and not for the purposes of the allowance or distribution, except to the extent and in the manner as may be set forth in the objection or an order granting such claimant's Rule 3018(a) Motion;

vii.    if any Ballot cast in an amount in excess of the allowed amount of the relevant Claim will only be counted to the extent of such allowed Claim;

viii.    Ballots shall be tabulated as if the Debtors' estates had been substantively consolidated; that is, Ballots shall not be tabulated on a Debtor-by-Debtor basis; and

ix.    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class will be aggregated and treated as if such Holder held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided, however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holder held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

US-DOCS\157279870

25.     The Debtors shall file the Plan Supplement with this Court on or before March 5, 2025, which filing is without prejudice to the Debtors' rights to amend or supplement the Plan Supplement.

26.     The Debtors shall publish the Publication Notice on or prior to five (5) business days after entry of this Order, or as soon as reasonably possible thereafter, once in each of *USA Today* or a similar nationally circulated news publication and the *Financial Times* or a similar publication circulated in the United Kingdom.

27.     Publication of the Publication Notice as described herein shall constitute sufficient notice of the Confirmation Hearing to unknown creditors.

## V.     Voting Deadline and Procedures for Vote Tabulation

28.     Ballots for accepting or rejecting the Plan, as well as all Opt-In Release Forms, must be received by the Notice and Claims Agent on or before 4:00 P.M. (prevailing Eastern time) on March 14, 2025 (the "**Voting Deadline**") to be counted, *provided*, *however*, that Holders of Claims or Interests may return an Opt-In Release Form or a Supplemental Opt-In Release Form so as to be received by the Notice and Claims Agent no later than ninety (90) days following the Effective Date of the Plan.

29.     Any timely received Ballot that contains sufficient information to permit the identification of the claimant and is cast as an acceptance or rejection of the Plan shall be counted and shall be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.

30.     The following Ballots shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

> i.    any Ballot received after the Voting Deadline unless the Debtors, after consultation with the Committee and the DIP Lender, the Prepetition Facility Lender, and the Consenting Parent, shall have granted an extension of the Voting Deadline in writing with respect to such Ballot or an extension has been granted by an order of this Court;

ii. any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

iii. any Ballot cast by a person or entity that does not hold a Claim in the Voting Class;

iv. any Ballot that is properly completed, executed and timely filed, but (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, or (c) partially accepts and partially rejects the Plan;

v. any Ballot submitted by telecopy, facsimile, e-mail, or other electronic means not using the Notice and Claims Agent's online balloting portal;

vi. any unsigned Ballot;

vii. any Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Notice and Claims Agent), or the Debtors' financial or legal advisors; or

viii. Any Ballot not otherwise cast in accordance with the procedures approved in this Order.

31.    Notwithstanding anything contained herein to the contrary, the Debtors and/or the Notice and Claims Agent shall use reasonable efforts to contact parties that submitted Ballots containing any apparent defects to cure such apparent defects.

32.    Any duplicate Ballots will only be counted once.

33.    Whenever two or more Ballots are cast that attempt to vote the same Claim prior to the Voting Deadline, the last Ballot received by the Notice and Claims Agent prior to the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede any prior Ballots, *provided*, *however*, that where an ambiguity exists as to which Ballot was the latest received, the Notice and Claims Agent reserves the right to contact the creditor and tabulate the vote according to such voter's stated intent; *provided*, *further*, that if a Holder timely submits both a paper Ballot and electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot. This procedure is without prejudice to the Debtors' rights to object to the validity of the

14

superseding Ballot(s) on any basis permitted by law and, if the objection is sustained, to count the first Ballot for all purposes.

34.    Claims splitting is not permitted and creditors who vote must vote all of their Claims within a particular Class to either accept or reject the Plan.

35.    Each creditor shall be deemed to have voted the full amount of its Claim.  Unless otherwise ordered by this Court, questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots shall be determined by the Notice and Claims Agent and the Debtors, which determination shall be final and binding.

36.    Any Class that does not have a Holder of an allowed Claim entitled to vote on the Plan or a Claim temporarily allowed by this Court for voting purposes as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such class pursuant to section 1129(a)(8) of the Bankruptcy Code.

37.    If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of Claims in such class.

38.    Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors, in consultation with the Committee and the DIP Lender, the Prepetition Facility Lender, and the Consenting Parent, or this Court determines. Neither the Debtors nor any other person or entity shall be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, *provided* that the Debtors shall use reasonable efforts to contact members of the Voting Class as provided herein, nor shall any of the Debtors or other persons or entities incur any liabilities for failure to provide such notification. Unless otherwise directed by this Court, delivery of Ballots that are defective or irregular shall not be deemed to have been made until such defects or irregularities have been cured or waived.

15

Ballots previously furnished (and as to which any defects or irregularities have not theretofore been cured or waived) shall not be counted, provided that such failure to cure, or lack of waiver, shall not prejudice the rights of any member of the Voting Class to submit a Supplemental Opt-In Release Form and thereby become a Participating GUC Holder in accordance with the terms of the Plan.

39.     The Debtors, in their discretion, may waive any defect in any Ballot at any time, either before or after the close of voting and without notice; *provided*, *however*, that any such waiver shall be documented in summary fashion in the voting results filed with this Court.

40.     The Debtors shall retain the absolute right to reject any and all Ballots not proper in form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules or this Disclosure Statement Order; *provided*, *however*, that such rejections shall be documented in summary fashion in the voting results filed with this Court.  The Debtors and/or the Notice and Claims Agent shall, as soon as reasonably practicable, advise counsel to the Committee of any Ballot that is rejected prior to the Voting Deadline.

41.     After the Voting Deadline, any Holder of a Claim who had delivered a valid Ballot voting on the Plan may withdraw or change such vote solely in accordance with Bankruptcy Rule 3018(a).

42.     The following shall be documented in summary fashion in the voting results filed with this Court (the "**Voting Report**"): (i) all Solicitation Packages which (a) were returned by the United States Postal Service marked "undeliverable as addressed," "moved – left no forwarding address," "forwarding order expired," or any similar reason or (b) otherwise came back undeliverable (including via email); and (ii) all Ballots (a) which the Debtors rejected as invalid, (b) with respect to which the Debtors waived an irregularity or defect, (c) with respect to which any irregularity or defect was cured, (d) in which a creditor voted to accept the Plan but did not

16

opt in to the Third Party Releases, and (e) in which a creditor voted to reject the Plan and not opt in to the Third Party Releases. The Debtors will file the Voting Report with the Court by March 21, 2025, at 4:00 P.M. (Prevailing Eastern Time).

## VI.    Temporary Allowance of Claims for Voting Purposes

43.    February 21, 2025 at 4:00 P.M. (Prevailing Eastern Time) (the "**Rule 3018(a) Motion Deadline**") shall be the deadline for filing and serving any motion requesting temporary allowance of a Claim for purposes of voting pursuant to Bankruptcy Rule 3018(a) (the "**Rule 3018(a) Motion(s)**").

44.    Rule 3018(a) Motions must be filed with this Court no later than the Rule 3018(a) Motion Deadline; *provided*, *however*, that if an objection to a Claim is filed on or after the date that is fourteen (14) days before the Rule 3018(a) Motion Deadline (the "**Rule 3018(a) Objection Deadline**"), then the Rule 3018(a) Motion Deadline shall be extended as to such Claim, such that the Holder thereof shall have at least fourteen (14) days to file a Rule 3018(a) Motion after service of the objection to such Claim.

45.    Any party timely filing and serving a Rule 3018(a) Motion shall be provided a Ballot by no later than three (3) business days after the Rule 3018(a) Motion is filed and be permitted to cast a provisional vote to accept or reject the Plan if such party is in the Voting Class. If, and to the extent that, the Debtors and such party are unable to resolve the issues raised by the Rule 3018(a) Motion prior to the Voting Deadline, then at the Confirmation Hearing, this Court shall determine whether the provisional Ballot should be counted as a vote on the Plan.

## VII.    Miscellaneous

46.    The service of Solicitation Packages and other notices and documents described herein in the time and manner set forth in this Order shall constitute adequate and sufficient notice of the Confirmation Hearing and the Confirmation Objection Deadline and no further notice is necessary.

47.     The Debtors are not required to send Solicitation Packages, individual solicitation materials or other notices to (i) any creditor who filed a Proof of Claim if the amount asserted in such Proof of Claim is less than or equal to the amount that has already been paid, (ii) any creditor on account of a clearly duplicative Claim, or (iii) the Holder of a Claim that has been disallowed in full by order of this Court.

48.     With respect to addresses from which one or more prior notices served in these Chapter 11 Cases were returned as undeliverable or from which mailings made pursuant to this Order are returned as undeliverable, the Debtors are excused from distributing Confirmation Hearing Notices and Solicitation Packages, as applicable, to those entities listed at such addresses if the Debtors are not provided with an accurate address or forwarding address for such entities before the Solicitation Mailing Date, provided that the Debtors (i) shall use reasonable efforts to obtain an accurate address or forwarding address with respect to any members of the Voting Class and (ii) will promptly remit a Confirmation Hearing Notice and Solicitation Package (as applicable) if they are provided with a current address for the affected creditors following the Solicitation Mailing Date; provided, further that no later than twenty-one (21) days before the Voting Deadline, the Debtors and/or the Notice and Claims Agent shall provide counsel to the Committee with a list of all Holders of General Unsecured Claims for which one or more notices served in the Chapter 11 Cases were returned as undeliverable.  Failure to thereafter attempt to re-deliver Confirmation Hearing Notices and Solicitation Packages, as applicable, to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline or a violation of Bankruptcy Rule 3017(d).

49.     After consultation with the Committee, the Debtors are authorized to make non-material changes to the Disclosure Statement, the Plan, the Ballot, the Confirmation Hearing Notice, the Notice of Non-Voting Status, the Opt-In Release Form, the Supplemental Opt-In Release Form, the Contract/Lease Notice, and related documents and any other materials in the

Solicitation Package without further order of this Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, the Ballot, the Confirmation Hearing Notice, the Notice of Non-Voting Status, the Opt-In Release Form, the Supplemental Opt-In Release Form, the Contract/Lease Notice, and related documents and any other materials in the Solicitation Package prior to their distribution and publication, as applicable.

50.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (i) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (ii) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (iii) a promise or requirement to pay any particular claim; (iv) an implication or admission that any particular claim is of a type specified or defined in the Motion; (v) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (vii) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

51.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion.

52.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

53.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

US-DOCS\157279870

54.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

US-DOCS\157279870

**EXHIBIT 1**

Disclosure Statement Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x
:
In re:                                                  :    Chapter 11
                                                        :
FIRST MODE HOLDINGS, INC., *et al.*,[1]                 :    Case No. 24-12794 (KBO)
                                                        :
Debtors.                                                :    (Jointly Administered)
                                                        :
------------------------------------------------------- x

### NOTICE OF DISCLOSURE STATEMENT HEARING

**TO:**    **ALL HOLDERS OF CLAIMS AGAINST FIRST MODE HOLDINGS, INC., SYNCHRONOUS LLC, AND ALL OTHER PARTIES IN INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES**

**PLEASE TAKE NOTICE THAT** on December 22, 2024, First Mode Holdings, Inc. and Synchronous LLC (together, the "**Debtors**"), filed the (i) *Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. 82] (as it may be amended, modified, or supplemented from time to time, the "**Plan**"), and (ii) *Disclosure Statement for Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. 83] (as it may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**").[2]  On [ ● ], 2025, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Approving the Disclosure Statement; (II) Establishing the Voting Record Date, Voting Deadline, and Other Dates; (III) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan; (IV) Approving the Manner and Forms of Notice and Other Related Documents; and (V) Granting Related Relief* (the "**Disclosure Statement Motion**").

**PLEASE TAKE FURTHER NOTICE THAT** a hearing will be held before the Honorable Karen B. Owens, United States Bankruptcy Judge, on **February 6, 2025 at 9:30 A.M. prevailing Eastern Time**, in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Courtroom 3, Wilmington, Delaware 19801 (the "**Disclosure Statement Hearing**"), to consider approval of the Disclosure Statement and the other relief requested in the Disclosure Statement Motion.  Please be advised that the Disclosure Statement Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Omni Agent Solutions, Inc., the

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: First Mode Holdings, Inc. (7177), and Synchronous LLC (1829).  The Debtors' address is 3417 1st Ave S, Seattle, WA 98134.

[2]    Capitalized terms used but not otherwise defined herein will have the meanings set forth in the Disclosure Statement or the Plan, as applicable.

Notice and Claims agent retained by the Debtors in these Chapter 11 Cases, by: (i) calling the Debtors' restructuring hotline at 866-771-0558 (US & Canada Toll Free) or 747-288-6101 (international); (ii) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/FirstMode; and/or (iii) sending an email to FirstModeInquiries@OmniAgnt.com.  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at:  http://www.deb.uscourts.gov or free of charge at https://omniagentsolutions.com/FirstMode.

**PLEASE TAKE FURTHER NOTICE THAT** objections, if any, to the adequacy of the Disclosure Statement or the relief sought in connection therewith **must**: (i) be made in writing; (ii) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; (iii) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Disclosure Statement that would resolve such objection; and (iv) be filed with the Bankruptcy Court (contemporaneously with a proof of service), and be served upon the following parties (the "**Notice Parties**") on or before **4:00 P.M. prevailing Eastern Time on January 30, 2025** (the "**Objection Deadline**"):

    i.      The Debtors: 3417 1st Ave S, Seattle, WA 98134, Attn: Will Smith (email: will.smith@firstmode.com);

    ii.     Counsel to the Debtors: (a) Latham & Watkins LLP (x) 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Caroline Reckler, Esq. (email: caroline.reckler@lw.com); (y) 1271 Avenue of the Americas, New York, NY 10020, Attn: Annemarie V. Reilly, Esq. and Brian S. Rosen, Esq. (emails: annemarie.reilly@lw.com, and brian.rosen@lw.com); and (z) 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071, Attn: Jeffrey T. Mispagel, Esq. (email: jeffrey.mispagel@lw.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael R. Nestor, Esq., Kara Hammond Coyle, Esq., and Joseph M. Mulvihill, Esq. (emails: MNestor@ycst.com, KCoyle@ycst.com, and JMulvihill@ycst.com);

    iii.    The U.S. Trustee: 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn:  Jane Leamy (email: Jane.M.Leamy@usdoj.gov);

    iv.    Counsel for the DIP Lender, the Prepetition Facility Lender, and the Consenting Parent: (a) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017, Attn: Darren S. Klein, Esq. and Aryeh Ethan Falk, Esq. (darren.klein@davispolk.com and aryeh.falk@davispolk.com) and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N Market St # 1600, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq. (rdehney@morrisnichols.com); and

    v.     Counsel to the Official Committee of Unsecured Creditors or any other statutory committee appointed in the Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE THAT** only those objections made in writing and timely filed and received by the Objection Deadline will be considered by the Bankruptcy Court during the Disclosure Statement Hearing.  If no objections to the Disclosure Statement Motion are timely and properly filed and served in accordance with the procedures set forth herein, the Bankruptcy Court may enter an order granting the Disclosure Statement Motion without further notice.

Dated:  [ ● ], 2025
  Wilmington, Delaware

**LATHAM & WATKINS LLP**

Ray C. Schrock (admitted *pro hac vice*)
Annemarie V. Reilly (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  ray.schrock@lw.com
            annemarie.reilly@lw.com
            brian.rosen@lw.com

  - and -

Caroline Reckler (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
Email:  caroline.reckler@lw.com

  - and -

Jeffrey T. Mispagel (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeffrey.mispagel@lw.com

Respectfully Submitted,

/s/
_____

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Joseph M. Mulvihill (No. 6061)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
            kcoyle@ycst.com
            jmulvihill@ycst.com

*[Proposed] Counsel for Debtors and Debtors in Possession*

**EXHIBIT 2**

Class 4 Ballot

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------- x
In re:                                  :    Chapter 11
                                        :
FIRST MODE HOLDINGS, INC., et al.,¹     :    Case No. 24-12794 (KBO)
                                        :
          Debtors.                      :    (Jointly Administered)
                                        :
----------------------------------------------------------- x
```

## BALLOT TO ACCEPT OR REJECT THE DEBTORS' PLAN

## CLASS 4: GENERAL UNSECURED CLAIMS

---

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 4:00 P.M., EASTERN TIME, ON MARCH 14, 2025 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

> **THE PLAN CONTAINS THIRD-PARTY RELEASES.**
>
> **You may opt in to the Third-Party Release by checking the box on page 7 of this ballot and returning this ballot by the Voting Deadline.**
>
> **To receive a distribution under the Plan, you must:**
>      **(A) vote to accept the Plan, or abstain from voting on the Plan; and**
>      **(B) grant the Third-Party Release.**
>
> **If you vote to reject the Plan or do not opt-in to the Third Party Release, you will not receive any distribution.**

          This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *First Amended Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified, or

---

¹    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: First Mode Holdings, Inc. (7177), and Synchronous LLC (1829).  The Debtors' mailing address is 300 Lenora Street, PMB #1445, Seattle, WA 98121.

supplemented from time to time, the "**Plan**") for First Mode Holdings, Inc. and Synchronous LLC (together, the "**Debtors**").[2]

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of February 5, 2025 (the "**Voting Record Date**"), a holder (a "**Holder**") of a General Unsecured Claim against the Debtors.

The Plan is attached as **Exhibit A** to the *First Amended Disclosure Statement for Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**"), which was included in the package (the "**Solicitation Package**") you are receiving with this Ballot.  The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  The recoveries described in the Disclosure Statement are subject to confirmation of the Plan.  If you do not have the Solicitation Package, you may obtain a copy (a) from Omni Agent Solutions, Inc. (the "**Notice and Claims Agent**") at no charge by: (i) visiting the Notice and Claims Agent's website at https://omniagentsolutions.com/FirstMode, (ii) calling 866-771-0558 (US & Canada Toll Free) or 747-288-6101 (international), or (iii) sending an electronic message to FirstModeInquiries@OmniAgnt.com with "First Mode" in the subject line and requesting a copy be provided to you; or (b) for a fee via PACER at http://www.deb.uscourts.gov.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Notice and Claims Agent *immediately* at the address, telephone number, or email address set forth below.

On December 15, 2024, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  **If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**  To have your vote counted, you must complete, sign, and return this Ballot to the Notice and Claims Agent by the Voting Deadline.

THE PLAN CONTAINS THIRD-PARTY RELEASES.  YOU MAY OPT-IN TO THE THIRD-PARTY RELEASES BY (A) VOTING TO ACCEPT THE PLAN AND OPT-IN TO THE THIRD-PARTY RELEASES BY CHECKING THE APPLICABLE BOX IN ITEM 2 OF THIS BALLOT AND RETURNING THIS BALLOT BY THE VOTING DEADLINE, OR (B)

---

[2]   Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

RETURNING A SUPPLEMENTAL OPT-IN RELEASE FORM PURSUANT TO THE PROCEDURES SET FORTH IN THE DISCLOSURE STATEMENT ORDER WITHIN NINETY (90) DAYS AFTER THE EFFECTIVE DATE OF THE PLAN.

**YOU MUST GRANT THE THIRD-PARTY RELEASES TO BE A PARTICIPATING GUC HOLDER UNDER THE PLAN AND RECEIVE THE DISTRIBUTION FOR PARTICIPATING GUC HOLDERS CONTEMPLATED UNDER THE PLAN. IF YOU (A) VOTE TO REJECT THE PLAN OR (B) DO NOT GRANT THE THIRD-PARTY RELEASES, YOU WILL BE CONSIDERED A NON-PARTICIPATING GUC HOLDER UNDER THE PLAN AND WILL RECEIVE NO PAYMENT ON ACCOUNT OF YOUR GENERAL UNSECURED CLAIMS.**

PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN FOR MORE DETAILS.

3

## IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 4

Claims in Class 4 consist of General Unsecured Claims against the Debtors.  As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment:

i.   each Participating GUC Holder shall receive the lesser of (a) payment in full in cash; and (b) its pro rata share of Distributable Proceeds; and

ii.  each Non-Participating GUC Holder shall receive no consideration on account of its General Unsecured Claims.

***Certain Relevant Definitions Contained in <u>Article I</u> of the Plan Related to Treatment of Class 4 Claims:***

"**<u>Administrative Claim</u>**" means a Claim (other than an Intercompany Claim) arising on or before the Effective Date for costs and expenses of administration under sections 364(c)(1), 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fee Claims (to the extent Allowed by the Bankruptcy Court); and (c) U.S. Trustee Fees.

"**<u>Anglo</u>**" means the Prepetition Secured Lender collectively with its Affiliates other than FMH and its direct and indirect subsidiaries.

"**<u>Anglo Funding Amount</u>**" means, subject to entry of the Confirmation Order and the satisfaction or waiver of each of the conditions precedent to the occurrence of the Effective Date of the Plan in accordance with <u>Article VIII</u> of the Plan, Cash in the amount of $28,870,592, less (i) the amount of any payments of any prepetition Claim during the Chapter 11 Cases, except to the extent such payment is paid or otherwise reimbursed (including by means of a purchase price adjustment) by the Successful Bidder, and (ii) the amount, if any, by which (x) the actual amount of Allowed Professional Fee Claims of Committee Professionals exceeds (y) the amount of such professional fees set forth in the Initial Budget (as defined in the DIP Credit Agreement) that is an Approved Budget (as defined in the DIP Credit Agreement).

"**<u>Committee Professionals</u>**" means Persons or firms retained by the Committee appointed in the Chapter 11 Cases pursuant to section 328 or 1103 of the Bankruptcy Code.

"**<u>DIP Facility Claim</u>**" means any Claim held by the DIP Lender derived from, based upon, relating to, or arising under the DIP Facility, the DIP Documents, or the DIP Orders, including claims for all principal amounts outstanding, interest, fees, and expenses under the DIP Facility.

"**<u>Distributable Proceeds</u>**" means all cash (including the Anglo Plan Funding) and cash proceeds generated from the use, sale, lease, liquidation, or other disposition of any property of

4

the Debtors after the Effective Date in excess of the sum of (a) amounts necessary to satisfy (i) all Administrative Claims (other than DIP Facility Claims), and claims for fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911 and 1930, (ii) Professional Fee Claims, (iii) Priority Tax Claims, (iv) Other Priority Claims, (v) Other Secured Claims, in each case (i) through (v), to the extent Allowed against the Debtors, and (b) the wind-down costs as set forth in the Wind Down Budget.

"**General Unsecured Claim**" means any unsecured Claim other than an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, an Intercompany Claim, or a 510(b) Equity Claim.

"**Holder**" means an Entity holding a Claim or Interest.

"**Non-Participating GUC Holder**" means any Holder of a General Unsecured Claim that is not a Participating GUC Holder.

"**Participating GUC Holder**" means any Holder of an Allowed General Unsecured Claim that (a) does not vote to reject the Plan and (b) is a Releasing Party on the Effective Date or becomes a Releasing Party on or prior to the date that is ninety (90) days after the Effective Date.

"**Prepetition Secured Lender**" means Anglo American International Holdings Limited, which holds Prepetition Secured Loan Claims.

"**Priority Tax Claim**" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"**Professional Fee Claim**" means a Claim by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred during the Chapter 11 Cases, through and including the Effective Date, under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

"**Other Priority Claim**" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code other than a General Administrative Claim, DIP Facility Claim, Professional Fee Claim, or Priority Tax Claim.

"**Other Secured Claim**" means any Secured Claim other than a DIP Facility Claim or a Prepetition Secured Loan Claim.

"**Releasing Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) all Holders of Claims and Interests in the Voting Class who either vote to accept the Plan or abstain from voting on the Plan, and, in each case, opt-in to the Third-Party Release; (g) all Holders of Claims and Interests in any Non-Voting Class who return an opt-in form pursuant to the procedures set forth in the Disclosure Statement Order; (h) with respect to each Entity in clauses (a) through (g), each such Entity's current and former Affiliates; and (i) with respect to each Entity in clause (a) through (h), each such Entity's Related Parties (solely to the extent such Releasing

5

Party is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law).

"**Successful Bidder**" means any Entity or Entities whose bid for any or all of the Debtors' assets is selected by the Debtors and approved by the Bankruptcy Court as the highest or otherwise best bid pursuant to the Bidding Procedures, which may Entity may be the Stalking Horse Bidder. For the avoidance of doubt, the Successful Bidder may be more than one Entity, submitting one or more bids, and, if applicable, use of the term "Successful Bidder" herein may be read as "Successful Bidders."

"**Third-Party Release**" means the releases set forth in Article IX.C of the Plan.

"**Wind-Down Budget**" means a budget for the reasonable activities and expenses to be incurred in winding down the Chapter 11 Cases, including the liquidation of any residual assets and entities not transferred to the Successful Bidder(s), as set forth in the Plan Supplement, which shall be in form and substance acceptable to the Debtors and the Prepetition Secured Lender.

US-DOCS\156320410.13

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 3.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1.  Principal Amount of Claim**.  The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of a General Unsecured Claim against the Debtors in the amount listed in the box below, which amount does not include any accrued but unpaid interest.

$\quad$ $\underline{\hspace{3cm}}$

Debtor: $\underline{\hspace{5cm}}$

**Item 2.  Votes on Plan**.  Please vote either to accept or to reject the Plan with respect to your General Unsecured Claim against the Debtors below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**You <u>must</u> grant the Third-Party Releases to be a Participating GUC Holder under the Plan and receive the distribution for Participating GUC Holders contemplated under the Plan.**

**If you do not grant the Third-Party Releases, or if you vote to reject the Plan, you will be considered a Non-Participating GUC Holder under the Plan and will receive no payment on account of your General Unsecured Claims.**

**Please also note that, in addition to the above, you will only be entitled to receive a distribution if (a) your General Unsecured Claim is Allowed under the Plan and (b) the Plan is approved and becomes effective.**

---

**Vote of Holder of General Unsecured Claim against the Debtors on the Plan**.  The undersigned Holder of a General Unsecured Claim against the Debtors votes to (check <u>one </u>box):

☐ **Accept** the Plan and opt-in to the Third-Party Releases (and receive a distribution)

☐ **Accept** the Plan and <u>do not</u> opt-in to the Third-Party Releases (and receive <u>**no**</u> distribution)

☐ **Reject** the Plan and <u>do not</u> opt-in to the Third-Party Releases (and receive <u>**no**</u> distribution)

7

**Item 3.**  Acknowledgments.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the General Unsecured Claim against the Debtors described in Item 1 as of the Voting Record Date, (iii) it has not submitted any other Ballots for other General Unsecured Claims against the Debtors held in other accounts or other record names, or if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan, (iv) the Holder understands and acknowledges that if multiple Ballots are submitted voting the claim set forth in Item 1, only the last properly completed Ballot voting the claim and received by the Notice and Claims Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Notice and Claims Agent, and (v) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted as a vote on the Plan.

_____

Name of Holder

_____

Signature

_____

Name of Signatory and Title

_____

Name of Institution (if different than Holder)

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

8

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* VIA FIRST CLASS
MAIL (ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, OR
HAND DELIVERY TO:**

**First Mode Holdings, Inc. Ballot Processing
c/o Omni Agent Solutions, Inc.
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367**

**If you would like to coordinate hand delivery of your Ballot, please send an email to
FirstModeInquiries@OmniAgnt.com and provide the anticipated date and time of your
delivery.**

**OR**

**Submit your Ballot via the Notice and Claims Agent's online portal at
https://omniagentsolutions.com/FirstMode-Ballots.  Click on the "Submit E-Ballot" section
of the website and follow the instructions to submit your Ballot.**

**The Notice and Claims Agent's online portal is the sole manner in which Ballots will be
accepted via electronic or online transmission.  Ballots submitted by facsimile, email or
other means of electronic transmission will not be counted.**

**Holders of General Unsecured Claims against the Debtors who cast a Ballot using the
Notice and Claims Agent's online portal should NOT also submit a paper Ballot.**

---

IF THE NOTICE AND CLAIMS AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT
**ON OR BEFORE <u>MARCH 14, 2025</u>, AT 4:00 PM,** EASTERN TIME (AND IF THE VOTING
DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS BALLOT MAY
BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION
OF THE DEBTORS.

---

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE NOTICE AND CLAIMS AGENT BY CALLING 866-771-0558 (US & CANADA TOLL FREE) OR 747-288-6101 (INTERNATIONAL) OR BY SENDING AN EMAIL TO FIRSTMODEINQUIRIES@OMNIAGNT.COM WITH "FIRST MODE" IN THE SUBJECT LINE.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.    Complete the Ballot by providing all the information requested.  Any Ballot that is illegible, contains insufficient information to identify the holder, or does not contain an original signature will not be counted.  You may return the Ballot by either of the following two methods:

      **Use of Hard Copy Ballot.**  To ensure that your hard copy Ballot is counted as a vote on the Plan, you must:  (i) complete your Ballot in accordance with these instructions; (ii) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (iii) clearly sign and return your original Ballot in the enclosed pre-addressed, pre-paid envelope via first class mail, or via overnight courier or hand delivery, to the following address:

---

**First Mode Holdings, Inc. Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

---

      **Use of Online Ballot Portal.**  To ensure that your electronic Ballot is counted, please follow the instructions of the Debtors' case administration website at https://omniagentsolutions.com/FirstMode.  The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile or electronic means (other than the online portal).**

      **The Notice and Claims Agent will tabulate all properly completed Ballots received on or before the Voting Deadline**.

2.    The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (ii) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (iii) any unsigned Ballot; and/or (iv) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

3.    You must vote all your General Unsecured Claims against the Debtors under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different General Unsecured Claims against the Debtors, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will

10

not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.    If you elect <u>not</u> to grant the releases contained in Article IX.C of the Plan, check one of the applicable boxes in Item 2 of the Ballot. Election to withhold consent to the releases contained in Article IX.C of the Plan is at your option.

5.    The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

6.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and/or opt in to the Third-Party Releases.

7.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, such Ballots shall be identified on any report or declaration of voting results and the latest received, properly executed Ballot submitted to the Notice and Claims Agent will supersede and revoke any prior Ballot; provided that, if a Holder timely submits both a paper Ballot and electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot.

8.    If a Holder holds a Claim in a Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder has a Claim in that Class.

9.    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class will be aggregated and treated as if such Holder held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided, however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holder held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

10.    In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

11.    There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

12.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

13.    PLEASE RETURN YOUR BALLOT PROMPTLY TO THE NOTICE AND CLAIMS AGENT IN THE ENVELOPE PROVIDED OR SUBMIT YOUR E-BALLOT VIA THE ONLINE PORTAL.

14. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE NOTICE AND CLAIMS AGENT AT 866-771-0558 (US & CANADA TOLL FREE) OR 747-288-6101 (INTERNATIONAL) OR BY SENDING AN EMAIL TO FIRSTMODEINQUIRIES@OMNIAGNT.COM WITH "FIRST MODE" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

15. THE NOTICE AND CLAIMS AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

US-DOCS\156320410.13

## Exhibit 1

*Releases, Discharges, Injunctions, and Exculpations*

**If you are entitled to vote on the Plan and affirmatively opt in to the Third-Party Releases by checking the box in Item 2 above, you shall be deemed to have granted the release, injunction, and exculpation provisions set forth in Article IX.C, IX.D, and IX.E of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.  Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.**

**PLEASE ALSO BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASES.**

**IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.**

**DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ARE CONTAINED IN ARTICLE I OF THE PLAN.**

*Certain Relevant Definitions Contained in <u>Article I</u> of the Plan Related to Release and Exculpation Provisions:*

**"Exculpated Party"** means (a) the Debtors, (b) any Committee, and (c) solely to the extent they are estate fiduciaries, each such Entity's current officers, directors (including any sub-committee of directors), members (including ex officio members), financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such on or after the Petition Date and prior to or on the Effective Date.

"**Released Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) with respect to each Entity in clauses (a) through (e), each such Entity's current and former Affiliates; and (g) with respect to each Entity in clause (a) through (f), each such Entity's Related Parties; provided, however, that, notwithstanding the foregoing, any Holder of a Claim or Interest that is not a Releasing Party shall not be a Released Party.

"**Releasing Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) all Holders of Claims and Interests in the Voting Class who either vote to accept the Plan or abstain from voting on the Plan, and, in each case, opt-in to the Third-Party Release; (g) all Holders of Claims and Interests in any Non-Voting Class who return an opt-in form pursuant to the procedures

set forth in the Disclosure Statement Order; (h) with respect to each Entity in clauses (a) through (g), each such Entity's current and former Affiliates; and (i) with respect to each Entity in clause (a) through (h), each such Entity's Related Parties (solely to the extent such Releasing Party is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law).

## ARTICLE IX RELEASE, INJUNCTION AND RELATED PROVISIONS

### B.    *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed to be conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released, acquitted, and discharged by the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that such entities would have been legally entitled to assert in their own right (whether individually or collectively) or that any Holder of any Claim or Interest could have asserted on behalf of such entities, based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.**

2

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

C.      *Releases by Holders of Claims and Interests*

As of the Effective Date, except as otherwise provided herein, each Releasing Party, their Estates, their assigns and their successors in interest, is deemed to have conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released each Debtor and Released Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties, their Estates, their assigns, and their successors in interest ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that the Releasing Parties, their Estates, their assigns, and their successors in interest would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement

US-DOCS\156320410.13

(including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, (iii) release any Claims or Causes of Action against any non-Released Party, or (iv) release any claims relating to or arising under the Wind-Down Support Agreement.

**D.      Exculpation**

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation, negotiation, preparation, and consummation of the Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing, including any postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of any restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, however, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this section shall or shall be deemed to prohibit the Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors, in each case unless otherwise expressly provided for in the Plan.  The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**E.      Injunction**

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, interests, Causes of Action, or liabilities that:  (a) are compromised or settled under the Plan (including pursuant to Articles II and III of the Plan); (b) have been released pursuant to the Plan; (c) are subject to exculpation pursuant to the

4

Plan (but only to the extent of the exculpation provided in the Plan), or (d) are otherwise satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, on and after the Effective Date, from:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or their successors (including the Plan Administrator) or any Entity released or exculpated (or the property or estate of any such Entity); (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); or (iv) asserting any right of setoff, subrogation, or recoupment of any kind on account of any such claims, interests, Causes of Action, or liabilities against any obligation due from such Entities (including the Debtors or their successors (including the Plan Administrator)) or against the property of such Entities including the Debtors or their successors (including the Plan Administrator)) unless such Entity has filed a motion requesting the right to perform such setoff on or before the Effective Date or has filed a Proof of Claim or proof of Interest indicating that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise.

US-DOCS\156320410.13

**EXHIBIT 3**

Notice of Non-Voting Status

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re:                                    :   Chapter 11
                                          :
FIRST MODE HOLDINGS, INC., et al.,¹       :   Case No. 24-12794 (KBO)
                                          :
              Debtors.                    :   (Jointly Administered)
                                          :
------------------------------------------------------- x
```

## NOTICE OF NON-VOTING STATUS

**TO: ALL HOLDERS OF UNCLASSIFIED CLAIMS AND CLAIMS OR INTERESTS IN CLASSES 1, 2, 3, AND 7**

> **THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE NOTICE AND CLAIMS AGENT.**
>
> **THE PLAN CONTAINS THIRD-PARTY RELEASES.  HOLDERS OF CLAIMS OR INTERESTS IN CLASSES 1, 2, 3, AND 7 MAY OPT IN TO THE THIRD-PARTY RELEASES BY COMPLETING PAGES 8 AND 9 OF THE OPT-IN RELEASE FORM ATTACHED TO THIS NOTICE AS EXHIBIT A AND RETURNING THE OPT-IN RELEASE FORM TO THE NOTICE AND CLAIMS AGENT BY NO LATER THAN 4:00 P.M. EASTERN TIME ON THE DATE THAT IS NINETY (90) DAYS AFTER THE PLAN EFFECTIVE DATE.**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

## APPROVAL OF DISCLOSURE STATEMENT

 **PLEASE TAKE NOTICE THAT** on [ ● ], 2024, First Mode Holdings, Inc. and Synchronous LLC (together, the "**Debtors**"), filed solicitation versions of their (i) *First Amended Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified, or supplemented from time to time, the "**Plan**"), and (ii) *First Amended Disclosure Statement for Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**").[2]

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: First Mode Holdings, Inc. (7177), and Synchronous LLC (1829).  The Debtors' address is 3417 1st Ave S, Seattle, WA 98134.

[2] Capitalized terms used but otherwise not defined herein have meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** on [ ● ], 2025, after a hearing (the "**Disclosure Statement Hearing**") to consider whether the Disclosure Statement contains adequate information and whether to approve the solicitation procedures contemplated by the Disclosure Statement (the "**Solicitation Procedures**"), the Court entered an order approving the Disclosure Statement and the Solicitation Procedures (the "**Disclosure Statement Order**") [Docket No. [ ● ]].

**PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "**Confirmation Hearing**") to consider final approval and confirmation of the Plan will be held before The Honorable Karen B. Owens, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Courtroom 3, Wilmington, Delaware 19801, **on March 26, 2025 at 9:30 A.M. (prevailing Eastern Time)**. The Confirmation Hearing may be continued from time to time without further notice other than the announcement by the Debtors in open court of the adjourned date(s) at the Confirmation Hearing or any continued hearing or as indicated in any notice filed with the Bankruptcy Court. The Plan may be amended, supplemented, or modified from time to time, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and other applicable law, before, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest.

## ENTITLEMENT TO VOTE ON THE PLAN

In accordance with the terms of the Plan and the Bankruptcy Code, General Administrative Claims, Professional Fee Claims, DIP Facility Claims, and Priority Tax Claims (collectively, the "**Unclassified Claims**") are unclassified and are not entitled to vote on the Plan. Also, Holders of Claims and Interests in Classes 1, 2, 3, and 7 under the Plan (collectively, the "**Non-Voting Classes**")[3] are (i) conclusively deemed to have accepted or rejected the Plan, as applicable, and (ii) not entitled to vote to accept or reject the Plan, as further described below. You are receiving this notice because you are either (i) a Holder of an Unclassified Claim and, therefore, not entitled to vote on the Plan; or (ii) a Holder of a Claim or Interest in a Class that is conclusively deemed to accept or reject the Plan and therefore not entitled to vote on the Plan.

Your rights are described more fully in the Disclosure Statement and Plan. If you would like to review the Plan and Disclosure Statement, you may contact Omni Agent Solutions, Inc. ("**Omni**"), the notice and claims agent retained by the Debtors in these Chapter 11 Cases, by: (i) calling the Debtors' restructuring hotline at 866-771-0558 (US & Canada Toll Free) or 747-288-6101 (international); (ii) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/FirstMode; and/or (iii) sending an email to FirstModeInquiries@OmniAgnt.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov or free of charge at https://omniagentsolutions.com/FirstMode.

## SUMMARY OF PLAN TREATMENT OF CLAIMS AND INTERESTS

---

[3]    Holders of Class 5 Intercompany Claims and Class 6 Intercompany Interests are not entitled to vote on the Plan but are not being provided with a Notice of Non-Voting Status.

The Plan proposes to modify the rights of certain creditors of the Debtors. The classification of Claims under the Plan is described generally below.

## SUMMARY OF STATUS AND VOTING RIGHTS

| Class | Claim/Interest | Status | Voting Rights |
|-------|---------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | No (presumed to accept) |
| 2 | Other Priority Claims | Unimpaired | No (presumed to accept) |
| 3 | Prepetition Secured Loan Claims | Unimpaired | No (presumed to accept) |
| 4 | General Unsecured Claims | Unimpaired or Impaired | Yes |
| 5 | Intercompany Claims | Unimpaired or Impaired | No (either deemed to reject or presumed to accept) |
| 6 | Intercompany Interests | Unimpaired or Impaired | No (either deemed to reject or presumed to accept) |
| 7 | Equity Interests | Impaired | No (deemed to reject) |

## **DEADLINE FOR OBJECTIONS TO CONFIRMATION OF THE PLAN**

Notwithstanding the fact that you are not entitled to vote to accept or reject the Plan, you nevertheless may be a party in interest in these Chapter 11 Cases and you, therefore, may be entitled to participate in these Chapter 11 Cases, including by filing objections to Confirmation of the Plan. Objections, if any, shall (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) set forth the name of the objector and the nature and amount of any Claim or Interest asserted by the objector against or in the Debtors, (iv) state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection, and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so as to be **actually received** by each of the following parties (the "**Notice Parties**") on or before **March 14, 2025 at 4:00 P.M. (prevailing Eastern time)** (the "**Objection Deadline**"):

i.      The Debtors: 3417 1st Ave S, Seattle, WA 98134, Attn: Will Smith (email: will.smith@firstmode.com);

ii.     Counsel to the Debtors: (a) Latham & Watkins LLP (x) 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Caroline Reckler, Esq. (email: caroline.reckler@lw.com); (y) 1271 Avenue of the Americas, New York, NY 10020, Attn: Annemarie V. Reilly, Esq. and Brian S. Rosen, Esq. (emails: annemarie.reilly@lw.com, and brian.rosen@lw.com); and (z) 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071, Attn: Jeffrey T. Mispagel, Esq. (email: jeffrey.mispagel@lw.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael R. Nestor, Esq., Kara Hammond Coyle, Esq., and Joseph M. Mulvihill, Esq. (emails: MNestor@ycst.com, KCoyle@ycst.com, and JMulvihill@ycst.com);

iii.      The U.S. Trustee: 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Jane Leamy (email: Jane.M.Leamy@usdoj.gov);

iv.      Counsel for the DIP Lender, the Prepetition Facility Lender, and the Consenting Parent: (a) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017, Attn: Darren S. Klein, Esq. and Aryeh Ethan Falk, Esq. (darren.klein@davispolk.com and aryeh.falk@davispolk.com) and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N Market St # 1600, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq. (rdehney@morrisnichols.com); and

v.      Counsel to the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases: McDermott Will & Emery LLP, (a) One Vanderbilt Avenue, New York, NY 10017, Attn: Darren Azman, Esq. and Kristin Going, Esq. (emails: dazman@mwe.com and kgoing@mwe.com) and (z) 1000 N. West Street, Suite 1400, Wilmington, DE 19801, Attn: David R. Hurst, Esq. and Andrew Mark, Esq. (emails: dhurst@mwe.com and amark@mwe.com).

---

**OBJECTIONS TO CONFIRMATION OF THE PLAN NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.**

---

US-DOCS\156320416.12

## **RELEASES, DISCHARGES, INJUNCTIONS AND EXCULPATIONS**

Pursuant to Article IX of the Plan, the Debtors seek approval of the following release, injunction, and exculpation provisions.

**DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ARE CONTAINED IN ARTICLE I OF THE PLAN.**

*Certain Relevant Definitions Contained in <u>Article I</u> of the Plan Related to Release and Exculpation Provisions:*

"**Exculpated Party**" means (a) the Debtors, (b) any Committee, and (c) solely to the extent they are estate fiduciaries, each such Entity's current officers, directors (including any sub-committee of directors), members (including ex officio members), financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such on or after the Petition Date and prior to or on the Effective Date.

"**Released Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) with respect to each Entity in clauses (a) through (e), each such Entity's current and former Affiliates; and (g) with respect to each Entity in clause (a) through (f), each such Entity's Related Parties; provided, however, that, notwithstanding the foregoing, any Holder of a Claim or Interest that is not a Releasing Party shall not be a Released Party.

"**Releasing Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) all Holders of Claims and Interests in the Voting Class who either vote to accept the Plan or abstain from voting on the Plan, and, in each case, opt-in to the Third-Party Release; (g) all Holders of Claims and Interests in any Non-Voting Class who return an opt-in form pursuant to the procedures set forth in the Disclosure Statement Order; (h) with respect to each Entity in clauses (a) through (g), each such Entity's current and former Affiliates; and (i) with respect to each Entity in clause (a) through (h), each such Entity's Related Parties (solely to the extent such Releasing Party is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law).

## ARTICLE IX RELEASE, INJUNCTION AND RELATED PROVISIONS

### B.    *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed to be conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released, acquitted, and discharged by the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) from any**

and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that such entities would have been legally entitled to assert in their own right (whether individually or collectively) or that any Holder of any Claim or Interest could have asserted on behalf of such entities, based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

## C.    *Releases by Holders of Claims and Interests*

As of the Effective Date, except as otherwise provided herein, each Releasing Party, their Estates, their assigns and their successors in interest, is deemed to have conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released each Debtor and Released Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or

6

otherwise that the Releasing Parties, their Estates, their assigns, and their successors in interest ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that the Releasing Parties, their Estates, their assigns, and their successors in interest would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, (iii) release any Claims or Causes of Action against any non-Released Party, or (iv) release any claims relating to or arising under the Wind-Down Support Agreement.

### D.    *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation, negotiation, preparation, and consummation of the Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under

7

the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing, including any postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of any restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, however, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this section shall or shall be deemed to prohibit the Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors, in each case unless otherwise expressly provided for in the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

E.    *Injunction*

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, interests, Causes of Action, or liabilities that: (a) are compromised or settled under the Plan (including pursuant to Articles II and III of the Plan); (b) have been released pursuant to the Plan; (c) are subject to exculpation pursuant to the Plan (but only to the extent of the exculpation provided in the Plan), or (d) are otherwise satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, on and after the Effective Date, from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or their successors (including the Plan Administrator) or any Entity released or exculpated (or the property or estate of any such Entity); (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any

**encumbrance of any kind on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); or (iv) asserting any right of setoff, subrogation, or recoupment of any kind on account of any such claims, interests, Causes of Action, or liabilities against any obligation due from such Entities (including the Debtors or their successors (including the Plan Administrator)) or against the property of such Entities including the Debtors or their successors (including the Plan Administrator)) unless such Entity has filed a motion requesting the right to perform such setoff on or before the Effective Date or has filed a Proof of Claim or proof of Interest indicating that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise.**

## COPIES OF THE PLAN AND DISCLOSURE STATEMENT

The Plan and Disclosure Statement are on file with the Clerk of the Bankruptcy Court and may be examined by any interested party at the Clerk's office at any time during regular business hours or by (i) visiting the Debtors' case website (https://omniagentsolutions.com/FirstMode); (ii) telephoning Omni, the notice and claims agent retained by the Debtors in these Chapter 11 Cases, at 866-771-0558 (US & Canada Toll Free) or 747-288-6101 (international); or (iii) sending an email to FirstModeInquiries@OmniAgnt.com. In addition, copies of the Plan and Disclosure Statement may be obtained at or viewed on the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website.

9

Dated:  [ ● ], 2025
       Wilmington, Delaware

Respectfully Submitted,

*/s/*_____

**LATHAM & WATKINS LLP**
Ray C. Schrock (admitted *pro hac vice*)
Annemarie V. Reilly (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  ray.schrock@lw.com
       annemarie.reilly@lw.com
       brian.rosen@lw.com

 - and -

Caroline Reckler (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
Email:  caroline.reckler@lw.com

 - and -

Jeffrey T. Mispagel (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeffrey.mispagel@lw.com

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Joseph M. Mulvihill (No. 6061)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
       kcoyle@ycst.com
       jmulvihill@ycst.com

*Counsel for Debtors and Debtors in Possession*

10

EXHIBIT A

Opt-In Release Form

**OPTIONAL: OPT-IN RELEASE FORM**

**What is this form?**  This optional form gives you the opportunity to opt in to granting the Third-Party Releases described below.

**Who should fill out this form?**  You should only consider filling out this form if you have a Claim against, or Interest in, the Debtors and have been deemed to accept or reject the Plan.  If you are unsure whether you hold such a Claim or Interest, you should consult your own attorney.

**What are the Third-Party Releases?**  If you have a Claim against, or Interest in, the Debtors, you may opt in to grant the Third-Party Releases.  That means you will release, that is, waive or give up, certain legal claims you might have against the parties identified as the "Released Parties" on this form.  If you are unsure whether you have any such claims against the Released Parties, you should consult your own attorney.

**How do I opt in to the Third-Party Releases?**  Complete this form and return it as instructed below.  If you are unsure how to complete the form, you should consult your own attorney.

**Will this affect my treatment under the Plan?**  No.  Whether you choose to opt in to the Third-Party Releases or not will only have an effect on your treatment under the Plan if you hold a General Unsecured Claim.  If you have received this Opt-In Release Form, the Debtors believe that you do not hold a General Unsecured Claim.  If you believe that you hold a General Unsecured Claim, or are unsure whether you hold a General Unsecured Claim, you should consult your own attorney.

**What am I being asked to do?**  You have the option of opting in to granting the Third-Party Releases.  If you do not wish to opt in, you do not need to do anything, and you will be deemed not to grant the Third-Party Releases.  If you are uncertain as to whether you should opt in, you should consult your own attorney.

**When is the deadline to submit this form?**  If you wish to opt in, this form must be actually received by the Notice and Claims Agent by no later than 4:00 P.M. Eastern Time on the date that is ninety (90) days after the Plan Effective Date, or by such time otherwise provided for in the Disclosure Statement Order.

---

**You should read the rest of this form thoroughly.  This summary is qualified in all respects by the information set forth below.  If you have any questions regarding what this form does, you should consult your own attorney.**

---

You are receiving this opt-in form (the "**Opt-In Release Form**") because the Debtors' books and records indicate you are or may be a Holder of a Claim or Interest that is deemed to accept or reject the *Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* (as it may be amended, modified or supplemented from time to time, the "**Plan**").[1]  Holders of such Claims and Interests are deemed not to grant the Third-Party Releases set forth below unless a Holder affirmatively opts in on or before the Opt-In Release Deadline (as defined below).

**If you believe you are a Holder of a Claim or Interest with respect to the Debtors and choose to opt in to the Third-Party Releases set forth in Article IX.C of the Plan, please complete, sign, and date this Opt-In Release Form and return it promptly** via first class mail (in the enclosed reply envelope provided), overnight courier, or hand delivery to Omni Agent Solutions, Inc. ("**Omni**" or the "**Notice and Claims Agent**") at the address set forth below, or via the Notice and Claims Agent's E-Ballot Portal: https://omniagentsolutions.com/FirstMode-Ballots

<div align="center">

First Mode Holdings, Inc. Ballot Processing
c/o Omni Agent Solutions, Inc.
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

</div>

**THIS OPT-IN RELEASE FORM MUST BE ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT  BY NO LATER THAN 4:00 P.M. EASTERN TIME ON THE DATE THAT IS NINETY (90) DAYS AFTER THE PLAN EFFECTIVE DATE, OR BY SUCH TIME OTHERWISE PROVIDED FOR IN THE DISCLOSURE STATEMENT ORDER (THE "OPT-IN RELEASE DEADLINE").  IF THE OPT-IN RELEASE FORM IS RECEIVED AFTER THE OPT-IN RELEASE DEADLINE, IT WILL NOT BE COUNTED OR EFFECTIVE.**

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.  The Plan is attached as Exhibit A to, and described in greater detail in, the *Disclosure Statement for Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* (as it may be amended, modified or supplemented from time to time, the "**Disclosure Statement**").

<div align="center">2</div>

**Item 1**.  **Amount of Claim or Interest.**

The undersigned hereby certifies that, as of February 5, 2025 (the "**Voting Record Date**"), the undersigned was the Holder of a Claim or Interest in one or more of the following classes: (i) Class 1 Other Secured Claims, (ii) Class 2 Other Priority Claims, (iii) Class 3 Prepetition Secured Loan Claims, or (iv) Class 7 Equity Interests (insert amount in box below).  For the avoidance of doubt, each entity should only submit one Opt-In Release Form for all Claims and/or Interests it holds.

<div style="border:1px solid black">

Class 1 Other Secured Claims Amount $_____

AND

Class 2 Other Priority Claims Amount $_____

AND

Class 3 Prepetition Secured Loan Claims Amount $_____

AND

Class 7 Equity Interests Amount _____

</div>

<u>Item 2</u>.  **Important information regarding the Third-Party Releases.**

Pursuant to Article IX of the Plan, the Debtors seek approval of the following release, injunction, and exculpation provisions.

## ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

*Certain Relevant Definitions Contained in <u>Article I</u> of the Plan Related to Release and Exculpation Provisions:*

"**Exculpated Party**" means (a) the Debtors, (b) any Committee, and (c) solely to the extent they are estate fiduciaries, each such Entity's current officers, directors (including any sub-committee of directors), members (including ex officio members), financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such on or after the Petition Date and prior to or on the Effective Date.

"**Released Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) with respect to each Entity in clauses (a) through (e), each such Entity's current and former Affiliates; and (g) with respect to each Entity in clause (a) through (f), each such Entity's Related Parties; provided, however, that, notwithstanding the foregoing, any Holder of a Claim or Interest that is not a Releasing Party shall not be a Released Party.

"**Releasing Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) all Holders of Claims and Interests in the Voting Class who either vote to accept the Plan or abstain from voting on the Plan, and, in each case, opt-in to the Third-Party Release; (g) all Holders of Claims and Interests in any Non-Voting Class who return an opt-in form pursuant to the procedures set forth in the Disclosure Statement Order; (h) with respect to each Entity in clauses (a) through (g), each such Entity's current and former Affiliates; and (i) with respect to each Entity in clause (a) through (h), each such Entity's Related Parties (solely to the extent such Releasing Party is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law).

## ARTICLE IX RELEASE, INJUNCTION AND RELATED PROVISIONS

*B.    Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed to be conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released, acquitted, and discharged by the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity,**

4

contract, tort, or otherwise that the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that such entities would have been legally entitled to assert in their own right (whether individually or collectively) or that any Holder of any Claim or Interest could have asserted on behalf of such entities, based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

## C.    *Releases by Holders of Claims and Interests*

As of the Effective Date, except as otherwise provided herein, each Releasing Party, their Estates, their assigns and their successors in interest, is deemed to have conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released each Debtor and Released Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties, their Estates, their assigns, and their successors in interest ever had, now has, or thereafter can, shall, or may have, including any derivative

claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that the Releasing Parties, their Estates, their assigns, and their successors in interest would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, (iii) release any Claims or Causes of Action against any non-Released Party, or (iv) release any claims relating to or arising under the Wind-Down Support Agreement.

## D.    *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation, negotiation, preparation, and consummation of the Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the

6

transactions or documentation in furtherance of any of the foregoing, including any postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of any restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, however, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this section shall or shall be deemed to prohibit the Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors, in each case unless otherwise expressly provided for in the Plan.  The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

E.    *Injunction*

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, interests, Causes of Action, or liabilities that:  (a) are compromised or settled under the Plan (including pursuant to Articles II and III of the Plan); (b) have been released pursuant to the Plan; (c) are subject to exculpation pursuant to the Plan (but only to the extent of the exculpation provided in the Plan), or (d) are otherwise satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, on and after the Effective Date, from:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or their successors (including the Plan Administrator) or any Entity released or exculpated (or the property or estate of any such Entity); (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect

7

**transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); or (iv) asserting any right of setoff, subrogation, or recoupment of any kind on account of any such claims, interests, Causes of Action, or liabilities against any obligation due from such Entities (including the Debtors or their successors (including the Plan Administrator)) or against the property of such Entities including the Debtors or their successors (including the Plan Administrator)) unless such Entity has filed a motion requesting the right to perform such setoff on or before the Effective Date or has filed a Proof of Claim or proof of Interest indicating that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise.**

<u>**IMPORTANT INFORMATION REGARDING THE RELEASES**</u>:

YOU MAY CHECK THE BOX BELOW TO ELECT TO GRANT THE RELEASES CONTAINED IN ARTICLE IX.C OF THE PLAN AND TO BECOME A "RELEASING PARTY" UNDER THE PLAN.  YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-IN RELEASE FORM BY THE OPT-IN RELEASE DEADLINE.  THE ELECTION TO CONSENT TO GRANT THE THIRD-PARTY RELEASES IS AT YOUR OPTION.

☐ **By checking this box, you elect to opt in to the Third-Party Releases.**

PLEASE BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASES.  IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.

US-DOCS\156320423.13

**Item 3**.  **Certifications.**

By signing this Opt-In Release Form, the undersigned certifies that:

(a)    as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims or Interests set forth in Item 1; or (ii) the Holder is an authorized signatory for an entity that is a Holder of the Claims or Interests set forth in Item 1;

(b)    the Holder has received a copy of the *Notice of Non-Voting Status* and that this Opt-In Release Form is made pursuant to the terms and conditions set forth therein;

(c)    for a Holder of Claims or Interests, the Holder has submitted the same respective election concerning the releases with respect to all Claims or Interests set forth in Item 1; and

(d)    no other Opt-In Release Form with respect to the amount(s) of Claims or Interests identified in Item 1 has been submitted or, if any other Opt-In Release Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt-In Release Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than Holder) |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

9

**IF YOU WISH TO OPT IN, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-IN RELEASE FORM AND RETURN IT TO THE NOTICE AND CLAIMS AGENT (I) VIA OMNI'S E-BALLOT PORTAL OR (II) BY MAIL, OVERNIGHT OR HAND DELIVERY TO:**

<div align="center">

**First Mode Holdings, Inc. Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

</div>

**THE OPT-IN RELEASE DEADLINE IS 4:00 P.M. (PREVAILING EASTERN TIME) ON THE DATE THAT IS NINETY (90) DAYS AFTER THE PLAN EFFECTIVE DATE OR BY SUCH TIME OTHERWISE PROVIDED FOR IN THE DISCLOSURE STATEMENT ORDER.**

---

**If You Are Submitting Your Opt-In Release Form through the E-Balloting Portal**

**Omni will accept Opt-In Release Forms if properly completed through the E-Balloting Portal. To submit your Opt-In Release Form via the E-Balloting Portal, visit https://omniagentsolutions.com/FirstMode-Ballots, click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your Opt-In Release Form.**

**Omni's E-Balloting Portal is the sole manner in which Opt-In Release Form will be accepted via electronic or online transmission. Opt-In Release Forms submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Holders of Claims or Interests who submit an Opt-In Release Form using the E-Balloting Portal should NOT also submit a paper Opt-In Release Form.**

**If your Opt-In Release Form is not received by Omni on or before the Opt-In Release Deadline, and such Opt-In Release Deadline is not extended by the Debtors as noted above, your election to opt in to the Third-Party Releases will not be effective.**

10

**<u>EXHIBIT 4</u>**

Contract/Lease Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------- x
In re:                                              :    Chapter 11
                                                    :
FIRST MODE HOLDINGS, INC., *et al.*,[1]             :    Case No. 24-12794 (KBO)
                                                    :
                      Debtors.                      :    (Jointly Administered)
                                                    :
--------------------------------------------------------- x

### NOTICE TO CONTRACT AND LEASE COUNTERPARTIES OF (I) PROPOSED CONFIRMATION OF CHAPTER 11 PLAN AND (II) NON-VOTING STATUS

**THIS NOTICE IS BEING PROVIDED TO YOU BECAUSE YOU MAY BE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH THE DEBTORS. IF THE DEBTORS REJECT AN EXECUTORY CONTRACT OR UNEXPIRED LEASE TO WHICH YOU ARE A PARTY, YOU MAY HAVE A CLAIM AGAINST EITHER OR BOTH OF THE DEBTORS.**

**IF YOU HAVE A CLAIM AGAINST THE DEBTORS, YOU MUST OPT-IN TO THE THIRD-PARTY RELEASE INCLUDED IN THE CHAPTER 11 PLAN BY SUBMITTING THE SUPPLEMENTAL OPT-IN RELEASE FORM ATTACHED HERETO AS <u>EXHIBIT A</u> IN ORDER TO RECEIVE PAYMENT ON ACCOUNT OF YOUR CLAIM.**

**YOU SHOULD READ THIS NOTICE CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**PLEASE TAKE NOTICE THAT** you are receiving this notice because you or one of your affiliates are a counterparty to an executory contract or unexpired lease with one or more of the Debtors.

**PLEASE TAKE NOTICE THAT** on [ ● ], 2025, First Mode Holdings, Inc. and Synchronous LLC (together, the "**Debtors**"), filed solicitation versions of their (i) *First Amended Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified, or supplemented from time to time, the "**Plan**"), and (ii) *First Amended Disclosure Statement for Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code*

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: First Mode Holdings, Inc. (7177), and Synchronous LLC (1829). The Debtors' address is 3417 1st Ave S, Seattle, WA 98134.

[Docket No. [ ● ]] (as it may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**").[2]

**PLEASE TAKE FURTHER NOTICE THAT** on [ ● ], 2025, after a hearing (the "**Disclosure Statement Hearing**") to consider whether the Disclosure Statement contains adequate information and whether to approve the solicitation procedures contemplated by the Disclosure Statement (the "**Solicitation Procedures**"), the Court entered an order approving the Disclosure Statement and the Solicitation Procedures (the "**Disclosure Statement Order**") [Docket No. [ ● ]].

**PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "**Confirmation Hearing**") to consider final approval and confirmation of the Plan will be held before The Honorable Karen B. Owens, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Courtroom 3, Wilmington, Delaware 19801, **on March 26, 2025 at 9:30 A.M. (prevailing Eastern Time)**. The Confirmation Hearing may be continued from time to time without further notice other than the announcement by the Debtors in open court of the adjourned date(s) at the Confirmation Hearing or any continued hearing or as indicated in any notice filed with the Bankruptcy Court. The Plan may be amended, supplemented, or modified from time to time, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and other applicable law, before, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest.

**PLEASE TAKE FURTHER NOTICE THAT** this notice pertains to certain rights you may have or wish to assert in connection with the proposed Confirmation of the Plan. This process is related to, but distinct from, the potential assumption or assumption and assignment of your Executory Contract or Unexpired Lease with the Debtors, about which you previously received a notice from the Debtors pursuant to the Bankruptcy Court's *Order (I) Approving Bid Procedures in Connection with the Sale of Substantially all of the Debtors' Assets; (II) Scheduling an Auction and a Sale Hearing; (III) Approving the Form and Manner of Notice Thereof; (IV) Authorizing the Debtors to Enter into the Stalking Horse APA And Related Bid Protections; (V) Approving Procedures for the Assumption and Assignment of Contracts and Leases; and (VI) Granting Related Relief* [Docket No. [ ● ]]. You should review this notice, notwithstanding your receipt and review of that prior notice or any action you may have taken in response to that prior notice.

<u>**ENTITLEMENT TO VOTE ON THE PLAN**</u>

**PLEASE TAKE NOTICE THAT,** in accordance with the Solicitation Procedures, you are ***not*** entitled to vote to accept or reject the Plan solely on account of your capacity as a counterparty to an Executory Contract or Unexpired Lease with one or more of the Debtors if you do not have a timely filed or scheduled Claim. To the extent your Executory Contract or Unexpired Lease is ultimately rejected by the Debtors and you timely file a Proof of Claim, Allowed Claims, if any, arising in respect of such rejection will be placed in Class 4 – General Unsecured Claims. Class 4 is Impaired under the Plan and is entitled to vote on the Plan. However, unless you timely

---

[2] Capitalized terms used but otherwise not defined herein have meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

file a Proof of Claim on account of any rejection damages Claim, you will not receive a Solicitation Package and will not be entitled to vote on the Plan.

Your rights are described more fully in the Disclosure Statement and Plan. If you would like to review the Plan and Disclosure Statement, you may contact Omni Agent Solutions, Inc. ("**Omni**"), the Notice and Claims Agent retained by the Debtors in the Chapter 11 Cases, by: (i) calling the Debtors' restructuring hotline at 866-771-0558 (US & Canada Toll Free) or 747-288-6101 (international); (ii) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/FirstMode; and/or (iii) sending an email to FirstModeInquiries@OmniAgnt.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov or free of charge at https://omniagentsolutions.com/FirstMode.

## <u>SUBMISSION OF SUPPLEMENTAL OPT-IN RELEASE FORM</u>

**PLEASE TAKE FURTHER NOTICE THAT ARTICLE IX OF THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS. PURSUANT TO THE TERMS OF THE PLAN, HOLDERS OF CLAIMS MAY AFFIRMATIVELY OPT IN TO THE THIRD-PARTY RELEASES BY, AMONG OTHER THINGS, RETURNING A SUPPLEMENTAL OPT-IN RELEASE FORM PURSUANT TO THE PROCEDURES SET FORTH IN THE DISCLOSURE STATEMENT ORDER WITHIN NINETY (90) DAYS AFTER THE EFFECTIVE DATE OF THE PLAN. YOU MAY REQUEST A SUPPLEMENTAL OPT-IN RELEASE FORM FROM OMNI, USING THE CONTACT INFORMATION PROVIDED IN THE PRIOR PARAGRAPH.**

**PLEASE BE ADVISED THAT GENERAL UNSECURED CREDITORS WHO DO NOT GRANT THE THIRD-PARTY RELEASES WILL RECEIVE NO PAYMENT ON ACCOUNT OF THEIR GENERAL UNSECURED CLAIMS. IF YOUR CONTRACT IS REJECTED BY THE DEBTORS, YOU MAY HAVE A CLAIM ON ACCOUNT OF SUCH CONTRACT REJECTION. IF YOU HAVE A CLAIM, YOU MUST SUBMIT A SUPPLEMENTAL OPT-IN RELEASE FORM IN ORDER TO RECEIVE PAYMENT ON ACCOUNT OF SUCH CLAIM.**

US-DOCS\156320441.14

## <u>OBJECTIONS TO CONFIRMATION OF THE PLAN</u>

  **PLEASE TAKE NOTICE THAT**, notwithstanding the fact that you are not entitled to vote to accept or reject the Plan solely as a counterparty to an Executory Contract or Unexpired Lease, you nevertheless may be a party in interest in these Chapter 11 Cases and you, therefore, may be entitled to participate in these Chapter 11 Cases, including by filing objections to Confirmation of the Plan.  Objections, if any, shall (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) set forth the name of the objector and the nature and amount of any Claim or Interest asserted by the objector against or in the Debtors, (iv) state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection, and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so as to be **actually received** by each of the following parties (the "**Notice Parties**") on or before **March 14, 2025 at 4:00 P.M. (prevailing Eastern Time)** (the "**Objection Deadline**"):

  i.  The Debtors: 3417 1st Ave S, Seattle, WA 98134, Attn: Will Smith (email: will.smith@firstmode.com);

  ii.  Counsel to the Debtors: (a) Latham & Watkins LLP (x) 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Caroline Reckler, Esq. (email: caroline.reckler@lw.com); (y) 1271 Avenue of the Americas, New York, NY 10020, Attn: Annemarie V. Reilly, Esq. and Brian S. Rosen, Esq. (emails: annemarie.reilly@lw.com, and brian.rosen@lw.com); and (z) 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071, Attn: Jeffrey T. Mispagel, Esq. (email: jeffrey.mispagel@lw.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael R. Nestor, Esq., Kara Hammond Coyle, Esq., and Joseph M. Mulvihill, Esq. (emails: MNestor@ycst.com, KCoyle@ycst.com, and JMulvihill@ycst.com);

  iii.  The U.S. Trustee: 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn:  Jane Leamy (email: Jane.M.Leamy@usdoj.gov);

  iv.  Counsel for the DIP Lender, the Prepetition Facility Lender, and the Consenting Parent: (a) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017, Attn: Darren S. Klein, Esq. and Aryeh Ethan Falk, Esq. (darren.klein@davispolk.com and aryeh.falk@davispolk.com) and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N Market St # 1600, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq. (rdehney@morrisnichols.com); and

  v.  Counsel to the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases: McDermott Will & Emery LLP, (a) One Vanderbilt Avenue, New York, NY 10017, Attn: Darren Azman, Esq. and Kristin Going, Esq. (emails: dazman@mwe.com and kgoing@mwe.com) and (z) 1000 N. West Street, Suite 1400, Wilmington, DE 19801, Attn: David R. Hurst, Esq. and Andrew Mark, Esq. (emails: dhurst@mwe.com and amark@mwe.com).

## RELEASES, DISCHARGES, INJUNCTIONS AND EXCULPATIONS

**If you are a Holder of a General Unsecured Claim against either of the Debtors, including because your contract or lease has been rejected, you must affirmatively opt-in to the Third-Party Release in order to receive a distribution on account of your General Unsecured Claim.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.  Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.**

**PLEASE ALSO BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASE.**

**IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.**

**DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ARE CONTAINED IN ARTICLE I OF THE PLAN.**

***Certain Relevant Definitions Contained in Article I of the Plan Related to Release and Exculpation Provisions:***

"**Exculpated Party**" means (a) the Debtors, (b) any Committee, and (c) solely to the extent they are estate fiduciaries, each such Entity's current officers, directors (including any sub-committee of directors), members (including ex officio members), financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such on or after the Petition Date and prior to or on the Effective Date.

"**Released Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) with respect to each Entity in clauses (a) through (e), each such Entity's current and former Affiliates; and (g) with respect to each Entity in clause (a) through (f), each such Entity's Related Parties; provided, however, that, notwithstanding the foregoing, any Holder of a Claim or Interest that is not a Releasing Party shall not be a Released Party.

"**Releasing Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) all Holders of Claims and Interests in the Voting Class who either vote to accept the Plan or abstain from voting on the Plan, and, in each case, opt-in to the Third-Party Release; (g) all Holders of Claims and Interests in any Non-Voting Class who return an opt-in form pursuant to the procedures set forth in the Disclosure Statement Order; (h) with respect to each Entity in clauses (a) through

(g), each such Entity's current and former Affiliates; and (i) with respect to each Entity in clause (a) through (h), each such Entity's Related Parties (solely to the extent such Releasing Party is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law).

## ARTICLE IX RELEASE, INJUNCTION AND RELATED PROVISIONS

### B.   *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed to be conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released, acquitted, and discharged by the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that such entities would have been legally entitled to assert in their own right (whether individually or collectively) or that any Holder of any Claim or Interest could have asserted on behalf of such entities, based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.**

US-DOCS\156320441.14

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

C.      *Releases by Holders of Claims and Interests*

As of the Effective Date, except as otherwise provided herein, each Releasing Party, their Estates, their assigns and their successors in interest, is deemed to have conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released each Debtor and Released Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties, their Estates, their assigns, and their successors in interest ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that the Releasing Parties, their Estates, their assigns, and their successors in interest would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement

7

(including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, (iii) release any Claims or Causes of Action against any non-Released Party, or (iv) release any claims relating to or arising under the Wind-Down Support Agreement.

### D.    *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation, negotiation, preparation, and consummation of the Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing, including any postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of any restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, however, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this section shall or shall be deemed to prohibit the Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors, in each case unless otherwise expressly provided for in the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

### E.    *Injunction*

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, interests, Causes of Action, or liabilities that:  (a) are compromised or settled under the Plan (including pursuant to Articles II and III of the Plan); (b) have been released pursuant to the Plan; (c) are subject to exculpation pursuant to the

Plan (but only to the extent of the exculpation provided in the Plan), or (d) are otherwise satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, on and after the Effective Date, from:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or their successors (including the Plan Administrator) or any Entity released or exculpated (or the property or estate of any such Entity); (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); or (iv) asserting any right of setoff, subrogation, or recoupment of any kind on account of any such claims, interests, Causes of Action, or liabilities against any obligation due from such Entities (including the Debtors or their successors (including the Plan Administrator)) or against the property of such Entities including the Debtors or their successors (including the Plan Administrator)) unless such Entity has filed a motion requesting the right to perform such setoff on or before the Effective Date or has filed a Proof of Claim or proof of Interest indicating that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise.

---

**IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE NOTICE AND CLAIMS AGENT AT THE NUMBER OR ADDRESS SPECIFIED ABOVE.**

US-DOCS\156320441.14

Dated:  [ ● ], 2025                                          Respectfully Submitted,
       Wilmington, Delaware                          /s/_____

**LATHAM & WATKINS LLP**                              **YOUNG CONAWAY STARGATT &**
Ray C. Schrock (admitted *pro hac vice*)             **TAYLOR, LLP**
Annemarie V. Reilly (admitted *pro hac vice*)        Michael R. Nestor (No. 3526)
Brian S. Rosen (admitted *pro hac vice*)             Kara Hammond Coyle (No. 4410)
1271 Avenue of the Americas                          Joseph M. Mulvihill (No. 6061)
New York, NY 10020                                   Rodney Square
Telephone:  (212) 906-1200                           1000 North King Street
Facsimile:  (212) 751-4864                           Wilmington, DE 19801
Email:  ray.schrock@lw.com                           Telephone:  (302) 571-6600
       annemarie.reilly@lw.com               Facsimile:  (302) 571-1253
       brian.rosen@lw.com                    Email:  mnestor@ycst.com
                             kcoyle@ycst.com
  - and -                                                     jmulvihill@ycst.com

Caroline Reckler (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
Email:  caroline.reckler@lw.com


  - and -

Jeffrey T. Mispagel (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeffrey.mispagel@lw.com


*Counsel for Debtors and Debtors in Possession*

**EXHIBIT A**

**<u>Supplemental Opt-In Release Form</u>**

US-DOCS\156320441.14

**EXHIBIT 5**

Confirmation Hearing Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------- x
```
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FIRST MODE HOLDINGS, INC., *et al.*,[1] | : | Case No. 24-12794 (KBO) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
```
-------------------------------------------------------- x
```

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) PLAN
CONFIRMATION HEARING AND (III) DEADLINE TO VOTE ON AND OBJECT TO
CONFIRMATION OF PLAN**

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOUR RIGHTS
MAY BE AFFECTED BY THE PLAN.  THEREFORE, YOU SHOULD READ
THIS NOTICE CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU
DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

---

**TO:    ALL HOLDERS OF CLAIMS AGAINST OR INTERESTS IN FIRST MODE
HOLDINGS, INC., SYNCHRONOUS LLC, AND ALL OTHER PARTIES IN
INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES**

**PLEASE TAKE NOTICE THAT** on [ ● ], 2024, First Mode Holdings, Inc. and Synchronous LLC (together, the "**Debtors**"), filed the solicitation version of their (i) *First Amended Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified, or supplemented from time to time, the "**Plan**"), and (ii) *First Amended Disclosure Statement for Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**").[2]  On [ ● ], 2025, the Bankruptcy Court entered an order [Docket No. [ ● ]] (the "**Disclosure Statement Order**") that, among other things, approved the Disclosure Statement, established (i) **March 14, 2025, at 4:00 P.M. (prevailing Eastern time)** as the deadline for objecting to confirmation of the Plan (the "**Confirmation Objection Deadline**"), (ii) **March 14, 2025, at 4:00 P.M. (prevailing Eastern time)** as the deadline for voting to accept or reject the Plan (the "**Voting Deadline**"), and (iii) **March 26, 2025, at 9:30 A.M. (prevailing Eastern time)** as the date and time of the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**").

**PLEASE TAKE FURTHER NOTICE THAT,** if you wish to review the Plan, you may receive a copy of the Plan free of charge from Omni Agent Solutions, Inc. ("**Omni**"), the voting

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: First Mode Holdings, Inc. (7177), and Synchronous LLC (1829).  The Debtors' mailing address is 3417 1st Ave S, Seattle, WA 98134.

[2]    Capitalized terms used but not otherwise defined herein will have the meanings set forth in the Disclosure Statement or the Plan, as applicable.

and claims agent retained by the Debtors in these Chapter 11 Cases, by (i) calling the Debtors' restructuring hotline at 866-771-0558 (US & Canada Toll Free) or 747-288-6101 (international); (ii) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/FirstMode; and/or (iii) sending an email to FirstModeInquiries@OmniAgnt.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov or free of charge at https://omniagentsolutions.com/FirstMode.

Please be advised that Omni is authorized to answer questions and provide additional copies of solicitation materials but may **not** advise you as to whether you should object to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Bankruptcy Court can confirm the Plan and bind all Holders of Claims and Interests if, after approval of the Disclosure Statement and the solicitation of votes to accept or reject the Plan, it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the Claims in each Impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, each Class rejecting the Plan and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on all Holders of Claims and Interests whether or not a particular Holder was entitled to vote, voted, or affirmatively voted to reject the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Confirmation Hearing to consider confirmation of the Plan will commence at **9:30 A.M. (prevailing Eastern time) on March 26, 2025**, before the Honorable Judge Karen B. Owens, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Courtroom 3, Wilmington, Delaware 19801. The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties in interest.

<u>**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**</u>

> **ARTICLE IX OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**
>
> **PLEASE BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASES. IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.**

Confirmation Objection Deadline.  The deadline for filing objections to the Plan is **March 14, 2025 at 4:00 P.M. (prevailing Eastern time)**.

Objections to the Plan.  Any objection to the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name and address of the objecting party and the amount and nature of the Claim against or Interest in the Debtors; (iv) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than the Confirmation Objection Deadline by the parties listed below.  CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

i.   The Debtors: 3417 1st Ave S, Seattle, WA 98134, Attn: Will Smith (email: will.smith@firstmode.com);

ii.  Counsel to the Debtors: (a) Latham & Watkins LLP (x) 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Caroline Reckler, Esq. (email: caroline.reckler@lw.com); (y) 1271 Avenue of the Americas, New York, NY 10020, Attn: Annemarie V. Reilly, Esq. and Brian S. Rosen, Esq. (emails: annemarie.reilly@lw.com, and brian.rosen@lw.com); and (z) 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071, Attn: Jeffrey T. Mispagel, Esq. (email: jeffrey.mispagel@lw.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael R. Nestor, Esq., Kara Hammond Coyle, Esq., and Joseph M. Mulvihill, Esq. (emails: MNestor@ycst.com, KCoyle@ycst.com, and JMulvihill@ycst.com);

iii. The U.S. Trustee: 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn:  Jane Leamy (email: Jane.M.Leamy@usdoj.gov);

iv.  Counsel for the DIP Lender, the Prepetition Facility Lender, and the Consenting Parent: (a) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017, Attn: Darren S. Klein, Esq. and Aryeh Ethan Falk, Esq. (darren.klein@davispolk.com and aryeh.falk@davispolk.com) and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N Market St # 1600, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq. (rdehney@morrisnichols.com); and

v.   Counsel to the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases: McDermott Will & Emery LLP, (a) One Vanderbilt Avenue, New York, NY 10017, Attn: Darren Azman, Esq. and Kristin Going, Esq. (emails: dazman@mwe.com and kgoing@mwe.com) and (z) 1000 N. West Street, Suite 1400, Wilmington, DE 19801, Attn: David R. Hurst, Esq. and Andrew Mark, Esq. (emails: dhurst@mwe.com and amark@mwe.com).

US-DOCS\156320460.11

## ADDITIONAL INFORMATION

**THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS.  THE PROVISIONS ARE SET FORTH AT THE END OF THIS NOTICE. YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

**DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ARE CONTAINED IN ARTICLE I OF THE PLAN.**

### RELEASES, DISCHARGES, INJUNCTIONS AND EXCULPATIONS

Pursuant to Article IX of the Plan, the Debtors seek approval of the following release, injunction, and exculpation provisions.

***Certain Relevant Definitions Contained in Article I of the Plan Related to Release and Exculpation Provisions:***

"**Exculpated Party**" means (a) the Debtors, (b) any Committee, and (c) solely to the extent they are estate fiduciaries, each such Entity's current officers, directors (including any sub-committee of directors), members (including ex officio members), financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such on or after the Petition Date and prior to or on the Effective Date.

"**Released Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) with respect to each Entity in clauses (a) through (e), each such Entity's current and former Affiliates; and (g) with respect to each Entity in clause (a) through (f), each such Entity's Related Parties; provided, however, that, notwithstanding the foregoing, any Holder of a Claim or Interest that is not a Releasing Party shall not be a Released Party.

"**Releasing Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) all Holders of Claims and Interests in the Voting Class who either vote to accept the Plan or abstain from voting on the Plan, and, in each case, opt-in to the Third-Party Release; (g) all Holders of Claims and Interests in any Non-Voting Class who return an opt-in form pursuant to the procedures set forth in the Disclosure Statement Order; (h) with respect to each Entity in clauses (a) through (g), each such Entity's current and former Affiliates; and (i) with respect to each Entity in clause (a) through (h), each such Entity's Related Parties (solely to the extent such Releasing Party is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law).

**ARTICLE IX RELEASE, INJUNCTION AND RELATED PROVISIONS**

**B.** *Releases by the Debtors*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed to be conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released, acquitted, and discharged by the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that such entities would have been legally entitled to assert in their own right (whether individually or collectively) or that any Holder of any Claim or Interest could have asserted on behalf of such entities, based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

US-DOCS\156320460.11

C.      *Releases by Holders of Claims and Interests*

**As of the Effective Date, except as otherwise provided herein, each Releasing Party, their Estates, their assigns and their successors in interest, is deemed to have conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released each Debtor and Released Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties, their Estates, their assigns, and their successors in interest ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that the Releasing Parties, their Estates, their assigns, and their successors in interest would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.**

**Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, (iii) release any Claims or Causes of Action against any non-Released Party, or (iv) release any claims relating to or arising under the Wind-Down Support Agreement.**

US-DOCS\156320460.11

D.      *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation, negotiation, preparation, and consummation of the Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing, including any postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of any restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, however, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this section shall or shall be deemed to prohibit the Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors, in each case unless otherwise expressly provided for in the Plan.  The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

E.      *Injunction*

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, interests, Causes of Action, or liabilities that:  (a) are compromised or settled under the Plan (including pursuant to Articles II and III of the Plan); (b) have been released pursuant to the Plan; (c) are subject to exculpation pursuant to the Plan (but only to the extent of the exculpation provided in the Plan), or (d) are otherwise satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, on and after the Effective Date, from:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) on account

US-DOCS\156320460.11

of any such claims, interests, Causes of Action, or liabilities against the Debtors or their successors (including the Plan Administrator) or any Entity released or exculpated (or the property or estate of any such Entity); (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); or (iv) asserting any right of setoff, subrogation, or recoupment of any kind on account of any such claims, interests, Causes of Action, or liabilities against any obligation due from such Entities (including the Debtors or their successors (including the Plan Administrator)) or against the property of such Entities including the Debtors or their successors (including the Plan Administrator)) unless such Entity has filed a motion requesting the right to perform such setoff on or before the Effective Date or has filed a Proof of Claim or proof of Interest indicating that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise.

US-DOCS\156320460.11

Dated:  [ ● ], 2025
        Wilmington, Delaware

Respectfully Submitted,

/s/
_____

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

**LATHAM & WATKINS LLP**
Ray C. Schrock (admitted *pro hac vice*)
Annemarie V. Reilly (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  ray.schrock@lw.com
       annemarie.reilly@lw.com
       brian.rosen@lw.com

Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Joseph M. Mulvihill (No. 6061)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
       kcoyle@ycst.com
       jmulvihill@ycst.com

- and -

Caroline Reckler (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
Email:  caroline.reckler@lw.com

- and -

Jeffrey T. Mispagel (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeffrey.mispagel@lw.com

*Counsel for Debtors and Debtors in Possession*

9

**EXHIBIT 6**

Supplemental Opt-In Release Form

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                          :    Chapter 11
                                                :
FIRST MODE HOLDINGS, INC., *et al.*,[1]         :    Case No. 24-12794 (KBO)
                                                :
        Debtors.                         :    (Jointly Administered)
                                                :
------------------------------------------------------------ x

### GENERAL UNSECURED CREDITOR SUPPLEMENTAL OPT-IN RELEASE FORM

> **YOU ARE RECEIVING THIS FORM BECAUSE YOU MAY BE ENTITLED TO PAYMENT UNDER THE PLAN,[2] BUT YOU MUST TAKE CERTAIN ACTIONS IN ORDER TO RECEIVE SUCH PAYMENT.**
>
> **IN ORDER TO RECEIVE PAYMENT UNDER THE PLAN, YOU MUST OPT IN TO THE THIRD-PARTY RELEASES INCLUDED IN THE PLAN BY CHECKING THE BOX ON PAGE 7 OF THIS FORM, SIGNING THE CERTIFICATION ON PAGE 8 OF THIS FORM, AND RETURNING THIS FORM TO THE DEBTORS' NOTICE AND CLAIMS AGENT BY [____], 2025 AT 5:00 P.M. EASTERN TIME. IF YOU DO NOT COMPLETE AND SUBMIT THIS FORM BY SUCH TIME, YOU WILL NOT RECEIVE PAYMENT UNDER THE PLAN.**
>
> **YOU SHOULD READ THIS NOTICE CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: First Mode Holdings, Inc. (7177), and Synchronous LLC (1829). The Debtors' mailing address is 300 Lenora Street, PMB #1445, Seattle, WA 98121.

[2]  On February ___, 2025, First Mode Holdings, Inc. and Synchronous LLC (together, the "**Debtors**"), filed solicitation versions of their (i) *First Amended Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. ___] (as it may be amended, modified, or supplemented from time to time, the "**Plan**") and (ii) *First Amended Disclosure Statement for Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. ___] (as it may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**"). Capitalized terms used but otherwise not defined herein have meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

**What is this form?**  This optional form gives you the opportunity to opt in to the Third-Party Releases described below.

**Who should fill out this form?**  You should only consider filling out this form if you have a Claim against the Debtors and have not previously granted the Third-Party Releases.  If you are unsure whether you hold such a Claim, you should consult your own attorney.

**What are the Third-Party Releases?**  They are provisions in the Debtors' Plan whereby Holders of Claims will release, that is, waive or give up, legal claims you might have against the parties identified as the "Released Parties" on this form.

**How do I opt in to the Third-Party Releases?**  Complete this form and return it to the Debtors' Notice and Claims Agent.  If you are unsure how to complete the form, you should consult your own attorney.

**Will this affect my treatment under the Plan?**  If you hold a General Unsecured Claim and do not opt in to the Third-Party Releases, you will not receive any recovery under the Plan.

**What am I being asked to do?**  You have the option of opting in to the Third-Party Releases in order to receive a recovery on your General Unsecured Claim.  If you do not wish to opt in, you do not need to do anything.  If you are uncertain as to whether you should opt in, you should consult your own attorney.

**When is the deadline to submit this form?**  If you wish to opt in, this form must be actually received by the Notice and Claims Agent by **[[ ● ]], 2025, at 5:00 P.M. Eastern Time**.

> **You should read the rest of this form thoroughly.  This summary is qualified in all respects by the information set forth below.  If you have any questions regarding what this form does, you should consult your own attorney.**

US-DOCS\157203655.3

## OPT-IN RELEASE FORM

You should review the Third-Party Releases described on the following pages before signing this form.  You may wish to seek legal advice concerning the Third-Party Releases.  Your Claim has been placed in Class 4 under the Plan.  In order to receive a distribution on account of your Claim, you must complete the following form indicating your consent to providing the Third-Party Releases.

**Item 1**.  **Amount of Claim or Interest.**

The undersigned hereby certifies that, as of the date hereof, the undersigned is the Holder of a Class 4 General Unsecured Claim in the following amount:

| |
|---|
| Class 4 General Unsecured Claim Amount $_____ |

**Item 2**.  **Important information regarding the Third-Party Releases.**

Pursuant to Article IX of the Plan, the Debtors seek approval of the following release, injunction, and exculpation provisions.

## ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

***Certain Relevant Definitions Contained in*** *Article I* ***of the Plan Related to Release and Exculpation Provisions:***

"**Exculpated Party**" means (a) the Debtors, (b) any Committee, and (c) solely to the extent they are estate fiduciaries, each such Entity's current officers, directors (including any sub-committee of directors), members (including ex officio members), financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such on or after the Petition Date and prior to or on the Effective Date.

"**Released Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) with respect to each Entity in clauses (a) through (e), each such Entity's current and former Affiliates; and (g) with respect to each Entity in clause (a) through (f), each such Entity's Related Parties; provided, however, that, notwithstanding the foregoing, any Holder of a Claim or Interest that is not a Releasing Party shall not be a Released Party.

"**Releasing Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) all Holders of Claims and Interests in the Voting Class who either vote to accept the Plan or abstain from voting on the Plan, and, in each case, opt-in to the Third-Party Release; (g) all Holders of Claims and Interests in any Non-Voting Class who return an opt-in form pursuant to the procedures

3

set forth in the Disclosure Statement Order; (h) with respect to each Entity in clauses (a) through (g), each such Entity's current and former Affiliates; and (i) with respect to each Entity in clause (a) through (h), each such Entity's Related Parties (solely to the extent such Releasing Party is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law).

## ARTICLE IX RELEASE, INJUNCTION AND RELATED PROVISIONS

### B.    *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed to be conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released, acquitted, and discharged by the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that such entities would have been legally entitled to assert in their own right (whether individually or collectively) or that any Holder of any Claim or Interest could have asserted on behalf of such entities, based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.**

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

**C.      *Releases by Holders of Claims and Interests***

As of the Effective Date, except as otherwise provided herein, each Releasing Party, their Estates, their assigns and their successors in interest, is deemed to have conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released each Debtor and Released Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties, their Estates, their assigns, and their successors in interest ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that the Releasing Parties, their Estates, their assigns, and their successors in interest would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement

US-DOCS\157203655.3

(including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, (iii) release any Claims or Causes of Action against any non-Released Party, or (iv) release any claims relating to or arising under the Wind-Down Support Agreement.

### D.    Exculpation

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation, negotiation, preparation, and consummation of the Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing, including any postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of any restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, however, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this section shall or shall be deemed to prohibit the Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors, in each case unless otherwise expressly provided for in the Plan.  The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

### E.    Injunction

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, interests, Causes of Action, or liabilities that:  (a) are compromised or settled under the Plan (including pursuant to Articles II and III of the Plan); (b) have been released pursuant to the Plan; (c) are subject to exculpation pursuant to the

6

Plan (but only to the extent of the exculpation provided in the Plan), or (d) are otherwise satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, on and after the Effective Date, from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or their successors (including the Plan Administrator) or any Entity released or exculpated (or the property or estate of any such Entity); (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); or (iv) asserting any right of setoff, subrogation, or recoupment of any kind on account of any such claims, interests, Causes of Action, or liabilities against any obligation due from such Entities (including the Debtors or their successors (including the Plan Administrator)) or against the property of such Entities including the Debtors or their successors (including the Plan Administrator)) unless such Entity has filed a motion requesting the right to perform such setoff on or before the Effective Date or has filed a Proof of Claim or proof of Interest indicating that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise.

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

YOU MAY CHECK THE BOX BELOW TO ELECT TO GRANT THE RELEASES CONTAINED IN ARTICLE IX.C OF THE PLAN AND TO BECOME A "RELEASING PARTY" UNDER THE PLAN. YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW AND RETURN THE OPT-IN RELEASE FORM TO THE NOTICE AND CLAIMS AGENT BY **[[ ● ]]**, 2025, AT 4:00 P.M. EASTERN TIME. THE ELECTION TO CONSENT TO GRANT THE THIRD-PARTY RELEASES IS AT YOUR OPTION.

☐    **By checking this box, you elect to opt in to the Third-Party Releases.**

**Item 3**.  **Certifications.**

By signing this Opt-In Release Form, the undersigned certifies that as of the date hereof, either: (i) the Holder is the Holder of the Claims set forth in Item 1; or (ii) the Holder is an authorized signatory for an entity that is a Holder of the Claims set forth in Item 1.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than Holder) |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

**IF YOU WISH TO OPT IN TO THE THIRD-PARTY RELEASES INCLUDED IN THE PLAN, PLEASE COMPLETE, SIGN, AND DATE THIS SUPPLEMENTAL OPT-IN RELEASE FORM AND RETURN IT TO THE NOTICE AND CLAIMS AGENT (I) VIA OMNI'S E-BALLOT PORTAL (SEE FURTHER INFORMATION ON FOLLOWING PAGE) OR (II) BY MAIL, OVERNIGHT, OR HAND DELIVERY TO:**

<div align="center">

**First Mode Holdings, Inc. Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

</div>

**THE DEADLINE TO SUBMIT THIS SUPPLEMENTAL OPT-IN RELEASE FORM IS [____], 2025 AT 5:00 P.M. (PREVAILING EASTERN TIME).**

**IF YOU HAVE ANY QUESTIONS CONCERNING THIS OPT-IN RELEASE FORM, PLEASE CALL THE NOTICE AND CLAIMS AGENT AT 866-771-0558 (US & CANADA TOLL FREE) OR 747-288-6101 (INTERNATIONAL) OR BY SENDING AN EMAIL TO FIRSTMODEINQUIRIES@OMNIAGNT.COM WITH "FIRST MODE" IN THE SUBJECT LINE.**

**If You Are Submitting Your Supplemental Opt-In
Release Form through the E-Balloting Portal**

**Omni will accept Supplemental Opt-In Release Forms if properly completed through the E-Balloting Portal. To submit your Supplemental Opt-In Release Form via the E-Balloting Portal, visit https://omniagentsolutions.com/FirstMode-Ballots, click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your Supplemental Opt-In Release Form.**

**Omni's E-Balloting Portal is the sole manner in which Supplemental Opt-In Release Forms will be accepted via electronic or online transmission. Supplemental Opt-In Release Forms submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Holders of Claims who submit a Supplemental Opt-In Release Form using the E-Balloting Portal should NOT also submit a paper Supplemental Opt-In Release Form.**

**If your Supplemental Opt-In Release Form is not received by Omni on or before [____], 2025 at 5:00 p.m. Eastern Time, and such deadline is not extended by the Debtors, your election to opt in to the Third-Party Releases will not be effective.**

9